Jeffrey M. Davidson (SBN 248620)
Alan Bersin (SBN 63874)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: jdavidson@cov.com,
abersin@cov.com

*Attorneys for Plaintiffs The Regents of the
University of California and Janet Napolitano, in
her official capacity as President of the
University of California*

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr. (SBN 132099)
tboutrous@gibsondunn.com
Ethan D. Dettmer (SBN 196046)
edettmer@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

*Attorneys for Plaintiffs Dulce Garcia, Miriam
Gonzalez Avila, Saul Jimenez Suarez, Viridiana
Chabolla Mendoza, Norma Ramirez, and Jirayut
Latthivongskorn*

[*Additional Counsel Listed on Signature Page*]

Xavier Becerra
Attorney General of California
Michael L. Newman
Supervising Deputy Attorney General
James F. Zahradka II (SBN 196822)
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1247
E-mail: James.Zahradka@doj.ca.gov

*Attorneys for Plaintiff State of California*

Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Nancy L. Fineman (SBN 124870)
nfineman@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiff City of San Jose*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

REGENTS OF UNIVERSITY OF
CALIFORNIA and JANET NAPOLITANO,
in her official capacity as President of the
University of California,

                    Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and ELAINE
DUKE, in her official capacity as Acting
Secretary of the Department of Homeland
Security,

                    Defendants.

CASE NO. 17-CV-05211-WHA

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION TO COMPLETE THE
ADMINISTRATIVE RECORD IN
ACCORDANCE WITH 5 U.S.C. § 706;
MEMORANDUM IN SUPPORT**

Judge: Honorable William Alsup
Hearing: October 12, 2017, 8:00 AM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF MAINE, STATE OF MARYLAND, and STATE OF MINNESOTA, | CASE NO. 17-CV-05235-WHA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, and the UNITED STATES OF AMERICA, | |
| Defendants. | |

| | |
|---|---|
| CITY OF SAN JOSE, a municipal corporation, | CASE NO. 17-CV-05329-WHA |
| Plaintiff, | |
| v. | |
| DONALD J. TRUMP, President of the United States, in his official capacity, ELAINE C. DUKE, in her official capacity, and the UNITED STATES OF AMERICA, | |
| Defendants. | |

| | |
|---|---|
| DULCE GARCIA, MIRIAM GONZALEZ AVILA, SAUL JIMENEZ SUAREZ, VIRIDIANA CHABOLLA MENDOZA, NORMA RAMIREZ, and JIRAYUT LATTHIVONGSKORN, | CASE NO. 17-CV-05380-WHA |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, DONALD J. TRUMP, in his official capacity as President of the United States, U.S. DEPARTMENT OF HOMELAND SECURITY, and ELAINE DUKE, in her official capacity as Acting Secretary of Homeland Security, | |
| Defendants. | |

# TABLE OF CONTENTS

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPLETE THE
ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706 ............................. 1

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPLETE THE
ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706 ............................. 2

INTRODUCTION ................................................................................................................ 2

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 7

I.      The Administrative Record Must Contain Every Document And Communication
        Directly Or Indirectly Considered In Determining Whether To Continue, Modify, Or
        Rescind DACA. ......................................................................................................... 7

II.     The Administrative Record Must Include All Documents And Communications
        Considered By DOJ And All Communications From The White House To DOJ
        Or DHS. ................................................................................................................... 11

III.    Defendants Failed To Produce A Required Privilege Log. ................................... 13

IV.     Defendants Have Waived Any Assertion Of Privilege By Putting The Legality Of
        DACA At Issue. ...................................................................................................... 15

CONCLUSION AND RELIEF REQUESTED ................................................................ 16

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO
COMPLETE THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706; MEMORANDUM IN SUPPORT;
Case No. 17-cv-05211-WHA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
    143 F. Supp. 2d 7 (D.D.C. 2001) ................................................................................7

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) (en banc) ....................................................................15

*Chevron Corp. v. Penzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ..................................................................................15

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)....................................................................................................7

*Ctr. for Food Safety v. Vilsack*,
    No. 15-1590, 2017 WL 1709318 (N.D. Cal. May 3, 2017)...............................10, 14

*Cty. of San Miguel v. Kempthorne*,
    587 F. Supp. 2d 64 (D.D.C. 2008) ..............................................................................7

*Gill v. U.S. Dep't of Justice*,
    No. 14-3120, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015)...........................8, 14, 15

*Inst. for Fisheries Res. v. Burwell*,
    No. 16-1574, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017).........................10, 11, 14

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
    Nos. C05-3508 & C05-4038, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) .......................... *passim*

*Nat'l Council of La Raza v. U.S. Dep't of Justice*,
    411 F.3d 350 (2d Cir. 2005).......................................................................................16

*Portland Audubon Soc'y v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1993) ...................................................................................13

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ...................................................................................7, 8

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
    749 F.2d 788 (D.C. Cir. 1984) ...................................................................................13

**Statutes**

5 U.S.C. § 706..................................................................................................................1, 2, 7

**Other Authorities**

Michael D. Shear & Julie Hirschfeld Davis, *Trump Moves to End DACA and Calls on Congress to Act*, N.Y. Times (Sept. 5, 2017), https://www.nytimes.com/2017/09/05/us/politics/trump-daca-dreamers-immigration.html ....................................................................................................................13

New York Times, President Donald Trump Holds Press Conference, YouTube, at 1:06:25 (Feb. 16, 2017), https://www.youtube.com/watch?v=ZGqhhx8cxMg...................................................12

Press Release, The White House Office of the Press Secretary, President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration (Sept. 5, 2017), https://www.whitehouse.gov/the-press-office/2017/09/05/president-donald-j-trump-restores-responsibility-and-rule-law ....................................................................................12

U.S. Dep't of Justice, Env't and Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record (Jan. 1999), http://environment.transportation.org/pdf/programs/usdoj_guidance_re_admin_record_prep.pdf....................................................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPLETE THE
ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706**

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 12, 2017, at 8 a.m., plaintiffs from *Regents of the Univ. of Cal., et al. v. U.S. Dep't of Homeland Sec., et al.*, No. 3:17-cv-05211-WHA; *State of Cal., et al. v. U.S. Dep't of Homeland Sec., et al.*, No. 3:17-cv-05235-WHA; *City of San Jose v. Donald J. Trump, et al.*, No. 3:17-cv-05329-WHA; and *Garcia, et al. v. United States of America, et al.*, No. 3:17-cv-05380-WHA (collectively, "Plaintiffs") will and hereby do move this Court for an order directing Defendants to complete the administrative record and to produce the withheld documents, or at a minimum, to immediately produce a privilege log in the above-captioned matters.  This is a motion under the Administrative Procedure Act to determine the materials that are properly a part of the administrative record, and therefore not a discovery motion under Federal Rules of Civil Procedure 26-37.

This motion is made based on this notice of motion; the accompanying memorandum, proposed order, declaration, exhibits, and motion to shorten time; all pleadings and filings in these matters; and such oral argument as the Court allows.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPLETE
THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706**

**INTRODUCTION**

This case concerns the government's decision to rescind the Deferred Action for Childhood Arrivals ("DACA") program and expose the program's nearly 800,000 beneficiaries to deportation to countries they have not lived in since they were children.[1]  Many of these young people will face 10-year or permanent bans on re-entry, even though they were brought to the United States as children through no choice of their own and know only this country as home.  *See* Tr. of Proceedings (Oct. 3, 2017) at 32:4-22, 91:4-94:14 (Dkt. No. 63).  The government's decision will devastate the lives of DACA recipients and tear apart their families, harm the American economy, and damage the communities, schools, businesses, and institutions which rely on DACA recipients and which have deeply benefited from their contributions.

The government's published statements regarding the DACA rescission made no attempt to justify the decision as a matter of policy.  Instead, in a September 4, 2017 letter, the Attorney General asserted that the DACA program was illegal when enacted—even though no court has held that and even though the government vigorously argued the opposite position in the Supreme Court less than a year ago.  Then, in the September 5, 2017 DHS memorandum rescinding the program, the government purported to justify the decision with an oblique and perfunctory reference to the Attorney General's assertion, stating that "[t]aking into consideration . . . the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated."  *See* Rescission Mem. at 4 (Dkt. No. 64-1, at AR 00000255).

The government's approach to the administrative record in this case is a microcosm of its shameful approach to the DACA program.  The purported record is patently inadequate:  it includes only materials considered personally by the Acting Secretary of Homeland Security; it excludes any material that indirectly led to the decision, including materials considered by Attorney General Sessions or his

---

[1]     "DACA" refers to the June 15, 2012 Memorandum from former Secretary of Homeland Security Janet Napolitano, titled "Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children," and any and all implementations of that Memorandum.

subordinates, Acting Secretary Duke's subordinates, and any communications from White House officials or staff or other Executive Branch components sent to the U.S. Department of Homeland Security ("DHS") or U.S. Department of Justice ("DOJ"). The record produced by the government is 256 pages, but 185 pages are printouts of court decisions related to a different deferred action program, known as Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA"). Forty-one pages consist of the original memoranda creating and extending DACA, along with an Office of Legal Counsel ("OLC") opinion opining on DAPA's legality. That leaves a mere 30 pages of material arguably pertinent to the rescission of DACA. This paltry record does not come even close to what is required. For example, there is *one page* of material from DOJ, even though DOJ's opinion regarding the legality of DACA was the purported basis for the rescission. As another example, the record produced by the government contains zero emails. Indeed, the record does not contain a single document that was not already public when this case was filed. The government also has refused to produce a privilege log.

The government's production defies this Court's directive against including in the administrative record only "what helps" Defendants and "leav[ing] out what hurts them." Tr. of Proceedings (Sept. 21, 2017) at 17:21-22 (Dkt. No. 52) ("09/21/17 Tr."); *see also id.* at 17:24-18:1 ("[I]f there's an e-mail that hurts your case, . . . [i]t's got to be in the administrative record. It can't just be the select stuff that supports your side."). An adequate administrative record in this case must include every document and communication directly or indirectly considered by DHS or DOJ, including communications from White House officials or staff or from any other Executive Branch component sent to DHS or DOJ, as part of the process of determining whether to continue, modify, or rescind the DACA program. Defendants also are required to produce a privilege log that describes any document or communication withheld on grounds of privilege, regardless of whether Defendants consider that record to be a part of the official administrative record.

The government is playing a shell game intended to block Administrative Procedure Act review of the government's true decision-making process. Public accounts of the decision to rescind DACA indicate that DOJ and the White House were integrally involved in the decision-making process. Indeed, the decision was not even announced by the Acting Secretary of Homeland Security, whose

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

documents form the basis of the government's purported record.  Instead, it was announced by the Attorney General, and the formal memorandum rescinding DACA referenced DOJ's instruction that DACA was supposedly illegal.  The White House also issued a formal statement regarding the rescission, again discussing rationales for the decision, and public reports leave no doubt that White House officials were consulted about the decision.  The government's approach to the administrative record would hide from review the documents considered directly by DOJ and the White House and indirectly considered by the Secretary of Homeland Security.

To be clear, this is not a discovery motion; the administrative record is the backbone of an APA case, and its contents largely determine the scope of this Court's APA review.  Accordingly, the government's obstruction presents a serious timing issue.  The government took weeks to produce a "record" consisting of publicly-available materials that could have been compiled by a Google search.  Because Plaintiffs' ability to move for summary judgment and a preliminary injunction on their APA claims on November 1—as directed by the Court in its scheduling order—depends on an adequate administrative record, Defendants should be ordered to produce an adequate record and privilege log in a matter of days not weeks.

## **BACKGROUND**

On September 21, 2017, the Court held a case management conference and ordered Defendants to file the administrative record by October 6, 2017.  09/21/17 Tr. at 17:17-18, 18:7-8.  The Court further instructed Defendants regarding the contents of the administrative record:

> You know, I used to work in the Justice Department years ago, and I learned one thing about administrative records.  The Government always puts in there what helps them and they leave out what hurts them, like memos—in those days it was memos.  They didn't have e-mails.
>
> But if there's an e-mail that hurts your case, it's got to go in there.  It's got to be in the administrative record.  It can't just be the select stuff that supports your side.  So you've got to do a good job on it, but it can be done.
>
> You know, you're the one—the Government is the one that has created the urgency by putting a deadline, and we've got to take that and I respect your deadline, but at the same time you've got to respect the fact

that I've got to get the case done.  So October 6 is when you ought to give everybody the administrative record.

*Id.* at 17:19-18:8.

On October 1, 2017, Plaintiffs sent Defendants a letter setting forth Plaintiffs' understanding of the required contents of the administrative record.  *See* Ex. 1 to Decl. of J. Davidson, Letter from J. Davidson to B. Shumate & B. Rosenberg (Oct. 1, 2017).  That letter explained Defendants' obligation to include in the administrative record all "materials directly or indirectly considered" as part of the process of determining whether to continue, modify, or rescind DACA.  *Id.* at 4 (internal quotation marks omitted).  It also explained Defendants' obligation to "produce a privilege log describing any document or communication that is withheld on grounds of privilege."  *Id.* at 5.

On October 5, 2017, Defendants provided to Plaintiffs a letter setting out Defendants' contrary interpretation of their obligations regarding the administrative record.  *See* Ex. 2 to Decl. of J. Davidson, Letter from B. Rosenberg to J. Davidson (Oct. 5, 2017) ("Rosenberg Letter").  In that letter, Defendants took the position that the administrative record need only "consist of documents that were actually considered by Acting DHS Secretary Duke as part of the decision to rescind DACA."  *Id.* at 1.  Defendants also indicated that they would not produce a privilege log.  *Id.* at 2.

On October 6, 2017, Defendants filed what they allege to be the administrative record in this case.  *See* Notice of Filing Administrative Record (Dkt. No. 64).  The sparse 256-page record produced by the government includes, in its entirety:

1.  The original memorandum creating DACA (June 15, 2012) (AR 00000001-AR 00000003);

2.  The November 2014 OLC opinion addressing the legality of a new deferred action program called Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") (AR 00000004-AR 00000036);

3.  The November 2014 memorandum extending DACA and creating DAPA (AR 00000037-AR 00000041);

4.  A judicial opinion concerning the legality of the DAPA program, *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) (AR 00000042-AR 00000129);

5.  An appellate opinion on the same subject, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) (AR 00000130-AR 00000226);

6.  A one-sentence decision by an equally-divided Supreme Court affirming the prior order, *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam) (AR 00000227-AR 00000228);

7.  A February 2017 memorandum from DHS leaving DACA in place (AR 00000229-AR 00000234);

8.  A June 2017 memorandum from DHS abrogating the DAPA program (AR 00000235-AR 00000237);

9.  A June 2017 letter from certain state attorneys general to the U.S. Attorney General threatening litigation if DACA were not rescinded (AR 00000238-AR 00000240);

10.  Three letters from certain members of Congress urging the retention of DACA (AR 00000241-AR 00000250);

11.  A letter from Attorney General Sessions to Acting DHS Secretary Duke opining that DACA was unconstitutional (AR 00000251);

12.  The September 2017 DHS memorandum rescinding DACA (AR 00000252-AR 00000256). All of this material was already in the public domain prior to Defendants' filing of the administrative record.  Among other shortcomings, the record contains no emails, no materials from the White House, and no Department of Justice materials other than the public letter opining on the legality of DACA.

Consistent with the Rosenberg Letter, Defendants excluded from the administrative record any material considered by Attorney General Sessions, his subordinates, or Acting Secretary Duke's subordinates, as well as any communications from White House officials or staff or other Executive Branch components sent to DHS or DOJ.  To date, Defendants have not produced any privilege log, and counsel for Defendants have indicated that in their view a privilege log is not required.

During a telephonic meet-and-confer on October 6, 2017, counsel for Defendants agreed that the parties are at an impasse over the contents of the administrative record and that motion practice should proceed.

## **ARGUMENT**

**I.    The Administrative Record Must Contain Every Document And Communication Directly Or Indirectly Considered In Determining Whether To Continue, Modify, Or Rescind DACA.**

Section 706 of the APA states that courts "shall review the whole record" of agency decision-making.  5 U.S.C. § 706.  Judicial review of agency action must therefore be "based on the full administrative record that was before the [agency] at the time [it] made [its] decision."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record," *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989), and the Court need not take the government's production at face value.  Rather, "[t]he 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."  *Id.* (internal quotation marks omitted).  For an administrative record to be complete, it "must contain materials that are *directly or indirectly related* to the agency's decision, *not just those materials that the agency relied on.*"  *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. C05-3508 & C05-4038, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (emphasis added); *see also Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 71 (D.D.C. 2008) (administrative record must include "all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision" (internal quotation marks omitted)).

A "document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record."  *Lockyer*, 2006 WL 708914, at *2 (quoting *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996)).  Thus, a complete administrative record must include "the work and recommendations of subordinates."  *Kempthorne*, 587 F. Supp. 2d at 71 (internal quotation marks omitted); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) ("[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well.").

Although there is a "presumption that the administrative record submitted by Defendants is complete," Plaintiffs can rebut that presumption "with clear evidence to the contrary."  *Lockyer*, 2006

7

WL 708914, at *2.  The inadequacy of an administrative record does not require a showing of "bad faith or improper motive." *Id.*  Rather, a plaintiff must show only "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," which can be satisfied by a showing that the government applied an incorrect standard in preparing the record.  *Gill v. U.S. Dep't of Justice*, No. 14-3120, 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015) (internal quotation marks omitted).

The administrative record in this case should contain all material that was directly or indirectly considered as part of the process of determining whether to continue, modify, or rescind DACA, including all evidence "contrary to the agency's position."  *See Thompson*, 885 F.2d at 555 (internal quotation marks omitted); *see also* 09/21/17 Tr. at 17:17-18:8 (reaffirming government's obligation to produce emails and other documents that are not favorable to the government's case).  As a result, Defendants are required to provide the "whole record" as of September 5, 2017, the date the government rescinded DACA, meaning every document and communication considered by DHS or DOJ, including any communications from White House officials or staff or any other Executive Branch component sent to DHS or DOJ, as part of the process of determining whether to continue, modify, or rescind DACA.

The time period for the record materials should commence, at the latest, on January 20, 2017 (Inauguration Day), and continue through September 5, 2017 (the date of the Rescission Memorandum).[2]  The early portion of this time period is critical because, among other things, Defendants issued a memorandum explicitly leaving DACA in place as of February 20, 2017.  *See* Mem. from John Kelly, Sec'y of Homeland Security, Enforcement of the Immigration Laws to Serve the National Interest, at 2 (Feb. 20, 2017) (Dkt. No. 64-1, at AR 00000230).  Thus, Defendants' consideration of the decision whether to continue, modify, or rescind DACA dates back at least to that time.  The administrative record accordingly should include documents describing and explaining the

---

[2]     If any relevant materials generated prior to January 20, 2017 (for example, by the Presidential Transition team or other third parties) were transmitted to DOJ or DHS, they should be included in the administrative record as well.

government's about-face from a February 2017 decision *retaining* DACA to a September 2017 decision *rescinding* DACA.

The types of documents that should be part of the administrative record include, at a minimum:

- All documents and communications[3] circulated within DHS or DOJ that were considered, directly or indirectly, in the process of determining whether to continue, modify, or rescind DACA, including, but not limited to, any documents and communications relating to the legality of DACA.

- All documents and communications between DHS or DOJ and any other component of the Executive Branch, including the White House, regarding the decision to continue, modify, or rescind DACA.

- All documents and communications between DHS or DOJ and members of the public (including individuals or organizations either opposed to or supporting DACA) that were considered, directly or indirectly, in connection with the decision to continue, modify, or rescind DACA.

- All documents and communications between DHS or DOJ and Members of Congress regarding the decision to continue, modify, or rescind DACA.

- All documents and communications between DHS or DOJ and state authorities—including, but not limited to, state Attorneys General and Governors' offices—regarding the decision to continue, modify, or rescind DACA.

- All notices, minutes, agendas, list of attendees, notes, memoranda, or other communications from meetings relating to the decision of whether to continue, modify, or rescind DACA.

- All documents and communications evaluating the costs and benefits, direct or indirect, of continuing, modifying, or rescinding DACA and any materials relating to the internal review, inter-agency review, or experts' feedback regarding these evaluations.

---

[3]    As used in this memorandum, "communications" includes any contact between two or more persons by which any information or knowledge is transmitted or conveyed.  It should include, for example, all written contact by means such as letters, memoranda, e-mails, text messages, instant messages, encrypted communications, tweets, and social networking messages or posts.

- All documents and communications discussing policy alternatives to rescinding DACA and any materials relating to the internal review, inter-agency review, or experts' feedback regarding these alternatives.

- All documents analyzing, considering, or attempting to reconcile the inconsistency between the positions of the Attorney General and the Acting DHS Secretary that DACA is illegal and their earlier contrary positions, including, but not limited to, (a) the decision of Secretary Kelly in February 2017 to retain DACA, and (b) the arguments made by DOJ to the District Court for the Southern District of Texas and the Fifth Circuit and by the Solicitor General to the Supreme Court in *United States v. Texas* that DACA is legal.

- All documents and communications, including but not limited to internal guidance documents, policies, FAQs, or directives—including those distributed to enforcement agents and other employees—regarding the decision whether to continue, modify, or rescind DACA.

- All data or factual information used during the process of evaluating whether to continue, modify, or rescind DACA.[4]

A record containing these categories of information is what the law requires.  For example, in *Lockyer*, Magistrate Judge Laporte granted plaintiffs' motion to compel completion of the administrative record over the Department of Agriculture's objection.  The court explained that to be complete, the record must include "internal and external agency documents relating to the decision-making process," including "materials directly or *indirectly* considered by the agency."  2006 WL 708914, at *3 (emphasis in original).  Accordingly, the court ordered the agency to produce "internal and external communications regarding the [agency's] decision-making process," including "drafts, internal reviews and critiques, inter-agency reviews, dissent from agency scientists, e-mail exchanges or other

---

[4]     This representative list is drawn in part from the Department of Justice's own guidance regarding the appropriate contents of an administrative record.  *See* U.S. Dep't of Justice, Env't and Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record (Jan. 1999), http://environment.transportation.org/pdf/programs/usdoj_guidance_re_admin_record_prep.pdf.  It also is consistent with case law from various jurisdictions, including the Northern District of California.  *See, e.g.*, *Ctr. for Food Safety v. Vilsack*, No. 15-1590, 2017 WL 1709318, at *3-4 (N.D. Cal. May 3, 2017); *Inst. for Fisheries Res. v. Burwell*, No. 16-1574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017); *Lockyer*, 2006 WL 708914, at *2-4.

correspondence between and among the agencies and/or others involved in the process and agency meeting notices regarding discussions of the impact of scientific uncertainties on the selection of alternatives."  *Id.* at *4; *see also Burwell*, 2017 WL 89003, at *1 ("It is obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision.  Therefore, the government is wrong to assert that these types of materials, as a categorical matter, should be excluded from the universe of materials directly or indirectly considered by agency decision-makers." (internal quotation marks omitted)).

## II.    The Administrative Record Must Include All Documents And Communications Considered By DOJ And All Communications From The White House To DOJ Or DHS.

Both materials considered by DOJ and communications from the White House to DOJ or DHS regarding the decision to continue, modify, or rescind DACA must be included in the administrative record in this case.

That the administrative record must include material considered by DOJ is underscored by DOJ's significant and public participation in the process of rescinding DACA.  The Rescission Memorandum itself references a September 4, 2017 letter from Attorney General Sessions regarding DACA.  *See* Rescission Mem. at 4 (Dkt. No. 64-1, at AR 00000255) ("Taking into consideration . . . the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated.").  In that letter, Attorney General Sessions asserted that DACA "was effectuated . . . without proper statutory authority" and "was an unconstitutional exercise of authority by the Executive Branch," and stated that "DHS should consider an orderly and efficient wind-down process" for DACA.  *See* Letter from Att'y Gen. Sessions to Acting Sec'y of DHS Duke (Sept. 4, 2017) (Dkt. No. 64-1, at AR 00000251).  The next day, Attorney General Sessions held a press conference "to announce that the program known as DACA . . . is being rescinded."  *See* Ex. C to Compl. at *1, Attorney General Sessions Delivers Remarks On DACA (Sept. 5, 2017) (Dkt. No. 1-3).  He further stated that "[o]ur collective wisdom is that the policy is vulnerable to the same legal and constitutional challenges that the courts recognized with respect to the DAPA program."  *See id.*  And he reported that "[t]he Department of Justice has advised the President and the Department of Homeland Security that DHS should begin an

orderly, lawful wind down, including the cancellation of the memo that authorized this program." *Id.* at *2.

DOJ's extensive and public participation in the decision whether to continue, modify, or rescind DACA is, therefore, undisputed, yet the government has included only a single page—the Sessions letter—originating with DOJ.  There can be no question that documents within DOJ are among those "documents and materials directly *or indirectly* considered" in deciding whether to continue, modify, or rescind DACA.  Defendants cannot artificially insulate the administrative record from materials considered within DOJ.

Likewise, communications from the White House to DHS or DOJ concerning the decision to continue, modify, or rescind DACA should also be included in the administrative record.  From the early days of this Administration, the President has repeatedly emphasized his personal involvement in the question of whether to retain or rescind DACA.  For example, on February 16, 2017, he said during a press conference, "DACA is a very, very difficult subject for me, I will tell you.  To me, it's one of the most difficult subjects I have . . . ."  New York Times, President Donald Trump Holds Press Conference, YouTube, at 1:06:25 (Feb. 16, 2017), https://www.youtube.com/watch?v=ZGqhhx8cxMg.  The White House publicly affirmed President Trump's central role in the decision to rescind DACA.  For example, on September 5, 2017, the White House released a statement announcing that "President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration" by rescinding DACA.  *See* Press Release, The White House Office of the Press Secretary, President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration (Sept. 5, 2017), https://www.whitehouse.gov/the-press-office/2017/09/05/president-donald-j-trump-restores-responsibility-and-rule-law.  The announcement underscores President Trump's personal involvement and actions: "If President Trump allowed DACA to go to court, it is likely that the court would abruptly enjoin the program," and "[i]f President Trump had refused to act, many States were prepared to pursue litigation to end DACA by court order."  *Id.*

DOJ and White House officials also have been heavily involved in decision-making regarding DACA.  For example, *The New York Times* reported that "the president followed through on his campaign pledge" to rescind DACA "at the urging of Mr. Sessions *and other hard-line members inside*

*his White House, including Stephen Miller*, his top domestic policy adviser."  Michael D. Shear & Julie Hirschfeld Davis, *Trump Moves to End DACA and Calls on Congress to Act*, N.Y. Times (Sept. 5, 2017), https://www.nytimes.com/2017/09/05/us/politics/trump-daca-dreamers-immigration.html (emphasis added).

Given the manifest involvement of the White House and DOJ in the decision, Defendants cannot sustain their narrow interpretation of their obligation to produce an administrative record.  Indeed, Defendants' approach would undermine the fundamental purpose of Congress's requirement that government agencies compile administrative records when their actions are challenged.  Under Defendants' narrow reading, DOJ (or another Executive Branch component) would be able to undertake a full-blown administrative process, issue a one-page letter to another department head recommending a particular course of action, and assert in subsequent litigation that the administrative record comprises nothing more than the one-page letter that it sent to that department head.  That result would permit the government to manipulate the administrative record to contain only favorable information—functionally shielding government decision-making from the transparent review that Congress mandated under the APA.  *See Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("An incomplete record must be viewed as a fictional account of the actual decisionmaking process. . . . If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." (internal quotation marks omitted)); *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case . . . .").  Likewise, Defendants' position would enable the White House to exercise enormous—even determinative—influence over agency decision-making and yet shield the evidence of that influence from the record on which courts must review agency decision-making.   The Court should not permit such an assault on transparency and judicial review.

III.     **Defendants Failed To Produce A Required Privilege Log.**

The Court's September 13, 2017 Supplemental Order states that "[p]rivilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege."  Suppl.

13

Order to Order Setting Initial Case Mgmt. Conf. ¶ 18 (Dkt. No. 23).  Defendants nevertheless maintain

that they are not required to produce any privilege log at all—in their view, they may shield wide swaths

of the administrative record based on privileges that they do not even need to identify, much less defend.

Defendants do not cite any Northern District of California or Ninth Circuit authority supporting their

assertion that they are exempted from the requirement to produce a privilege log.  *See* Rosenberg Letter

at 1-2 (citing three out-of-circuit cases).

As Magistrate Judge Westmore has held, however, privilege logs are required in APA cases; she

rejected the same argument Defendants make here:

> While Defendants argue that no . . . privilege log is necessary because
> deliberative material is, in any event, not part of the AR, they have not
> pointed to binding Ninth Circuit authority that stands for the proposition
> that in an APA action, an agency may withhold documents on the basis of
> privilege without providing so much as a privilege log.  Absent any such
> authority, the Court will follow the same approach adopted by other judges
> in this district.  Therefore, if, while in the process of completing the AR,
> Defendants wish to withhold certain documents on the basis of the
> deliberative process privilege, they shall provide a privilege log that
> describes the document, identifies the basis for its withholding, and
> substantiates any claimed deliberative process privilege.

*Gill*, 2015 WL 9258075, at *7; *see also Ctr. for Food Safety*, 2017 WL 1709318, at *5 (same); *Burwell*,

2017 WL 89003, at *1 ("[T]he scope of the [deliberative process] privilege doesn't define the scope of

the material directly or indirectly considered.  If a privilege applies, the proper strategy isn't pretending

the protected material wasn't considered, but withholding or redacting the protected material and then

logging the privilege."); *Lockyer*, 2006 WL 708914, at *4 (". . . Defendants must make a specific

showing establishing the application of a privilege for each document that it contends that it may

withhold based on privilege. . . .  If Defendants withhold any documents from the record based on

privilege, they shall also provide a privilege log . . . .").  These principles are not unique to decisions in

this Court, but are also contained in the government's own guidance issued by DOJ to other federal

agencies.  *See* Guidance to Federal Agencies on Compiling the Administrative Record, *supra*, at 4 ("If

documents and materials are determined to be privileged or protected, the index of record must identify

the documents and materials, reflect that they are being withheld, and state on what basis they are being

withheld.").

14

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO
COMPLETE THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706; MEMORANDUM IN SUPPORT;
Case No. 17-cv-05211-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Under this Court's rules, Defendants' failure to furnish a privilege log "will be deemed a waiver of the privilege or protection."  Suppl. Order ¶ 18.  They should therefore be ordered to produce all withheld materials.  At the very minimum, Defendants must produce a privilege log, and that privilege log must: (i) identify which documents or communications were omitted from the administrative record; (ii) explain the basis for the omission; and (iii) substantiate any claimed privilege.  *See Gill*, 2015 WL 9258075, at *7.  The Court's Supplemental Order further requires the log to identify: (iv) all persons making or receiving the privileged or protected communication; (v) the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication; (vi) the date of the communication; and (vii) the subject matter of the communication.  Suppl. Order ¶ 18.  The log must be "sufficiently detailed and informative to justify the privilege."  *Id.*  Defendants should be ordered to promptly comply with these obligations in a matter of days not weeks.

## IV.   Defendants Have Waived Any Assertion Of Privilege By Putting The Legality Of DACA At Issue.

In addition to their failure to produce a privilege log, Defendants have already waived any assertion of privilege.  They have done so by claiming that a purported concern about DACA's legality motivated the decision to rescind the program, putting the lawfulness of DACA directly at issue.  If a party puts certain information "at issue" during litigation, it waives any privilege or immunity that otherwise would apply to the information.  *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc); *see also Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992).  "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."  *Bittaker*, 331 F.3d at 719; *see id.* ("The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword.").

For instance, in the closely-related context of the Freedom of Information Act, the Second Circuit rejected DOJ's assertions of deliberative process and attorney-client privilege where

> the repeated references to the [unpublished] OLC Memorandum made by the Attorney General and his high-ranking advisors, the substance of their comments, and the way in which their comments were used—that is, to

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> assure third parties as to the legality of the actions the third parties were being urged to take—are sufficient to establish that the Department incorporated the Memorandum into its new policy.

*Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 350, 357 (2d Cir. 2005) (footnote omitted). The court observed that "[t]he Department's view that it may adopt a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA." *Id.* at 360 (internal quotation marks omitted).

As discussed above, the Rescission Memorandum repeatedly references Attorney General Sessions's apparent conclusion that DACA is unlawful and his instruction to Acting Secretary Duke to rescind the program on that basis. Defendants, therefore, have put at issue their analysis and conclusions regarding DACA's lawfulness, as well as any analysis and conclusions by other government officials including, but not limited to, DHS counsel, Attorney General Sessions, or other DOJ officials. They cannot now hide behind claims of deliberative process, attorney-client, or work product privilege to shield from view their purported reasoning for rescinding DACA. Doing so would unfairly deprive Plaintiffs of their right to challenge Defendants' actions and fully litigate their case, and also prevent the Court from reviewing the reasoning that supposedly underlies Defendants' actions. Therefore, Defendants have waived any assertion of deliberative process, attorney-client, or work product privilege for materials it may be withholding on those grounds, and Defendants should be ordered to promptly include them in the administrative record.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiffs respectfully ask the Court to order Defendants to immediately complete the administrative record and include therein every document and communication considered by DHS or DOJ, including communications from White House officials or staff or from any other Executive Branch component sent to DHS or DOJ, as part of the process of determining whether to continue, modify, or rescind DACA. Plaintiffs further request that the Court find a privilege waiver and order Defendants to produce the withheld documents, or at a minimum, order Defendants to immediately produce a privilege log consistent with the Court's September 13, 2017 Supplemental Order.

16

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO
COMPLETE THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706; MEMORANDUM IN SUPPORT;
Case No. 17-cv-05211-WHA

Time is of the essence.  The government wasted weeks producing a wholly inadequate administrative record, excluding entire categories of documents they were directly instructed to provide, and now seek to further obstruct judicial review by silently withholding documents based on unstated privileges.  In order for this litigation to proceed on the accelerated schedule set by this Court, the government must be directed to complete the administrative record immediately.

1   Dated:  October 9, 2017

2   Xavier Becerra
    Attorney General of California
3   Michael L. Newman
    Supervising Deputy Attorney General

4
    /s/ James F. Zahradka II
5   James F. Zahradka II
    Deputy Attorney General

6
    1515 Clay Street, 20th Floor
7   P.O. Box 70550
    Oakland, CA  94612-0550
8   Telephone: (510) 879-1247

9   *Attorneys for Plaintiff State of California*

    /s/ Julianna F. Passe
10  Lori Swanson
    Attorney General
11  State of Minnesota
    Julianna F. Passe (*pro hac vice*)
12  Assistant Attorney General
    445 Minnesota Street, Suite 1100
13  St. Paul, Minnesota 55101-2128
    Telephone: (651) 757-1136
14  Email: julianna.passe@ag.state.mn.us

15  *Attorneys for Plaintiff State of Minnesota*

16  /s/ Susan P. Herman
    Janet T. Mills
17  Attorney General of Maine
    Susan P. Herman (*pro hac vice*)
18  Deputy Attorney General
    6 State House Station
19  Augusta, Maine 04333
    Telephone: (207) 626-8814
20  Email: susan.herman@maine.gov

21  *Attorneys for Plaintiff State of Maine*

22  COTCHETT, PITRE & McCARTHY, LLP

23
    /s/ Nancy L. Fineman
24  Nancy L. Fineman (SBN 124870)
    nfineman@cpmlegal.com
25  San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
26  Burlingame, CA  94010
    Telephone:  (650) 697-6000
27  Facsimile:   (650) 697-0577

28  *Attorneys for Plaintiff City of San Jose*

Respectfully submitted,

COVINGTON & BURLING LLP

/s/ Jeffrey M. Davidson
Jeffrey M. Davidson (SBN 248620)
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email:  jdavidson@cov.com

*Attorneys for Plaintiffs The Regents of the*
*University of California and Janet Napolitano,*
*in her official capacity as President of the*
*University of California*

GIBSON, DUNN & CRUTCHER LLP

/s/ Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr., SBN 132099
tboutrous@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Ethan D. Dettmer, SBN 196046
edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Plaintiffs Dulce Garcia, Miriam*
*Gonzalez Avila, Saul Jimenez Suarez, Viridiana*
*Chabolla Mendoza, Norma Ramirez, and*
*Jirayut Latthivongskorn*

ATTESTATION

I, Jeffrey M. Davidson, hereby attest, pursuant to Civil L.R. 5-1, that I have received authorization to electronically sign and file this document from each of the persons identified in the signature block.

Dated: October 9, 2017

/s/ Jeffrey M. Davidson
Jeffrey M. Davidson

*Counsel for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California*