CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
BRETT A. SHUMATE
Deputy Assistant Attorney General
JENNIFER D. RICKETTS
Branch Director
JOHN. R. TYLER
Assistant Branch Director
BRAD P. ROSENBERG
Senior Trial Counsel
STEPHEN M. PEZZI
Trial Attorney
KATE BAILEY (MD Bar No. 1601270001)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530
Telephone: (202) 514-9239
Facsimile: (202) 616-8470
E-mail: kate.bailey@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | No. 3:17-cv-05211-WHA<br><br><br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD**<br><br>**Hearing:  Monday, Oct. 16, 11:00 a.m.** |

1

| | |
|---|---|
| 2 STATE OF CALIFORNIA, STATE OF<br>3 MAINE, STATE OF MARYLAND, and<br>STATE OF MINNESOTA,<br>4<br>5        Plaintiffs,<br>6    v.<br>7 U.S. DEPARTMENT OF HOMELAND<br>SECURITY, ELAINE DUKE, in her official<br>8 capacity as Acting Secretary of the<br>Department of Homeland Security, and the<br>9 UNITED STATES OF AMERICA,<br>10<br>        Defendants.<br>11 | No. 3:17-cv-05235-WHA |

12

| | |
|---|---|
| 13 CITY OF SAN JOSE, a municipal<br>14 corporation,<br>15        Plaintiff,<br>16    v.<br>17 DONALD J. TRUMP, President of the United<br>States, in his official capacity, ELAINE C.<br>18 DUKE, in her official capacity, and the<br>UNITED STATES OF AMERICA,<br>19<br>20        Defendants.<br>21 | No. 3:17-cv-05329-WHA |

22

| | |
|---|---|
| 23 DULCE GARCIA, MIRIAM GONZALEZ<br>AVILA, SAUL JIMENEZ SUAREZ,<br>24 VIRIDIANA CHABOLLA MENDOZA,<br>NORMA RAMIREZ, and JIRAYUT<br>25 LATTHIVONGSKORN,<br>26<br>        Plaintiffs,<br>27    v.<br>28 UNITED STATES OF AMERICA, | No. 3:17-cv-05380-WHA |

**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380)**
**Defendants' Opposition to Plaintiffs' Motion to Compel Completion of the Administrative Record**

1
2
3
4
5

DONALD J. TRUMP, in his official capacity
as President of the United States, U.S.
DEPARTMENT OF HOMELAND
SECURITY, and ELAINE DUKE, in her
official capacity as Acting Secretary of
Homeland Security,

Defendants.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

RELEVANT BACKGROUND ....................................................................................... 4

    A. DACA ................................................................................................................ 4

    B.  DAPA and Expanded DACA............................................................................ 5

    C.  Texas v. United States...................................................................................... 6

    D.  Wind-Down of DACA ...................................................................................... 7

ARGUMENT ................................................................................................................... 8

    I.  Plaintiffs Fail to Meet Their Burden to Rebut the Presumption that the
        Administrative Record Was Properly Designated ............................................. 9

        A.  Plaintiffs Point to No "Clear Evidence" that the Administrative
             Record Lacks Any Nonprivileged Document Actually Considered
             by the Secretary................................................................................... 11

        B.  Deliberative and Other Privileged Documents Are Not Properly
             Part of an Administrative Record ........................................................ 12

        C.  Internal DOJ Documents Not Actually Considered by the Secretary
             Have No Place in the Administrative Record ........................................ 16

    II.  An Administrative Record Does Not Include Privileged Material
        and a Privilege Log Should Not Be Required.................................................... 17

    III. The Acting Secretary's Decision to Rescind DACA on the Basis
        of Substantial Litigation Risk Did Not Waive Any Applicable Privilege ........................ 20

CONCLUSION............................................................................................................... 21

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Adair v. England,*
    183 F. Supp. 2d 31 (D.D.C. 2002) ............................................................... 10

4

5

*Amfac Resorts, L.L.C. v. Dep't of the Interior,*
    143 F. Supp. 2d (D.D.C. 2001) ............................................................ 14, 15

6

7

*Bar MK Ranches v. Yuetter,*
    994 F.2d 735 (10th Cir. 1993) ...................................................................... 9

8

9

*Bennett v. Spear,*
    520 U.S. 154 (1997) .................................................................................... 16

10

11

*Bittaker v. Woodford,*
    331 F.3d 715 (9th Cir. 2003) ...................................................................... 21

12

13

*Blue Ocean Inst. v. Gutierrez,*
    503 F. Supp. 2d 366 (D.D.C. 2007) ............................................................ 18

14

15

*Cactus Corner, LLC v. USDA,*
    346 F. Supp. 2d 1075 (E.D. Cal. 2004) ........................................................ 9

16

*California v. U.S. Dep't of Labor,*
    No. 2:13-cv-02069, 2014 WL 1665290 (E.D. Cal. April 24, 2014) ................... 13, 16

17

18

*Camp v. Pitts,*
    411 U.S. 138 (1973) ............................................................................. *passim*

19

20

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971) ........................................................................... 1, 9, 11

21

22

*Coal. to Protect Cowles Bog Area v. Salazar,*
    No. 2:12-CV-515, 2013 WL 595895 (N.D. Ind. Feb. 13, 2013) ............... 13

23

24

*Coastal Conservation Ass'n v. Locke,*
    No. 2:09-cv-641-FtM-29SPC, 2010 WL 1439071 (M.D. Fla. Apr. 12, 2010) ........ 18

25

26

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) .................................................................... 14

27

*Comprehensive Cmty. Dev. Corp. v. Sebelius,*
    890 F. Supp. 2d 305 (S.D.N.Y. 2012) ......................................................... 13

28

*Cook Inletkeeper v. EPA*,
  400 F. App'x 239 (9th Cir. 2010) ............................................................ 9, 11, 16

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ..................................................................................... 1, 8

*Gill v. Dep't of Justice*,
  No. 14-cv-03120-RS, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015) ...................... 17

*Great Am. Ins. Co. v. United States*,
  No. 12 C 9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013)............................ 17, 18

*Havasupai Tribe v. Robertson*,
  943 F.2d 32 (9th Cir. 1991) ............................................................................. 1

*In re Subpoena Duces Tecum*,
  156 F.3d 1279 (D.C. Cir. 1998) ............................................................... *passim*

*Madison Cty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
  622 F.2d 393 (8th Cir. 1980) ......................................................................... 12

*Miami Nation of Indians of Indiana v. Babbitt*,
  979 F. Supp. 771 (N.D. Ind. 1996) ................................................................. 15

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
  463 U.S. 29 (1983)......................................................................................... 19

*Nat'l Ass'n of Chain Drug Stores v. HHS*,
  631 F. Supp. 2d 23 (D.D.C. 2009) ........................................................ 10, 13, 17

*Nat'l Council of La Raza v. U.S. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005).......................................................................... 20

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975)...................................................................................... 14

*Norris & Hirshberg, Inc. v. SEC*,
  163 F.2d 689 (D.C. Cir. 1947) .................................................................. 12, 13

*Oceana, Inc. v. Gutierrez*,
  No. 08-00318 (ESH/AK), 2009 WL 1491516 n.4 (D.D.C. May 28, 2009)............... 18

*People of State of California ex rel. Lockyer v. U.S. Department of Agriculture*,
  Nos. C05-3508 & C05-4038, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ...... 11, 14

*Portland Audubon Soc'y v. Endangered Species Comm.*,
  984 F.2d 1534 (9th Cir. 1993) .................................................................. 10, 12

*Russell v. Dep't of the Air Force*,
    682 F.2d 1045 (D.C. Cir. 1982) ................................................................................... 14

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
    No. 1:15-CV-01290-LJO-GSA, 2016 WL 3543203 (E.D. Cal. June 23, 2016) ...................... 16

*San Luis Obispo Mothers for Peace v. NRC*,
    751 F.2d 1287 (D.C. Cir. 1986) ............................................................................... 8, 12

*San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*,
    789 F.2d 26 (D.C. Cir. 1986) ..................................................................................... 12

*Sierra Pac. Indus. v. Dep't of Agric.*, No. CIV S-11-1250 KJM EFB,
    2011 WL 6749837 (E.D. Cal. Dec. 22, 2011) ............................................................... 16

*Tafas v. Dudas*,
    530 F. Supp. 2d 786 (E.D. Va. 2008) .................................................................... 13, 17

*Texas Rural Legal Aid Inc. v. Legal Servs. Corp.*,
    940 F.2d 685 (D.C. Cir. 1991) ..................................................................................... 8

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ....................................................................................... 6

*Texas v. United States*,
    86 F. Supp. 3d 591 (S.D. Tex. 2015) ............................................................................ 5

*Thompson v. United States Department of Labor*,
    885 F.2d 551 (9th Cir. 1989) ............................................................................... 10, 11

*Town of Norfolk v. U.S. Army Corps of Eng'rs.*,
    968 F.2d 1438 (1st Cir. 1992) ..................................................................................... 12

*United States v. Carpenter*,
    No. 3:99-CV-00547-RLH, 2011 WL 4763675 (D. Nev. Oct. 7, 2011) ................................ 13

*United States v. Morgan*,
    313 U.S. 409 (1941) .......................................................................................... 2, 9, 15

*United States v. Texas*,
    136 S. Ct. 2271 (2016) ............................................................................................... 6

*United States v. Texas*,
    137 S. Ct. 285 (2016) ................................................................................................. 6

**STATUTES**

5 U.S.C § 702 ................................................................................................................ 17

5 U.S.C. § 704 ............................................................................................................... 16

8 U.S.C § 1103 (a)(1) .................................................................................................... 15

8 U.S.C § 1252 (g) ..................................................................................................... 1, 8

# INTRODUCTION

Plaintiffs' motion to complete the administrative record is premised on a fundamental misunderstanding of the nature and scope of judicial review in challenges to agency action under the Administrative Procedure Act ("APA").

It is black-letter administrative law that where, as here, there is a "contemporaneous explanation" for an agency's decision, its validity "must . . . stand or fall on the propriety of that finding." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam). "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citation omitted). "If that finding is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded to [the agency] for further consideration." *Camp*, 411 U.S. at 143.

Here, the decision to wind down DACA is not subject to judicial review in the first place: such exercises of prosecutorial discretion are generally committed to agency discretion by law, *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985), and Congress has expressly barred judicial review of decisions to deny deferred action, 8 U.S.C. § 1252(g); *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 485 & n.9 (1999). In any event, Defendants have produced a 256-page administrative record that includes all of the non-privileged documents that were actually considered by the decisionmaker. If Plaintiffs believe that that record is "patently inadequate" to support the agency's decision, Pls.' Br. 2 (ECF No. 65), then the next step is not to "complete" the record with documents never even considered by the decisionmaker. It is instead for Plaintiffs to file a merits brief asking that the decision be set aside. *See Camp*, 411 U.S. at 143.

To be sure, supplementation of an administrative record may be appropriate in some circumstances—for example, upon a "strong showing" that the agency has acted in bad faith, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), or where it is "clear" that the decisionmaker relied on documents outside of the administrative record, *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991).  But Plaintiffs make no charge of bad faith here, *see* Pls.' Br. 8, and they identify no nonprivileged document actually considered by the decisionmaker that was not included in the administrative record.

Nor could Plaintiffs satisfy the basic rationale underlying these exceptions:  that the administrative record produced by the agency reflects "such [a] failure to explain administrative action as to frustrate effective judicial review." *Camp*, 411 U.S. at 142–43.  The pathway to the Acting Secretary's decision here is plain:  Given the significant litigation risk posed by the Supreme Court and Fifth Circuit decisions in *Texas v. United States* upholding the nationwide injunction of DAPA, and the substantial similarities between DAPA and DACA, when the *Texas* plaintiffs threatened to amend their complaint to challenge DACA, the Acting Secretary was faced with two options.  On the one hand, she could take action to wind down DACA in an orderly fashion, minimizing the disruption to current recipients.  On the other, continued litigation would in all likelihood risk *another* nationwide injunction that would abruptly end DACA as well, plunging its 800,000 recipients into uncertainty.  The Acting Secretary chose the least disruptive option: an orderly wind-down.  Plaintiffs may disagree with that choice, but they cannot credibly claim that additional information is needed to understand the rationale behind it.

Equally mistaken is Plaintiffs' suggestion that the administrative record should include materials that reflect the internal deliberations of Executive Branch officials.  Indeed, it is widely understood that deliberative and other privileged materials are not properly considered part of an

administrative record, and thus need not be included on a privilege log if omitted.  As the Supreme Court held long ago, it is "not the function of the court to probe the mental processes of the Secretary."  *United States v. Morgan*, 313 U.S. 409, 422 (1941) (citation omitted).  Thus, where, as here, "a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons."  *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added; citation omitted).  The Ninth Circuit has never held to the contrary.

Defendants recognize, of course, that this Court has directed them to "file . . . a privilege log" regarding its order, ECF No. 67, albeit without the benefit of full briefing on the issue.  Defendants respectfully submit that that order is ambiguous, as it is unclear whether the requested privilege log should be confined to the administrative record as they conceive of it—that is, the documents actually considered by the decisionmaker—or instead the vastly broader universe of documents that Plaintiffs wish to be included.  A broad reading would not only be inconsistent with the presumption of regularity accorded to the agency's certification of the record, but literally impossible to comply with in the roughly 52 hours that the Court allotted.[1]  It would also require Defendants to apply Plaintiffs' vague conception of what they think should fall within the scope of the administrative record, even though the Court has not yet opined on that issue.  Nevertheless, in a good-faith effort to comply with the Court's order to the best of

_____

[1] As stated in the declarations attached to this Opposition as Exhibits B-E, the compilation of documents responsive to pending discovery requests, for DHS alone, have required the search, collection and processing of more than 1.2 million documents from more than 100 custodians. The collection effort alone has taken hundreds of hours.  Review for responsiveness and privilege will likely require hundreds more.  Plaintiffs' broad construction of the administrative record would likely necessitate the search, collection, processing and review of a similar volume of data as Plaintiffs' construction of the administrative record mimics the scope of the pending discovery requests.

their abilities, Defendants are filing herewith a privilege log that includes the privileged documents actually considered by the decisionmaker.[2]  In addition, Defendants will bring hard copies of those documents identified in the privilege log to the October 16 hearing, as directed by the Court.  If the Court determines that it must review those documents, however, at most they should be lodged ex parte and under seal.  Moreover, if the Court determines that any of those documents should be placed in the administrative record or released to Plaintiffs or others, Defendants respectfully request that the Court stay any such order to enable them to seek meaningful appellate review, potentially including mandamus, on an expedited basis.

Because Plaintiffs fail to meet their burden to demonstrate bad faith or provide clear evidence that any nonprivileged document was actually considered by the decisionmaker—much less show that the record is so bare that it somehow frustrates judicial review—the Court should deny Plaintiffs' motion and review the agency's decision on the record it certified as full and accurate.

## RELEVANT BACKGROUND

### A.    DACA

On June 15, 2012, the Department of Homeland Security ("DHS") announced the policy now commonly known as DACA, or Deferred Action for Childhood Arrivals.  *See* Memorandum for David Aguilar, Acting Commissioner, U.S. Customs and Border Protection, et al., from Janet Napolitano, Secretary of Homeland Security, *Re: Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012) ("DACA

---

[2] Consistent with the Court's "Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Aslup," (ECF No. 23), Defendants attest that steps have been taken to ensure the confidentiality of the records and communications listed in the attached privilege log, and further affirm that they have no knowledge of distribution of these records and communications outside of the federal government.

Memo"), Admin. R. ("AR") 1–3 (ECF No. 64-1).   DACA allowed for deferred action consideration for "certain young people who were brought to this country as children" and therefore "[a]s a general matter . . . lacked the intent to violate the law."  AR 1.

Under DACA, an individual may be considered for deferred action if he:

- Was under 16 when he entered the United States;

- Was under 31 as of June 15, 2012;

- Was present in the United States on June 15, 2012, and when requesting DAPA, and has continuously resided in the United States since June 15, 2007;

- Had no lawful immigration status as of June 15, 2012;

- Is currently in school, has graduated from high school, has obtained a GED, or was honorably discharged from the U.S. Armed Forces or Coast Guard; and

- Has not been convicted of a felony, a significant misdemeanor, or multiple misdemeanors, and does not otherwise pose a threat to national security or public safety.

*See id.*   Following completion of a background check, successful applicants would receive deferred action for a period of two years, subject to renewal.  AR 2–3.

## B.   DAPA and Expanded DACA

DHS later expanded DACA and created a new, similar policy known as Deferred Action for Parents of Americans and Lawful Permanent Residents, or DAPA.  *See* Memorandum for Leon Rodriguez, Director, U.S. Citizenship and Immigration Services, from Jeh Johnson, Secretary of Homeland Security, *Re: Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents* (Nov. 20, 2014) ("DAPA Memo"), AR 37–41.  DAPA would have allowed for deferred action consideration for "the parents of U.S. citizens or lawful permanent residents" who had lived in the United States for several years and were "otherwise not enforcement priorities."  *AR 39.*

Under DAPA, an individual could be considered for deferred action if he:

- Had a child who was a U.S. citizen or lawful permanent resident on November 20, 2014;

- Had no lawful immigration status as of November 20, 2014;

- Was present in the United States on November 20, 2014, and when requesting DAPA, and had continuously resided in the United States since January 1, 2010;

- Was not an enforcement priority—e.g., had not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors; was not a threat to national security, border security, or public safety; and had not committed certain other immigration violations; and

- Presented no other factors that made deferred action inappropriate.

AR 40.

The DAPA Memo also expanded DACA in three ways:  it removed the age cap, allowing individuals over 30 to file; it extended the DACA validity period from 2 to 3 years; and it adjusted the date-of-entry cutoff, permitting individuals to request DACA if they had entered the United States by January 1, 2010 (rather than June 15, 2007).  AR 39–40.

## C.   *Texas v. United States*

The DAPA Memo was challenged by a coalition of 26 states, led by Texas, who sought to enjoin its implementation.  The U.S. District Court for the Southern District of Texas issued a nationwide preliminary injunction, holding that the plaintiffs were likely to succeed on their claim that the DAPA Memo violated the APA's notice-and-comment requirements.  *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015).

The Fifth Circuit affirmed.  It agreed that the plaintiffs were likely to succeed on their notice-and-comment claim, and further held that the plaintiffs were likely to succeed on their claim that the DAPA Memo was "manifestly contrary" to the INA, which sets forth a "careful

plan" prescribing how aliens may normalize their immigration status. *Texas v. United States*, 809

F.3d 134, 171–76, 186 (5th Cir. 2015).

The Supreme Court affirmed by an equally divided Court, *United States v. Texas*, 136 S.

Ct. 2271 (2016) (per curiam), and denied the government's request for a rehearing upon the

confirmation of a ninth Justice, 137 S. Ct. 285 (2016), leaving the preliminary injunction in place.

On November 18, 2016, the parties jointly moved the district court to stay merits proceedings to

allow them to evaluate "how they might choose to move forward" given the upcoming "change

in Administration[s]."  Joint Mot. to Stay Merits ¶ 2, *Texas v. United States*, No. 14-254 (S.D.

Tex. Nov. 18, 2016) (ECF No. 430).

On June 15, 2017, DHS rescinded the DAPA Memo, including its provisions expanding

DACA—a decision that is not challenged here.  *See* Memorandum for Kevin McAleenan, Acting

Commissioner, U.S. Customs and Border Protection, et al., from John F. Kelly, Secretary of

Homeland Security, *Re: Rescission of November 20, 2014, Memorandum Providing for Deferred

Action for Parents of Americans and Lawful Permanent Residents* (June 15, 2017), *available at*

https://go.usa.gov/xncr3.

On June 29, 2017, Texas and several other plaintiff states threatened to amend their

complaint to also challenge the DACA Memo, arguing that it suffers from the same infirmities as

the DAPA Memo.  *See* Letter from Ken Paxton, Attorney General of Texas, to Jeff Sessions,

Attorney General of the United States (June 29, 2017), AR 238–240.

### D.    Wind-Down of DACA

On September 5, 2017, DHS adopted a plan to wind down the DACA policy in an orderly

fashion.  *See* Elaine C. Duke, Acting Secretary of Homeland Security, *Memorandum on

Rescission of Deferred Action for Child Arrivals* (Sept. 5, 2017) ("Wind-Down Policy"), AR 252–

256.  In view of the "substantial[] similar[ities]" between DACA and DAPA, AR 253, as well as the significant litigation risk posed by "the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation," AR 255, the Acting Secretary rescinded the DACA Memo, instructing that deferred action should instead be used "only on an individualized, case-by-case basis," AR 253.

At the same time, to facilitate an orderly transition, the Wind-Down Policy provides that:

- For *current DACA recipients*, DHS "[w]ill not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum for the remaining duration of their validity periods."  AR 255.

- For *new DACA requests*, DHS "[w]ill adjudicate—on an individual, case-by-case basis—properly filed pending DACA initial requests and associated applications for Employment Authorization Documents that have been accepted by [DHS] as of" September 5, 2017, but "[w]ill reject all DACA initial requests and associated applications for Employment Authorization Documents filed after" that date.  *Id.*

- For *DACA renewal requests*, DHS "[w]ill adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries that have been accepted by [DHS] as of" September 5, 2017.  Further, DHS will similarly adjudicate such requests and applications "from current beneficiaries whose benefits will expire between [September 5, 2017,] and March 5, 2018, that have been accepted by the Department as of October 5, 2017."  *Id.*

## ARGUMENT

Defendants certified and lodged an administrative record consisting of all documents actually considered by the Acting Secretary as part of her decision to institute an orderly wind-down of DACA.  *See* AR 1–256.  That record amply explains the basis for the agency's decision, and Plaintiffs could not credibly contend otherwise—even if judicial review were not barred here. *See Heckler*, 470 U.S. at 831–32 (agency enforcement decisions generally committed to agency discretion); 8 U.S.C. § 1252(g); *AADC*, 525 U.S. at 485 & n.9 ("Section 1252(g) was directed against a particular evil:  attempts to impose judicial constraints upon prosecutorial discretion"

and "seems clearly designed to give some measure of protection to 'no deferred action' decisions.").

Plaintiffs' alternative conception of the proper contents of the record—to include documents that were never considered by the decisionmaker, that are deliberative or otherwise privileged, and that are internal to other agencies—bears no resemblance to any traditional definition of an administrative record and should be squarely rejected. Indeed, Plaintiffs attempt to transform the proper definition of an administrative record into a wish-list of materials they would like the government to produce—whether or not those documents and communications were actually part of the decision under review (or even exist)—and notwithstanding that Plaintiffs are taking full advantage of the expedited discovery that this Court has permitted to proceed over Defendants' continued objection. Plaintiffs' motion should be denied.

## I.   EVEN ASSUMING THIS CASE WERE JUSTICIABLE, PLAINTIFFS FAIL TO MEET THEIR BURDEN TO REBUT THE PRESUMPTION THAT THE ADMINISTRATIVE RECORD WAS PROPERLY DESIGNATED

The Supreme Court has repeatedly explained that when there is a "contemporaneous explanation" for an agency's decision, its validity "must . . . stand or fall on the propriety of that finding." *Camp*, 411 U.S. at 143. "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Florida Power*, 470 U.S. at 743–44. "If that finding is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded to [the agency] for further consideration." *Camp*, 411 U.S. at 143. Thus, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id*. at 142.

It is therefore a fundamental principle of administrative law that, with rare exceptions, judicial review is "confined to the administrative record" designated by the agency. *Texas Rural*

*Legal Aid Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991).  This rule recognizes that, in APA cases, "the agency and not the court is the principal decision maker," and it discourages courts from "cavalierly . . . supplement[ing] the record . . . in the belief that they were better informed than the administrators empowered by Congress."  *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1325 (D.C. Cir. 1986) (en banc).  Accordingly, the agency officials familiar with the decision under review are presumed to have properly designated the administrative record "'absent clear evidence to the contrary.'"  *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).

To overcome this presumption, it is not enough merely to cast aspersions at the agency's motives, *see* Pls.' Br. 3 (complaining of a supposed "shell game"), or to suggest that the record is incomplete because its contents fall short of Plaintiffs' capacious imagination, *see id.* at 9–10. Rather, they must make a "strong showing" of bad faith, *Overton Park*, 401 U.S. at 420, or offer "'clear evidence'" that records actually considered by the decisionmaker were deliberately or negligently excluded from the record, *Cook Inletkeeper*, 400 F. App'x at 240 (citation omitted). Indeed, a "plaintiff must present 'well-nigh irrefragable proof' of bad faith or bias on the part of governmental officials" to overcome the presumption that the agency discharged its duties in good faith. *Adair v. England*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002) (citations omitted).  That is because "[s]upplementation of an administrative record is the exception, not the rule" in APA cases. *Cactus Corner, LLC v. USDA*, 346 F. Supp. 2d 1075, 1105 (E.D. Cal. 2004).

Moreover, these exceptions are narrow departures from the more general prohibition on intrusion through litigation into the deliberative process of the agency.  *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (it is "not the function of the court to probe the mental

processes of the Secretary").  Where, as here, "a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added). "That is because the actual subjective motivation of agency decisionmakers is *immaterial* as a matter of law—unless there is a showing of bad faith or improper behavior." *Id.* at 1279-80 (emphasis added). Accordingly, it is generally accepted that deliberative and other privileged materials "are not part of the administrative record." *Nat'l Ass'n of Chain Drug Stores v. HHS*, 631 F. Supp. 2d 23, 27-28 (D.D.C. 2009) (collecting cases).

Plaintiffs rightly concede that DHS's certification of the record is entitled to a presumption of completeness, Pls.' Br. 7, which can be overcome only by a "showing of impropriety in the process." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).  Plaintiffs fail to rebut that presumption here.

> **A.    Plaintiffs Point to No "Clear Evidence" that the Administrative Record Lacks Any Nonprivileged Document Actually Considered by the Acting Secretary**

Plaintiffs contend that the administrative record should consist of "every document and communication considered by [any employee within] DHS or DOJ, including any communications from White House officials or staff or any other Executive Branch component sent to [any employee] of DHS or DOJ, as part of the process of determining whether to continue, modify, or rescind DACA." Pls.' Br. 8.  They cite no case adopting such an expansive view of the contents of an administrative record, and any such rule, if applied generally, would impose crushing, discovery-like burdens on Executive Branch agencies defending even routine agency action.

Moreover, the cases that Plaintiffs do cite actually undermine their argument.  For example, they appear to infer their sweeping rule from *Thompson v. United States Department of Labor*, 885 F.2d 551 (9th Cir. 1989), which they cite for the oft-repeated proposition that an administrative record generally "'consists of all documents and materials directly or indirectly considered by agency decisionmakers.'"  Pls.' Br. 7 (quoting *Thompson*, 885 F.2d at 555).  But, in that case, the court emphasized that it was "reviewing the *Secretary's* decision dismissing [the plaintiff's] complaints . . . , not the ALJ's recommended decision."  *Thompson*, 885 F.2d at 555.  Because "judicial review is to be based on the full administrative record before the agency *when it made its decision*," the court concluded that "the critical inquiry is whether these [documents] were before the *Secretary* at the time of the decision."  *Id.* at 555–56 (citing *Overton Park*, 401 U.S. at 420) (second emphasis added).[3]

The administrative record produced here is faithful to that principle, and contains every nonprivileged document actually considered by the decisionmaker.  Plaintiffs point to no "clear evidence" to the contrary.  *Cook Inletkeeper*, 400 F. App'x at 240.

## B.     Deliberative and Other Privileged Documents Are Not Properly Part of an Administrative Record

Equally misplaced is Plaintiffs' suggestion that documents reflecting deliberations within the Executive Branch—such as drafts, recommendations, option memos, and the like, *see* Pls.' Br. 7, 9–10—were improperly omitted from the administrative record.  In fact, it is generally

---

[3] Likewise, in *People of State of California ex rel. Lockyer v. U.S. Department of Agriculture*, Nos. C05-3508 & C05-4038, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006), as in *Thompson*, the court merely applied the uncontroversial principle that an administrative record generally includes material considered directly and indirectly by the decisionmaker.  *See id.* at *2.  Moreover, the *Lockyer* plaintiffs challenged an agency final rule, implemented through formal rulemaking and based on an expansive factual record—a context vastly different from the policy judgment at issue here.

accepted that deliberative and other privileged materials are not properly considered part of an administrative record.

Plaintiffs insist that, by withholding privileged materials, Defendants attempt to "shield wide swaths of the administrative record" from review.  Pls' Br. 14.  But that argument rests on the incorrect premise that privileged materials, including internal agency deliberations and communications of the sort Plaintiffs seek, are part of an administrative record in the first instance.  They rely principally on a handful of district court decisions crediting that premise and requiring the production of a privilege log.  Yet Plaintiffs avoid mention of the Ninth Circuit's and other appellate courts' contrary decisions on this issue, and also fail to account for the many district court decisions rejecting their argument.

The Ninth Circuit, like every other court of appeals, has never held that privileged materials must be included as part of an administrative record.  To the contrary, the Ninth Circuit has distinguished between, on the one hand, what must properly be included in the record and, on the other, "predecisional transcripts and related documents" concerning "the internal deliberative processes of the agency [and] the mental processes of individual agency members."  *Portland Audubon Soc'y*, 984 F.2d at 1549 (citing *San Luis Obispo Mothers for Peace*, 751 F.2d at 1325) ("The principle that judges review administrative action on the basis of the agency's stated rationale and findings, and our correlative reluctance to supplement the record, is well-established.") (emphasis omitted)).  This approach moreover accords with that taken by the other court of appeals to have considered the question.  *See, e.g.*, *San Luis Obispo Mothers for Peace, v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (en banc) (explaining that, absent bad faith, transcripts of deliberative agency proceedings must not be considered on judicial review), *cert. denied*, 479 U.S. 923 (1986); *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968

F.2d 1438, 1455-58 (1st Cir. 1992) (upholding non-inclusion in record of documents that were subject to attorney-client and deliberative process privileges); *Norris & Hirshberg, Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947) ("[I]nternal memoranda made during the decisional process . . . are never included in a record"); *see also Madison Cty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 622 F.2d 393, 395 n.3 (8th Cir. 1980) (stating that "staff memoranda and recommendations . . . used by an agency in reaching a decision . . . may be excluded from the record because of concerns over proper agency functioning").  The rationale underlying these decisions upholding the exclusion of privileged materials from the record is, as the D.C. Circuit has explained, because "the reasonableness of the agency's action is judged in accordance with its *stated* reasons."  *In re Subpoena*, 156 F.3d at 1279–80 (emphasis added).  "[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior."  *Id.* at 1279-80.[4]

Based on the reasoning of *Portland Audubon Society*, which is aligned with that of other courts of appeals, district courts both within and beyond this circuit have repeatedly declined to require inclusion of privileged materials in the administrative record.  *See, e.g.*, *United States v. Carpenter*, No. 3:99-CV-00547-RLH, 2011 WL 4763675, at *3 (D. Nev. Oct. 7, 2011) (denying motion to complete record with documents that "are otherwise protected by privilege");

---

[4] Indeed, in the D.C. Circuit—where perhaps the majority of record-review cases are litigated—it has long been the general rule that "internal memoranda made during the decisional process . . . are never included in a record." *Norris & Hirschberg Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947); *see also, e.g.*, *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ("A complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege."); *Nat'l Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 27-28 ("deliberative materials are not part of the administrative record"); *Amfac Resorts LLC v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001) ("Deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record.").

*California v. Dep't of Labor*, No. 13-2069, 2014 WL 1665290, at *13  (E.D. Cal. Apr. 24, 2014) (noting that "internal agency deliberations are properly excluded from the administrative record"); *see also Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) ("[D]eliberative materials antecedent to the agency's decision fall outside the administrative record."); *Coal. to Protect Cowles Bog Area v. Salazar*, No. 2:12-CV-515, 2013 WL 595895, at *4 (N.D. Ind. Feb. 13, 2013) (denying motion to supplement record and affirming agency's decision to exclude draft documents).

Here, large swaths of the documents that Plaintiffs seek fall squarely within the deliberative process privilege.  *See* Pls.' Br. 9–10 (seeking, *inter alia*, "All documents and communications discussing policy alternatives to rescinding DACA and any materials relating to the internal review, inter-agency review, or experts' feedback regarding these alternatives," and "All documents analyzing, considering, or attempting to reconcile the inconsistency between the portions of the Attorney General and Acting DHS Secretary that DACA is illegal and their earlier contrary positions.").  That privilege protects internal agency deliberations from disclosure in order to (1) encourage open and frank discussions among decisionmakers; (2) guard against premature disclosure of proposed policies before they are adopted; and (3) avoid public confusion from the disclosure of reasons that were not in fact ultimately the grounds for an agency's decision.  *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

These documents are inherently predecisional and deliberative, and Plaintiffs offer no reason to doubt that they fall within the scope of the privilege.  Moreover, several of the cases that Plaintiffs *themselves* cite explicitly recognize that deliberative and other privileged materials

need not be included in an administrative record. For example, Plaintiffs rely on *Amfac Resorts LLC v. U.S. Department of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001), for the proposition that "if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." Pls.' Br. 7. But they conspicuously omit what that court said next: "However, deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record." *Amfac*, 143 F. Supp. 2d at 13. Likewise, in *Lockyer*, the court explained: "Even under the correct standard, some agency documents, such as purely internal deliberative materials, may be protected from inclusion in the administrative record." 2006 WL 708914, at *4

For similar reasons, Plaintiffs' reliance *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771 (N.D. Ind. 1996), is misplaced, as it cannot be squared with Supreme Court precedent. In that case, the agency determined that the plaintiffs did not meet the criteria for federal recognition as an Indian tribe, and published the reasons for that decision. *Id*. at 774. Finding that the "essence of judicial review of administrative action is scrutiny of the reasoning process of the decision maker," *id*. at 776 (citation omitted), the court ordered the administrative record to be supplemented with draft reports prepared by government contractors, and notes of government staff members. *Id*. at 778, 781. This intrusive view of the Court's role is fundamentally at odds with the principles that it is "not the function of the court to probe the *mental processes* of the Secretary," *Morgan*, 313 U.S. at 422 (emphasis added), and that "the reasonableness of the agency's action is judged in accordance with its *stated* reasons," *In re Subpoena Duces Tecum*, 156 F.3d at 1279 (emphasis added). It should not be followed here.

C.     **Internal DOJ Documents Not Actually Considered by the Acting Secretary Have No Place in the Administrative Record**

Plaintiffs' suggestion that internal DOJ documents should be included in the administrative record is similarly mistaken.  It is the Secretary, not the Attorney General, who is vested with the statutory authority to enforce our Nation's immigration laws, *see* 8 U.S.C § 1103(a)(1), and Plaintiffs do not dispute that the decision to wind down DACA was ultimately hers.

In their APA challenge, Plaintiffs specify, as they must, an alleged "'final agency action,'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting 5 U.S.C. § 704), that they believe is unlawful and causing them harm:  the September 5, 2017, DHS memorandum, signed by Acting Secretary of Homeland Security Elaine C. Duke, rescinding the DACA policy.  That APA challenge—to a DHS memorandum, rescinding a DHS policy, which had been announced by a previous DHS memorandum, and which was applied by DHS over the past five years—is necessarily a challenge to allegedly unlawful agency action by DHS.  *See* 5 U.S.C. § 702 (creating a cause of action for "[a] person suffering legal wrong because of agency action").

That the Acting Secretary received advice from others members of the Executive Branch is not only commonplace, but entirely appropriate, and it does not change the analysis.  Indeed, that is exactly why Defendants included some DOJ documents in the administrative record: because (1) they were nonprivileged and (2) they were actually considered by the Acting Secretary in making her decision.  *See* AR 4–36 (Office of Legal Counsel Memorandum); AR 238–40 (letter to the Attorney General); AR 251 (letter from the Attorney General).  But internal DOJ—or, for that matter, White House—documents that were not considered by the Acting Secretary, by contrast, have no place in the administrative record for a DHS decision.

II.     **A PRIVILEGE LOG SHOULD NOT BE REQUIRED**

Given the judicial consensus that privileged materials do not form part of the record, *see supra* Section I(B), it is hardly surprising that the Ninth Circuit has declined to require an agency to supply a privilege log with the record.  *See Cook Inletkeeper*, 400 F. App'x at 240.  Numerous district courts within this circuit have followed the Ninth Circuit's lead.  *See San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-CV-01290-LJO-GSA, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016) ("To require a privilege log as a matter of course in any administrative record case where a privilege appears to have been invoked would undermine the presumption of correctness."); *California*, 2014 WL 1665290, at *13; ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log."); *Sierra Pac. Indus. v. Dep't of Agric.*, No. CIV S-11-1250 KJM EFB, 2011 WL 6749837, at *3 (E.D. Cal. Dec. 22, 2011).  And that conclusion is, of course, not limited to district courts within this circuit.  *See, e.g.*, *Nat'l Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 27 (denying the plaintiff's motion to compel defendants to produce a privilege log of any privileged documents since such predecisional, deliberative documents "are not part of the administrative record to begin with"); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 801 (E.D. Va. 2008); *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *8-9 (N.D. Ill. Aug. 23, 2013).

Faced with a substantial body of contrary authority, Plaintiffs rely on a handful of cases from this Court that are either distinguishable on their facts or decided before the Ninth Circuit's ruling in *Cook Inletkeeper*.  Pls.' Br. 6–8.  They lean most heavily on *Gill v. Department of Justice*, in which another judge of this Court required the Government to "revisit the administrative record to ensure its completeness."  No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015).  The Court did so, however, only after finding that the

agency's certification was facially deficient.  The unduly narrow scope of the record certified in *Gill* is not present in this case.

Plaintiffs also point to a January 1999 guidance memorandum from the Department of Justice's Environment and Natural Resources Division ("ENRD") concerning the materials that should be included in an administrative record.  What Plaintiffs fail to acknowledge, however, is that the cited ENRD guidance memorandum is outdated and was expressly superseded in 2008.  *See* Memorandum from Ronald J. Tenpas, Assistant Attorney General, Department of Justice (Dec. 23, 2008) ("2008 DOJ Memo"), annexed to Decl. of Kate Bailey.  The correct articulation of the position of the Department of Justice, stated expressly in the 2008 DOJ Memo but ignored by Plaintiffs, is that deliberative documents are *not* part of the administrative record on review.  *See id.* at 1 ("The Department of Justice has defended in litigation the legal position that deliberative documents are not generally required in an administrative record, and . . . [that] no privilege log reflecting such documents would need to be prepared.").  It is therefore hardly surprising that multiple courts have rejected similar attempts by other plaintiffs to rely on the outdated ENRD guidance.  *See Oceana, Inc. v. Gutierrez*, No. 08-00318 (ESH/AK), 2009 WL 1491516, at *4 n.4 (D.D.C. May 28, 2009), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011); *Coastal Conservation Ass'n v. Locke*, No. 2:09-cv-641-FtM-29SPC, 2010 WL 1439071, at *4 (M.D. Fla. Apr. 12, 2010).

Finally, practical considerations underlying APA litigation warrant denial of Plaintiffs' request for a privilege log, which would otherwise lead only to discovery disputes and likely further motion practice.  As the Supreme Court has made clear, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp*, 411 U.S. at 142.  This form of judicial review permits the Court to

focus on the agency's stated reasons, rather than probing the immaterial subjective views of individual agency personnel. *In re Subpoena Duces Tecum*, 156 F.3d at 1279. A rule "requiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA." *Great Am. Ins. Co.*, 2013 WL 4506929, at *9. It would also pose substantial burdens on agencies, leading to delays and frustrating APA judicial review on the merits. "The privilege question would have to be resolved before judicial review of the administrative decision could even begin." *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 & n.4 (D.D.C. 2007).

Although Defendants expressly maintain their position that no log is required to substantiate the withholding of privileged documents from a properly constructed administrative record, consistent with this Court's Order of October 10, 2017, Defendants have filed a privilege log that includes all documents actually considered by Acting Secretary Duke in her decision to rescind the DACA policy. Because the administrative record is complete, no further privilege log should be required.

### III. THE ACTING SECRETARY'S DECISION TO RESCIND DACA ON THE BASIS OF SUBSTANTIAL LITIGATION RISK DID NOT WAIVE ANY APPLICABLE PRIVILEGE

Plaintiffs' final argument—that Defendants have waived *all* assertions of *any* applicable privilege—also lacks merit. Plaintiffs contend that the Acting Secretary placed the "lawfulness of DACA directly at issue" by "claiming that a purported concern about DACA's legality motivated the decision." Pls.' Br. 15. That argument fundamentally misconstrues the purpose and scope of this Court's review under the APA, even assuming that this case were justiciable at all. This case does not turn on Plaintiffs'—or, indeed, this Court's—independent judgment about the legality of DACA. Nor does it turn on whether Acting Secretary Duke's assessment that

DACA was vulnerable to the same type of nationwide injunction upheld by the Supreme Court in the DAPA litigation would ultimately have proven correct.  Rather, under the limited scope of this Court's review under the APA, the question is whether, given the circumstances—including the significant litigation risk posed by the pending proceedings in *Texas v. United States*—that decision was irrational, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which requires the Court to assess whether the "contemporaneous explanation of the agency decision" is "sustainable on the administrative record made," *Camp*, 411 U.S. at 143. Were Plaintiffs' argument accepted, the government would be deemed to have waived all privileges any time an assessment of the legal landscape informed an agency's decisionmaking. Tellingly, Plaintiffs cite no authority for this stunning proposition.

The cases cited by Plaintiffs are inapposite.  Plaintiffs quote, without context, language from *Bittaker v. Woodford* suggesting that litigants may not use privilege as both "a shield and a sword."  331 F.3d 715, 719 (9th Cir. 2003).  But that case, which arose in the fundamentally different context of a habeas corpus petition alleging ineffective assistance of counsel, merely applied the longstanding rule that a party waives attorney-client privilege by placing "the lawyer's performance at issue."  *Id*. at 718.  That decision has no relevance here, where Defendants' assertions of privilege ensure only that the Court decides this case based on a properly constructed administrative record.  And the primary case on which Plaintiffs rely, *National Council of La Raza v. U.S. Department of Justice*, stands only for the unremarkable proposition that an agency can waive the deliberative process privilege by choosing to expressly adopt and incorporate by reference in its official policy material that would otherwise be privileged.  411 F.3d 350, 356-57 (2d Cir. 2005).  Defendants have not expressly adopted or incorporated the materials Plaintiffs seek—indeed, their motion seeks the forced disclosure of information that has not been made

public and for which no waiver applies.  The Court should therefore reject Plaintiffs' argument that Defendants have waived any assertion of privilege.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel completion of the administrative record should be denied.

Dated: October 12, 2017                                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIAN STRETCH
United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Branch Director

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

STEPHEN M. PEZZI
Trial Attorney

*/s/   Kate Bailey*
KATE BAILEY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 514-9239
Fax: (202) 616-8470
Email: kate.bailey@usdoj.gov
MD Bar No. 1601270001

*Attorneys for Defendants*

**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380)**
**Defendants' Opposition to Plaintiffs' Motion to Compel Completion of the Administrative Record**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2017, I electronically transmitted the foregoing document and attachments to the Clerk of Court using the ECF System for filing.

/s/ Kate Bailey
KATE BAILEY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone: (202) 514-9239
Fax: (202) 616-8470
Email: kate.bailey@usdoj.gov
MD Bar No. 1601270001