Jeffrey M. Davidson (SBN 248620)
Alan Bersin (SBN 63874)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: jdavidson@cov.com,
abersin@cov.com

*Attorneys for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California*

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr. (SBN 132099)
tboutrous@gibsondunn.com
Ethan D. Dettmer (SBN 196046)
edettmer@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

*Attorneys for Plaintiffs Dulce Garcia, Miriam Gonzalez Avila, Saul Jimenez Suarez, Viridiana Chabolla Mendoza, Norma Ramirez, and Jirayut Latthivongskorn*

Xavier Becerra
Attorney General of California
Michael L. Newman
Supervising Deputy Attorney General
James F. Zahradka II (SBN 196822)
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone: (510) 879-1247
E-mail: James.Zahradka@doj.ca.gov

*Attorneys for Plaintiff State of California*

Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Nancy L. Fineman (SBN 124870)
nfineman@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

*Attorneys for Plaintiff City of San Jose*

[*Additional Counsel Listed on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | CASE NO. 17-CV-05211-WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPLETE THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706**<br><br>Judge: Honorable William Alsup<br>Hearing: October 16, 2017, 11:00 a.m.<br>Courtroom: 8, 19th Floor |

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF MAINE, STATE OF MARYLAND, and STATE OF MINNESOTA, <br><br>        Plaintiffs, <br><br>        v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, and the UNITED STATES OF AMERICA, <br><br>        Defendants. | CASE NO. 17-CV-05235-WHA |
| CITY OF SAN JOSE, a municipal corporation, <br><br>        Plaintiff, <br><br>        v. <br><br> DONALD J. TRUMP, President of the United States, in his official capacity, ELAINE C. DUKE, in her official capacity, and the UNITED STATES OF AMERICA, <br><br>        Defendants. | CASE NO. 17-CV-05329-WHA |
| DULCE GARCIA, MIRIAM GONZALEZ AVILA, SAUL JIMENEZ SUAREZ, VIRIDIANA CHABOLLA MENDOZA, NORMA RAMIREZ, and JIRAYUT LATTHIVONGSKORN, <br><br>        Plaintiffs, <br><br>        v. <br><br> UNITED STATES OF AMERICA, DONALD J. TRUMP, in his official capacity as President of the United States, U.S. DEPARTMENT OF HOMELAND SECURITY, and ELAINE DUKE, in her official capacity as Acting Secretary of Homeland Security, <br><br>        Defendants. | CASE NO. 17-CV-05380-WHA |

# Table of Contents

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I. The Administrative Record Filed By Defendants Is Incomplete. ....................... 3

A. Defendants Rely On An Incorrect Legal Standard. ............................................ 3

B. Defendants Impermissibly Excluded From The Record Materials Considered By DOJ And All Communications From The White House To DOJ Or DHS. ............................... 4

C. Defendants Impermissibly Excluded From The Record Materials Considered By DHS ... 5

D. Defendants Impermissibly Excluded From The Record Materials That Pre-Dated The Agency's Final Decision. ................................................................................................ 7

II. Plaintiffs Have Rebutted The Presumption Of Regularity. ................................ 8

A. Plaintiffs Need Not Show Bad Faith Or "Impropriety In The Process." ............ 9

B. Plaintiffs Need Not Show That Documents Were "Deliberately Or Negligently Excluded From The Record." .............................................................................................. 11

III. Defendants Construe Their Privilege Protections Too Broadly And Have Waived Any Assertion of Privilege. ................................................................................................ 12

A. Defendants Must Provide The Full Administrative Record. ............................. 12

B. Defendants Have Waived Any Assertion Of Privilege By Submitting A Deficient Privilege Log And Putting The Legality Of DACA At Issue. ........................................... 14

C. Defendants Must Provide Documents They Withhold As Privileged For *In Camera* Inspection. ................................................................................................................ 15

CONCLUSION ................................................................................................................... 15

## INTRODUCTION

The Administrative Procedure Act ("APA") empowers courts to review agency action on the basis of "the whole record" that was before the agency. 5 U.S.C. § 706. For example, the "whole record" includes documents indirectly considered by the agency, including documents generated by coordinate agencies and documents considered by subordinates. A complete record is essential if the Court is to conduct the "substantial inquiry" and "thorough, probing, in-depth review" required under the APA. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). By contrast, the government's production of anything less than the "whole record" results in a "fictional account of the actual decisionmaking process" and renders judicial review "almost meaningless." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).

The paltry 256-page administrative record supplied by Defendants Department of Homeland Security ("DHS") and Acting DHS Secretary Elaine Duke represents just such a "fictional account" of the decision to rescind the Deferred Action for Childhood Arrivals ("DACA") program. As Defendants concede, the record is devoid of any internal memoranda, meeting notes, emails, or communications regarding the decision to rescind DACA ("the Rescission"). It similarly lacks any drafts, revisions, or prior versions of the Rescission. It omits materials from other Executive Branch components such as the Department of Justice. As Defendants further concede, these documents were clearly before DHS and relate to its decision to rescind DACA.

In their opposition to Plaintiffs' motion, Defendants fail to substantively address the omissions from the administrative record or meaningfully distinguish the authority cited in Plaintiffs' opening brief. Instead, Defendants rely on an invented standard regarding the proper contents of an administrative record, which would, if adopted, destroy APA review. Specifically, Defendants assert that a document should be included in the administrative record only if it was "actually [i.e., directly] considered by the Acting Secretary." Defs.' Opp'n to Pls.' Mot. to Compel Completion of the Admin. R. at 11 (Dkt. No. 71) [hereinafter "Opp."]; *see also id.* at 12. That standard cannot be reconciled with the Ninth Circuit's holding that "[t]he 'whole' administrative record . . . consists of all documents and materials *directly or indirectly* considered by *agency decision-makers* and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis

1

1 added). Defendants' "actually considered" standard ignores the crucial "indirectly considered" element
2 of the *Thompson* test and would permit the government to launder the record of agency decisionmaking
3 by (a) restricting the documents that pass in front of the ultimate decisionmaker; and (b) conducting a
4 potemkin decisionmaking process in which an agency such as DOJ does the real work, then provides a
5 limited record to a purported "decisionmaker" in the rulemaking department, here DHS.

6     Defendants similarly misstate the legal standard for a motion to complete the administrative
7 record. Defendants contend that Plaintiffs must show bad faith, or that documents were deliberately or
8 negligently withheld. *See* Opp. at 10-11. Not so. That is the test for a motion to *supplement* the
9 administrative record with materials not considered by the agency. For a motion to *complete* the
10 administrative record, Plaintiffs must show only that it "appears the agency has relied on documents or
11 materials not included in the record." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d
12 1534, 1548 (9th Cir. 1993). Moreover, Plaintiffs easily satisfy even the heightened standard for a
13 motion to supplement the record, based on clear evidence that Defendants have intentionally withheld
14 key documents regarding the decision to rescind DACA.

15     Finally, Defendants construe the deliberate process privilege to shield *every single* non-public
16 document from the Court's review—even after the Court made clear that Defendants were required to
17 produce internal e-mails and memoranda. Defendants' assertions of privilege are both meritless and
18 overbroad. Defendants also have waived privilege by producing an inadequate privilege log and by
19 placing the legality of the DACA program directly at issue in this litigation. At a minimum, Defendants
20 should be required to submit their withheld documents for the Court's *in camera* inspection.

21                                **ARGUMENT**

22     Defendants have failed to include in the administrative record all documents that were directly or
23 indirectly considered by DHS as part of its decision to rescind DACA. Defendants must therefore
24 *complete* the record with the omitted materials. Even under the heightened test for *supplementing* the
25 record, Plaintiffs have rebutted the presumption of regularity normally afforded to the government by
26 demonstrating that Defendants have intentionally constructed a "fictional account of the actual
27 decisionmaking process" by withholding critical documents. Furthermore, Defendants cannot sustain
28 their overbroad reading of the deliberate process privilege—a privilege they have also waived.

**I.      The Administrative Record Filed By Defendants Is Incomplete.**

Defendants have certified an administrative record that is plainly inadequate. *First*, Defendants used the wrong legal standard in compiling the record. Instead of including all documents that DHS directly or indirectly considered in rescinding DACA, Defendants include only some information that was considered by the Acting Secretary herself. *Second*, by applying this erroneous standard, Defendants excluded materials that the agency—rather than the Acting Secretary alone—considered in making its decision. *Third*, Defendants improperly excluded documents and communications from DOJ and the White House that Defendants have conceded—and the privilege log makes clear—the agency actually considered. *Fourth*, Defendants improperly excluded materials that predated the agency's final decision.

**A.      Defendants Rely On An Incorrect Legal Standard.**

Section 706 of the APA states that courts "shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "whole record" consists of "all documents and materials directly or *indirectly* considered by the agency" in making its decision. *Thompson*, 885 F.2d at 555. If anything less than the "whole record" is produced, "then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Portland Audubon Soc'y*, 984 F.2d at 1548 (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 54 (D.C. Cir. 1977)); *see also Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 380 (N.D. Cal. 2017) (same). "Even the possibility that there is here one administrative record for the public and this court and another for the [agency] and those 'in the know' is intolerable." *Mehraban v. FDIC*, No. 08-5964, 2010 WL 11515359, at *5 (C.D. Cal. May 25, 2010) (internal quotation marks omitted) (quoting *Home Box Office*, 567 F.2d at 54).

Defendants assert that the "whole record" somehow consists only of documents that were "actually considered" by the Acting Secretary. Opp. at 11; *see also id.* at 12. That is not the test. As courts in the Ninth Circuit and elsewhere have made clear, the "whole record" for purposes of the APA includes "everything that was before the agency pertaining to the merits of its decision." *Portland*

*Audubon Soc'y*, 984 F.2d at 1548.[1]  This encompasses not only documents that support an agency's asserted justification of a challenged agency action, but also "evidence contrary to the agency's position."  *Thompson*, 885 F.2d at 555; *see also Oceana, Inc. v. Pritzker*, No. 16-CV-06784-LHK-SVK, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) ("An agency may not exclude information it considered on the grounds that it did not rely on that information.").

Defendants' improper focus on the documents that were "actually considered by the Secretary" confirms that the resulting record is incomplete.  In *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. C05-3508 & C05-4038, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006), the court concluded based on the agency's representation that it had only included records "relied" upon and "considered" by the agency meant that the agency had failed to include documents that had been *indirectly considered* by the agency.  Accordingly, the court ordered the agency to "complete the record with the agency's internal and external communications regarding the decision-making process . . . , including drafts, internal reviews and critiques, inter-agency reviews, dissent from agency scientists, e-mail exchanges or other correspondence between and among the agencies and/or others involved in the process."  *Id.* at *4.  Likewise here, Defendants' improper restriction of the record to the materials "actually considered by the Secretary" misconstrues the appropriate legal standard, rendering the administrative record incomplete.  Accordingly, the Court should order Defendants to complete the record applying the correct standard and including the categories of documents described below.

> **B.   Defendants Impermissibly Excluded From The Record Materials Considered By DOJ And All Communications From The White House To DOJ Or DHS.**

Materials considered by DOJ and communications from the White House to DOJ or DHS regarding the decision to continue, modify, or rescind DACA must be included in the administrative record.  *See* Pls.' Mem. in Supp. of Mot. to Complete Admin. R. at 8 (Dkt. No. 65) [hereinafter

---

[1]   Defendants cite *Portland Audubon Society* in support of their argument that internal deliberative processes are not part of the administrative record.  Their reliance on this case is misplaced because there, the Ninth Circuit did not hold that such documents are not properly part of the administrative record, "nor did it have the opportunity to do so because the records before it concerned improper ex parte communications, not internal documents."  *Ctr. for Food Safety v. Vilsack*, No. 15-1590, 2017 WL 1709318, at *4 (N.D. Cal. May 3, 2017).

"Opening Br."]. Defendants concede that Acting Secretary Duke "received advice from other members of the Executive Branch" and state that this "is exactly why Defendants included some DOJ documents in the administrative record." Opp. at 17. Notwithstanding these concessions, the administrative record contains only two documents from DOJ—the 2014 Office of Legal Counsel memorandum (concluding that DACA was likely legal) and the Attorney General's September 4, 2017, letter—and not a single document from any other component of the Executive Branch. This record is entirely insufficient to allow this Court to properly evaluate the agency's decision.

There can be no question that documents that originated within DOJ or the White House and which are not part of the administrative record are among those "documents and materials directly or indirectly considered" in deciding whether to continue, modify, or rescind DACA. Defendants concede as much in their response to the instant motion. *See* Opp. at 17 (in making her decision, "the Acting Secretary received advice from others members of the Executive Branch"); Priv. Log at 2 (Dkt. No. 71-2) (describing "White House memorandum regarding litigation related to DACA"; "[n]otes on prior statements by the President regarding DACA"; referencing emails between White House officials and DHS officials regarding deliberations over DACA rescission). These materials were plainly considered at least indirectly by DHS and are therefore part of the administrative record.

### C. Defendants Impermissibly Excluded From The Record Materials Considered By DHS.

Defendants' improper limitation of the administrative record to documents "actually considered by the Acting Secretary" Opp. at 8, 11, 12, 17, 20, resulted in the exclusion of documents considered by other DHS personnel that informed the Rescission. Defendants assert that their "actually considered" standard is consistent with *Thompson*, but Defendants misconstrue the court's holding in that case. To be sure, in *Thompson* the court concluded that the administrative record should *include* documents actually considered by the top-level decisionmaker; however, the Ninth Circuit underscored the expansive view of this standard, explaining that all materials "before the agency when it made its decision," including materials considered directly *and indirectly*, are part of the administrative record. *See* 885 F.2d at 555-56. To hold otherwise would allow agency heads to avoid effective judicial review by delegating the administrative process to lower-level staff members and laundering the materials

5

placed before the agency head—thereby shielding from judicial scrutiny information considered unfavorable to the agency's litigation position.

Recognizing these dynamics, courts within Ninth Circuit have recognized that "a document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." *Lockyer*, 2006 WL 708914, at *2 (quoting *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996)). Instead, documents that were "constructively considered" by the decisionmaker also must be produced. *Safari Club Int'l v. Jewell,* No. 16-00094, 2016 WL 7785452, at *2 (D. Ariz. July 7, 2016) (quoting *W. Watersheds Project v. Bureau of Land Mgmt.*, No. 11-00053, 2012 WL 13937, at *1 (D. Nev. Jan. 4, 2012)); *see also Oceana, Inc. v. Pritzker*, No. 16-6784, 2017 WL 2670733, at *4 (N.D. Cal. June 21, 2017) (same); *see also Animal Legal Def. Fund v. Vilsack*, 110 F. Supp. 3d 157, 160 (D.D.C. 2015) (same). Such "constructive" consideration may occur "where the document was relied upon by subordinates, rather than the final decision-maker, or where a report relies so heavily on an underlying source that the cited authority might fairly be said to have been indirectly considered by the decision-maker." *Safari Club Int'l*, 2016 WL 7785452, at *2 (citation omitted); *see also Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275-76 (D. Colo. 2010) ("If the agency decision maker based his decision on the work and recommendations of subordinates, those materials should be included in the record." (citing authorities)).[2]

Here, the record does not contain a single document from a lower-level DHS official, flouting the requirement that the record contain materials indirectly considered by the agency. Indeed, Defendants' privilege log includes only one custodian—the Acting Secretary—thus confirming that defendants have failed to include documents relevant to the decision that remain in the files of her

---

[2] Remarkably, Defendants suggest that if an agency fails to engage in notice and comment rulemaking, its burden to comply with the APA's "whole record" standard is somehow diminished. *See* Opp. at 12 n.3. This suggestion would impair judicial review where the injured parties challenge the agency's failure to comply with the notice and comment requirements of the APA, effectively rewarding the agency for violating the notice and comment requirements.

subordinates. These subordinates include individuals in top leadership positions at DHS, who inevitably took part in the decision-making process at issue.[3]

### D. Defendants Impermissibly Excluded From The Record Materials That Pre-Dated The Agency's Final Decision.

Defendants appear to have excluded documents based on an arbitrary decision about the relevant timeframe for the administrative record. As explained in Plaintiffs' opening brief, the decision-making process that ultimately resulted in the rescission of DACA included a February 20, 2017 decision to leave DACA in place. *See* Mem. from John Kelly, Sec'y of Homeland Security, Enforcement of the Immigration Laws to Serve the National Interest, at 2 (Feb. 20, 2017) (Dkt. No. 64-1, at AR 00000230). This reversal of position must necessarily be evaluated by the Court. *See Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1119 (D.C. Cir. 2010) ("[r]easoned decision making necessarily requires [an] agency to acknowledge and provide an adequate explanation for its departure from established precedent, and an agency that neglects to do so acts arbitrarily and capriciously" (alteration and internal quotation marks omitted)); *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) ("An unexplained inconsistency in agency policy is a reason for holding an interpretation to be . . . arbitrary and capricious." (alteration and internal quotation marks omitted)). Accordingly, the relevant period for the record is January 20, 2017 (Inauguration Day), through September 5, 2017 (the date of the Rescission Memorandum).

Defendants argue that an administrative record should include only those materials before the agency "when it made its decision," Opp. at 20, and therefore should not include documents that predated the Rescission. Such a position is unsupported by the case law and is inconsistent with even the incomplete record already produced, which includes a few materials going back as far as 2012. *Cf. Lockyer*, 2006 WL 708914, at *3 (rejecting the same argument on the grounds that "[i]t is inconsistent with the [agency's] own recognition that the administrative record does include documents pre-dating February 2004 as reflected in its inclusion of other documents dating from 2001 in the record submitted

---

[3] Some of these DHS officials—as well as White House officials—are identified at pages 2-4 of the privilege log.

7

to the Court"). Documents relating to former Secretary Kelly's decision to retain DACA are highly likely to include documents that undercut the government's present position and therefore are precisely the type of documents that the Court has admonished Defendants to include in the administrative record.

## II. Plaintiffs Have Rebutted The Presumption Of Regularity.

The typical presumption of regularity in the preparation of the record can be rebutted "with clear evidence to the contrary." *Lockyer*, 2006 WL 708914, at *1-2. This is not a demanding standard, and it can be satisfied "[w]hen it appears the agency has relied on documents or materials not included in the record." *Portland Audubon Soc'y*, 984 F.2d at 1548; *see also Gill v. U.S. Dep't of Justice*, No. 14-3120, 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015) (plaintiff need show only "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record" (internal quotation marks omitted)). When that occurs, the "crux of the analysis is whether the documents or materials were actually considered, directly or indirectly, by the agency decisionmakers." *Mehraban*, 2010 WL 11515359, at *2 (alteration and internal quotation marks omitted). The presumption of regularity also is rebutted when the government applies an incorrect standard in preparing the record. *See Oceana*, 2017 WL 2670733, at *2; *Gill*, 2015 WL 9258075, at *6.

Plaintiffs have rebutted the presumption here: Defendants *admit* that they have included only documents directly considered by the Acting Secretary and that they have excluded documents indirectly considered in the process of deciding whether to continue, modify, or rescind DACA. Their default is thus manifestly confirmed by their application of an incorrect legal standard in preparing the record.

Defendants claim that to overcome the presumption of regularity, Plaintiffs must either make "a 'strong showing' of bad faith," Opp. at 10 (citing *Overton Park*, 401 U.S. at 420), "or offer 'clear evidence' that records actually considered by the decisionmaker were deliberately or negligently excluded from the record," *id.* (citing *Cook Inletkeeper v. U.S. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (unpublished)). *See also id.* at 11 (presumption "can be overcome only by a 'showing of impropriety in the process'" (citing *Portland Audubon Soc'y*, 984 F.2d at 1548)). Neither standard applies here.

### A. Plaintiffs Need Not Show Bad Faith Or "Impropriety In The Process."

"Plaintiffs need not show bad faith or improper motive to rebut the presumption" that the administrative record is *complete*. *Lockyer*, 2006 WL 708914, at *2; *see also Oceana*, 2017 WL 2670733, at *2 (same). Defendants confuse the bad faith showing sometimes needed to justify *supplementing* the administrative record with documents that were *not* before the decision-maker at the time of the decision, with the separate question of whether the administrative record was properly constructed to begin with. This is a meaningful distinction. *See, e.g.*, *Portland Audubon Soc'y*, 984 F.2d at 1548 (distinguishing situations where "it appears the agency has relied on documents or materials not included in the record" from "cases denying supplementation of the record with information on the merits that was never presented to the agency" (citation omitted & emphasis)); *Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5-6 (D.D.C. 2006) (observing that government "conflated . . . consideration of extra-record evidence" with completing the record with documents that were before the agency decision-maker); *Miami Nation of Indians*, 979 F. Supp. at 777 (plaintiffs did not "seek supplementation of the administrative record, but rather . . . to complete the current record to include materials that should have been there from the start").

For instance, in *Overton Park*—the case from which Defendants draw their "bad faith" language—the Court was addressing the limited scenarios where a court may "inquir[e] into the mental processes of administrative decisionmakers." 401 U.S. at 420. That type of inquiry is appropriate when there is a "strong showing of bad faith or improper behavior." *Id.* All Plaintiffs seek to do here, however, is complete the administrative record with the documents that should have been included all along—no showing of bad faith is required.[4]

Even if Plaintiffs did need to show bad faith to overcome the presumption of regularity, Plaintiffs meet that higher standard, too. Defendants' approach to the administrative record—and statements and

---

[4] *Camp v. Pitts*, 411 U.S. 138 (1973) is similarly inapposite. *Camp* stands for the uncontroversial proposition that lower courts must review APA cases under an arbitrary and capricious rather than *de novo* standard, considering "the administrative record already in existence, not some new record made initially in the reviewing court." 411 U.S. at 142. Plaintiffs are not seeking to develop a new record made for the first time in litigation; rather, they seek the "whole record," i.e., all of the contemporaneous documents directly or indirectly considered by the agency.

actions regarding the Rescission—show bad faith. For instance, in their opposition brief, Defendants now claim a justification for rescinding DACA that is entirely different than the one provided at the time of the Rescission—a new "litigation risk" argument that is nowhere to be found in the September 5, 2017 memorandum rescinding DACA. "For an agency to say one thing . . . and do another . . . is the essence of arbitrary action. It indicates that the [agency]'s stated reason may very well be pretextual." *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986) (citation omitted). In the Rescission memorandum, the government purported to justify the decision with an oblique and perfunctory reference to the Attorney General's assertion that DACA was illegal when enacted, stating that "[t]aking into consideration . . . the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated." *See* Rescission Mem. at 4.

Now, however, Defendants distance themselves from that purported rationale. In their opposition, they claim that they rescinded DACA because there was "litigation risk" that DACA might be enjoined, and to avoid that risk "[t]he Acting Secretary chose . . . an orderly wind-down" of the program. Opp. at 2. Nowhere in their brief do Defendants assert that DACA is illegal or unlawful, or identify that as a reason why they rescinded DACA. Similarly, the very same day as the Rescission, President Trump tweeted: "Congress now has 6 months to legalize DACA (something the Obama Administration was unable to do). If they can't, I will revisit this issue!" @realDonaldTrump, Twitter (Sept. 5, 2017, 8:38 PM), https://twitter.com/realDonaldTrump/ status/905228667336499200. But if DACA actually were unlawful, as Defendants originally seemed to claim, there would be nothing for President Trump to "revisit" and no basis on which to extend the March 5 deadline. Defendants' shifting rationales suggest that their alleged rationale in rescinding DACA is pretextual, and that they have acted in bad faith.[5]

---

[5] Just yesterday, the *Washington Post* reported that "President Trump will extend a March 5 deadline to end protections for young undocumented immigrants if Congress fails to act by then, according to a Republican senator who spoke directly with the president about the issue." Elise Viebeck, *Trump to extend March 5 deadline to end DACA protections if Congress doesn't act, GOP senator says*, Wash. Post (Oct. 12, 2017, 11:44 PM), https://www.washingtonpost.com/powerpost/trump-to-extend-march-5-deadline-to-end-daca-protections-if-congress-doesnt-act-gop-senator-says/2017/10/12/b64d2984-afba-11e7-be94-fabb0f1e9ffb_story.html.

In any event, Defendants' new "litigation risk" rationale is irrational. If Defendants' declarations are to be believed, the discovery demands of the DACA cases in this Court and in the Eastern District of New York require the full-time attention of 1 out of 14 ICE attorneys nationwide. *See* Milani Decl. ¶ 7 (Dkt. No. 71-6); *see also* Chellappa Decl. (Dkt. No. 71-3); Palmer Decl. (Dkt. No. 71-4); McCament Decl. (Dkt. No. 71-5). Thus, if Defendants' rationale were actually based on the burdens of litigation, their decision is self-defeating: they have merely "traded one lawsuit for another." *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015) (concluding that agency's desire to avoid litigation did not satisfy its obligation to provide a reasoned explanation for its change in policy)

In fact, in light of Defendants' bad faith and pretextual reasons for the Rescission, it is *Defendants* that now carry the burden to justify the completeness of the record. Where "the so-called 'record' looks complete on its face and appears to support the decision of the agency but there is a subsequent showing of impropriety in the process, that impropriety creates an appearance of irregularity *which the agency must then show to be harmless*." *Portland Audubon Soc'y*, 984 F.2d at 1548 (emphasis added). Defendants' production of an incomplete administrative record is far from harmless—it obstructs the transparent judicial review required under the APA.

### B. Plaintiffs Need Not Show That Documents Were "Deliberately Or Negligently Excluded From The Record."

Defendants cite the unpublished Ninth Circuit disposition in *Cook Inletkeeper* for the proposition that Plaintiffs must show that documents were "deliberately or negligently excluded from the record." Opp. at 10. *Cook Inletkeeper* neither contains that language nor stands for that proposition. Rather, that unpublished disposition states merely that courts "assume that an 'agency properly designated the Administrative Record absent clear evidence to the contrary.'" 400 F. App'x at 240 (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). But, as in many cases cited in the government's brief, the question in *Cook Inletkeeper* was whether the government must supplement the administrative record with *extra-record* documents *not considered* by the agency, as opposed to *completing* it with documents that should have been in the administrative record all along. *See id.* ("The EPA denies that it considered the documents at issue, and Cook Inletkeeper has not presented clear evidence that the EPA did consider those documents.").

1    In any event, Defendants *have* deliberately omitted from the administrative record several
2    categories of documents that clearly must be part of that record. As an initial matter, Defendants have
3    excluded any documents that DOJ considered when determining whether to continue, modify, or rescind
4    DACA, even though Acting Secretary Duke's own memorandum states that she relied on DOJ's
5    analysis. *See* Rescission Mem. at 4. Indeed, Defendants appear to have defied this Court's October
6    10th Order that they collect "hard copies of all emails, internal memoranda, and communications with
7    the Justice Department" regarding the Rescission. *See* Order Shortening Time (Dkt. No. 67). They have
8    included in their privilege log only DHS documents, have committing to only bringing DHS documents
9    to Monday's hearing, and have included declarations only from DHS personnel. Defendants also
10   excluded all documents related to Secretary Kelly's February 20, 2017 decision to leave DACA in place.
11   *See* Mem. from John Kelly, Sec'y of Homeland Security, Enforcement of the Immigration Laws to
12   Serve the National Interest, at 2 (Feb. 20, 2017) (Dkt. No. 64-1, at AR 00000230). Defendants have
13   made a complete policy about-face in a span of seven months, and yet included nothing in the
14   administrative record that explains this change in position. In rescinding an action, the government
15   needs to consider the factors that motivated the original action. *See, e.g.*, *Nehemiah Corp. of Am. v.*
16   *Jackson*, 546 F. Supp. 2d 830, 839 (E.D. Cal. 2008) ("[A]n agency must supply a reasoned analysis
17   indicating that prior policies and standards are being deliberately changed, not casually ignored, and if
18   an agency glosses over or swerves from prior precedents without discussion it may cross the line from
19   the tolerably terse to the intolerably mute." (internal quotation marks omitted)). *Motor Vehicle Mfrs.*
20   *Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 42 (1983) ("an agency changing its course by rescinding
21   a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when
22   an agency does not act in the first instance"). Thus, Defendants have purposely withheld documents
23   from the administrative record, and must be ordered to complete that record.

**III.   Defendants Construe Their Privilege Protections Too Broadly And Have Waived Any Assertion of Privilege.**

**A.   Defendants Must Provide The Full Administrative Record.**

Defendants cannot use the deliberative process privilege to shield all non-public documents from this Court's review. Indeed, judicial review of agency action under the APA must be "based on the full

administrative record" before the agency at the time of its decision. *Overton Park*, 401 U.S. at 420. While "deliberative intra-agency memoranda" may be privileged, "the work and recommendations of subordinates," such as a draft proposed regulation, should be included in the administrative record. *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 71 (D.D.C. 2008) (quotation marks omitted). Moreover, "[f]actual portions of documents covered by the deliberative process privilege must be segregated and disclosed unless they are 'so interwoven with the deliberative material that [they are] not[segregable]." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (quoting *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000)); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not . . . protect material that is purely factual . . . ."). Here, Defendants have failed to comply with these requirements, or with the Court's Order to include in the record e-mails and other documents harmful to their position. *See* Tr. of Proceedings (Sept. 21, 2017) at 17:18-18:2 (Dkt. No. 52). Despite the Court's clear Order, Defendants have not produced a single e-mail, non-public memorandum, or draft, even when it was actually considered by Acting Secretary Duke in rescinding DACA and is listed on Defendants' privilege log. *See* Opp. at 4 (explaining that the privilege log "includes the privileged documents actually considered by the decisionmaker").

Nor have Defendants segregated the factual portions of those documents they believe are covered by the deliberative process privilege or argued that such factual portions are interwoven with the allegedly deliberative materials in those documents. Defendants even withhold as purportedly attorney-client privileged documents that are not communications at all. *See* Priv. Log (listing documents with topics such as "[b]ackground information provided for deliberations regarding DACA" as attorney-client privileged even though the author and recipient information is left blank). To be subject to attorney-client privilege, a document must be a "communication." *United States v. Christensen*, 828 F.3d 763, 802 n.18 (9th Cir. 2015). Even if these documents contain some privileged communications, Defendants may not withhold the entire documents but instead must disclose any distinct and severable non-privileged portions. *See id.* at 803. They have not even attempted to do so.

13
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
COMPLETE THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706;
Case No. 17-cv-05211-WHA

**B.      Defendants Have Waived Any Assertion Of Privilege By Submitting A Deficient Privilege Log And Putting The Legality Of DACA At Issue.**

Even if Defendants once had a basis to assert privilege, they have waived it.  First, Defendants failed to furnish a privilege log at the time they produced their incomplete administrative record.  *See* Suppl. Order to Order Setting Initial Case Mgmt. Conf. ¶ 18 (Dkt. No. 23) [hereinafter "Supp. Order"] ("Failure to furnish [a privilege log] at the time of the [privilege] assertion will be deemed a waiver of the privilege or protection.").  Second, privilege logs submitted to this Court must identify, *inter alia*, "(a) all persons making or receiving the privileged or protected communication" and "(b) the steps taken to ensure the confidentiality of the communication, including affirmation that no authorized persons have received the communication" or waive the privilege.  *Id.*  The privilege log that Defendants eventually submitted fails to identify the author or recipient for over half of the documents listed.  Priv. Log (listing this information for only 33 of 84 documents).  Additionally, while Defendants' brief states generally that "steps *have been taken* to ensure the confidentiality of the records and communications listed in the attached privilege log," Opp. at 4 n.2 (emphasis added), this general statement does not comply with the Court's order to "*identify* . . . the steps taken" to ensure confidentiality, Suppl. Order ¶ 18 (emphasis added).  Because of these deficiencies in Defendants' privilege log, privilege is waived.  *See Dugan v. Lloyds TSB Bank, PLC*, No. 12-2549-WHA, 2013 WL 12173934, at *1-2 (N.D. Cal. Dec. 23, 2013) (finding a privilege log deficient when did not comply with this Court's Supplemental Order because it did "not list the identity of the author(s), sender(s) or recipient(s) of" all documents, even when research would be required to determine attorney identities).

Third, as explained in Plaintiffs' opening brief, Defendants have put their assessment of the lawfulness of DACA directly at issue by claiming that a purported concern about DACA's legality motivated their decision to rescind the program.  Opp. at 2.  In order to conduct the "thorough, probing, in-depth review" required under the APA, *Overton Park*, 401 U.S. at 420, the Court must have access to the full administrative record regarding Defendants' assessment of "litigation risk."  In short, the government may not "adopt a legal position while shielding from public view the analysis that yielded that position."  *Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 350, 360 (2d Cir. 2005) (internal quotation marks omitted).

### C. Defendants Must Provide Documents They Withhold As Privileged For *In Camera* Inspection.

It is an "undisputed proposition that *in camera* review is a useful tool for resolving whether the assertion of a privilege is valid." *In re Delta Smelt Consol. Cases*, No. 09-1053, 2010 WL 2520946, at *22 (E.D. Cal. June 21, 2010). Courts in the Ninth Circuit regularly use *in camera* inspection to determine whether purportedly privileged government documents are actually privileged. *See, e.g.*, *id.* ("It is impossible to determine the propriety of Federal Defendants' assertions of privilege without examining these documents, although the facial explanations appear valid."); *Desert Survivors*, 231 F. Supp. 3d at 382-83 (finding *in camera review* to be "the appropriate way" to determine whether communications were subject to deliberative process privilege); *Ctr. of Bio. Diversity v. U.S. Bureau of Land Mgmt.*, No. 06-4884, 2007 WL 3049869, at *6 (N.D. Cal. Oct. 18, 2007) (finding *in camera* review appropriate to test the assertion that documents were subject to deliberative process privilege).

Here, particularly given how little time remains before Plaintiffs' November 1 deadline to move for summary judgment and a preliminary injunction, the Court should conduct an *in camera* review of the documents that Defendants assert to be privileged. Indeed, even Defendants concede that the Court may do so. *See* Opp. at 4 ("If the Court determines that it must review those documents, . . . at most they should be lodged ex parte and under seal.").

### CONCLUSION

The Court should order Defendants to immediately complete the administrative record and include therein every document and communication considered by DHS or DOJ, including communications from White House officials or staff or from any other Executive Branch component sent to DHS or DOJ, as part of the process of determining whether to continue, modify, or rescind DACA. The Court further should find a privilege waiver and order Defendants to produce the withheld documents, or at a minimum, order an *in camera* inspection and a privilege log consistent with the Court's September 13, 2017 Supplemental Order.

Dated: October 13, 2017

Xavier Becerra
Attorney General of California
Michael L. Newman
Supervising Deputy Attorney General

/s/ James F. Zahradka II
James F. Zahradka II
Deputy Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1247

*Attorneys for Plaintiff State of California*

/s/ Julianna F. Passe
Lori Swanson
Attorney General
State of Minnesota
Julianna F. Passe (*pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
Telephone: (651) 757-1136
Email: julianna.passe@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

/s/ Susan P. Herman
Janet T. Mills
Attorney General of Maine
Susan P. Herman (*pro hac vice*)
Deputy Attorney General
6 State House Station
Augusta, Maine 04333
Telephone: (207) 626-8814
Email: susan.herman@maine.gov

*Attorneys for Plaintiff State of Maine*

COTCHETT, PITRE & McCARTHY, LLP

/s/ Nancy L. Fineman
Nancy L. Fineman (SBN 124870)
nfineman@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiff City of San Jose*

Respectfully submitted,

COVINGTON & BURLING LLP

/s/ Jeffrey M. Davidson
Jeffrey M. Davidson (SBN 248620)
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: jdavidson@cov.com

*Attorneys for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California*

GIBSON, DUNN & CRUTCHER LLP

/s/ Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr., SBN 132099
tboutrous@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Ethan D. Dettmer, SBN 196046
edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

PUBLIC COUNSEL

Mark D. Rosenbaum, SBN 59940
mrosenbaum@publiccounsel.org
Judy London, SBN 149431
jlondon@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

*Attorneys for Plaintiffs Dulce Garcia, Miriam Gonzalez Avila, Saul Jimenez Suarez, Viridiana Chabolla Mendoza, Norma Ramirez, and Jirayut Latthivongskorn*

ATTESTATION

I, Jeffrey M. Davidson, hereby attest, pursuant to Civil L.R. 5-1, that I have received authorization to electronically sign and file this document from each of the persons identified in the signature block.

Dated: October 13, 2017

/s/ Jeffrey M. Davidson
Jeffrey M. Davidson

*Counsel for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California*