IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | No. C 17-05211 WHA<br>No. C 17-05235 WHA<br>No. C 17-05329 WHA<br>No. C 17-05380 WHA<br><br>**ORDER RE MOTION TO COMPLETE ADMINISTRATIVE RECORD** |

## INTRODUCTION

Under the Administrative Procedure Act, plaintiffs seek to compel completion of the administrative record. Federal defendants oppose. For the reasons herein, plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

On June 15, 2012, the Secretary of the Department of Homeland Security issued a memorandum promulgating a deferred action policy for those without lawful immigration status who came to the United States as children, were continuous residents in the United States for at least five years, had graduated from high school, obtained a GED, or served in the military, and

met certain other criteria — a memorandum and policy known as Deferred Action for Childhood Arrivals, "DACA" for short (Dkt. No. 64-1 at 1–3).[1]

After the change in administrations in 2017, the new Secretary of DHS, John Kelly, announced that DACA would be continued notwithstanding the rescission of other immigration policies (*id.* at 230). This was done despite, and with the knowledge of, the decision of the Court of Appeals for the Fifth Circuit in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), invalidating a different deferred action policy and the Supreme Court's affirmance of that decision by an equally divided vote, *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam).

On September 5, 2017, however, the Acting Secretary of DHS, Elaine Duke, reversed the agency's position and announced DACA's end, effective March 5, 2018.

We now have five lawsuits in this district challenging that rescission.[2] Each action is proceeding on a parallel track and on the same schedule, which schedule was designed to reach a decision on the merits and to allow appellate review by the March 5 deadline.[3]

Pursuant to the scheduling order, the federal defendants filed the administrative record on October 6. It consisted of fourteen documents spanning 256 pages, each of which was already available to the public, and had, in fact, already been filed in this action (Dkt. No. 49 ¶ 3; Dkt. No. 64-1).

In unison, plaintiffs now move to require completion of the administrative record in accordance with Section 706 of Title 5 of the United States Code. They argue that the current record is incomplete because it contains only documents personally considered by the Acting Secretary (and then only some considered by her) and excludes any and all other documents that indirectly led to the rescission.

---

[1] All docket numbers herein refer to the docket in Case No. C 17-05211 WHA.

[2] There are two additional DACA lawsuits proceeding in the Eastern District of New York before Judge Nicholas Garaufis, *State of New York v. Trump*, Case No. 17-cv-05228 NGG, and *Vidal v. Baran*, Case No. 16-cv-04756 NGG.

[3] The fifth lawsuit, *County of Santa Clara v. Trump*, Case No. 17-cv-05813 HRL, was related after plaintiffs' motion was fully briefed and argued.

2

The federal defendants oppose, arguing that they have already filed a complete administrative record, which they contend is properly limited to unprivileged documents actually considered by the "decision-maker," here, the Acting Secretary (Opp. at 8–9).

This order follows full briefing and oral argument and the Court's review of all materials *in camera* that appeared on the government's privilege log.

## ANALYSIS

### 1. SCOPE OF THE ADMINISTRATIVE RECORD.

Section 706 of the APA provides that judicial review of agency action shall be based on "the whole record." The administrative record "is not necessarily those documents that the agency has compiled and submitted as the administrative record" but rather "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989). This includes not only documents that "literally pass[ed] before the eyes of the final agency decision maker" but also documents that were considered and relied upon by subordinates who provided recommendations to the decision-maker. *People of State of Cal. ex rel. Lockyer v. United States Dep't of Agriculture*, Nos. C05-3508 & C05-4038, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (Magistrate Judge Elizabeth Laporte) (internal citations and quotations omitted); *see also Amfac Resorts, L.L.C. v. United States Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (Judge Royce Lamberth).

The requirement that a reviewing court consider "the whole record" before rendering a decision "ensures that neither party is withholding evidence unfavorable to its position and that the agencies are not taking advantage of post hoc rationalizations for administrative decisions. *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

While it is presumed that the administrative record submitted by defendants is complete, plaintiffs can rebut this presumption with "clear evidence to the contrary." *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).

3

Defendants contend a showing of bad faith or impropriety is required in order to compel a complete production of the administrative record. This is incorrect. True, bad faith is one basis for requiring supplementation of an administrative record, but it is not the exclusive basis. Our court of appeals has repeatedly recognized other grounds for requiring supplementation, including where it appears the "agency relied on documents not [already] included in the record." *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982)*; Fence Creek Cattle Co. v. United States Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *see also Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

The "bad faith" standard of *Overton Park* applies where, though an administrative record exists, plaintiffs ask to go beyond the record that was before the agency and inquire into the thought processes of decision-makers — in *Overton Park*, by taking the testimony of agency officials. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Our plaintiffs are not seeking materials beyond what were already considered, directly or indirectly, by the decision-maker, and therefore need not show bad faith. Supplementation is appropriate if they show, by clear evidence, that the agency relied on materials not already included in the record. *See Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (distinguishing between materials "never presented to the agency" and materials that were "allegedly [] before the agency"); *Fence Creek Cattle Co.*, 602 F.3d at 1131.

Nor is defendants' contention that it need only produce documents directly considered by the Acting Secretary correct. Documents reviewed by subordinates, or other agencies who informed her on the issues underlying the decision to rescind DACA, either verbally or in writing, should be in the administrative record. *See Lockyer*, 2006 WL 708914, at *2. The threshold question is whether plaintiffs have shown, by clear evidence, that the record

4

defendants produced is missing documents that were considered, directly or indirectly, by DHS in deciding to rescind DACA.[4]

### 2. PLAINTIFFS' SHOWING OF INCOMPLETENESS.

Here, the tendered administrative record consists merely of fourteen documents spanning 258 pages, which defendants contend constitute the entire record considered in making the decision to rescind DACA. These are plainly pertinent materials, although all were publicly known and already part of the pleadings herein.

Plaintiffs seek additional materials including emails, departmental memoranda, policy directives, meeting minutes, materials considered by Secretary Duke's subordinates, communications from White House officials or staff, communications from the Department of Justice, and communications between DHS and state authorities, which they contend should necessarily be part of the administrative record (Br. at 9–10).

Plaintiffs drew this list, in part, from a United States Department of Justice Guidance, which sets forth non-binding recommendations for how to compile an administrative record and what to include. United States Dep't of Justice, Env't and Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record (Jan. 1999). Specifically, the Guidance states that the administrative record should "[i]nclude all documents and materials prepared, reviewed, or received by agency personnel and used by or available to the decision-maker, even though the final decision-maker did not actually review or know about the documents and materials." *Id.* at 3. It further provides that the record should include "communications the agency received from other agencies . . . documents and materials that support *or* oppose the challenged agency decision . . . minutes of meetings or transcripts thereof . . . [and]

---

[4] Defendants also argue that they should not be required to produce any administrative record whatsoever because the Department of Homeland Security's decision to end DACA was an exercise of prosecutorial discretion not subject to judicial review (Opp. at 1). Earlier in these actions, our defendants agreed to produce the administrative record by October 6, and were then ordered to do so. They may not now renege on that commitment. At this stage, defendants are required to produce an administrative record. Should they prevail on this argument on their eventual motion to dismiss, it will be with the benefit of a proper administrative record.

5

memorializations of telephone conversations and meetings, such as memorandum or handwritten notes."[5]

Plaintiffs contend that communications from DOJ and the White House are a critical part of "the whole record" due to their significant public participation in the process of rescinding DACA. Plaintiffs first point to Attorney General Sessions' September 4 letter, which DHS expressly relied upon in its memorandum terminating the program (*see* Dkt. No. 64-1 at 251, 255). Despite this critical and publicly disclosed role in the decision, the only DOJ document defendants include in the record is this one-page September 4 letter. This, plaintiffs contend, is clear evidence that defendants omitted documents supporting (or contradicting) the opinions set forth in Attorney General Sessions' letter, in particular the opinion that DACA was unlawfully implemented.

Additionally, the White House has repeatedly emphasized the President's direct role in decisions concerning DACA. For example, a September 5 White House press release announced "President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration" by rescinding DACA, and repeatedly stated that "President Trump" had acted to end the program. Press Release, The White House Office of the Press Secretary, President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration (Sept. 5, 2017), https://www.whitehouse.gov/thepress-office/2017/09/05/president-donald-j-trump-restores-responsibility-and-rule-law. Other articles likewise emphasize White House officials' roles in decision-making regarding DACA. *See, e.g.*, Michael D. Shear & Julie Hirschfeld Davis, Trump Moves to End DACA and Calls on Congress to Act, *New York Times* (Sept. 5, 2017). Moreover, defendants concede in their response that Secretary Duke "received advice from other members of the executive branch" in making her decision (Opp. at 17) and refer to "White House memorandum" in their privilege log (Dkt. No. 71-2). And at oral argument, counsel for

---

[5] A 2008 DOJ memorandum specifically notes that the 1999 Guidance is a non-binding internal document, which does not "limit the otherwise lawful prerogatives of the Department of Justice or any other federal agency" (Dkt. No. 71-1 at 3). In particular, the 2008 memorandum takes issue with outside parties' use of the Guidance in litigation to advocate for a particular composition of the administrative record or process for its assembly (*ibid.*). Recognizing that the 1999 Guidance is not binding upon agencies, this order finds that the Guidance nevertheless provides helpful insight into the types of documents and materials an agency should consider when assembling an administrative record.

United States District Court
For the Northern District of California

defendants said it was likely Secretary Duke had received verbal input before making her decision. Despite this, defendants have failed to provide even a single document from any White House officials or staff.

Plaintiffs further observe that not a single document from one of Secretary Dukes' subordinates is in the record. It strains credulity to suggest that the Acting Secretary of DHS decided to rescind a program covering 800,000 enrollees without consulting one advisor or subordinate within DHS. Again, at oral argument, government counsel represented that she had likely received verbal input. The government's *in camera* submission confirms that she did receive substantial DACA input.

Finally, former DHS Secretary John Kelly issued a memorandum in February 2017, in which he rescinded all DHS memoranda that conflicted with newly stated immigration enforcement policies — *but expressly declined to rescind DACA* (Dkt. No. 64-1 at 229–30). This decision, of course, is directly contrary to that taken by Acting Secretary Duke seven months later. The administrative record, however, omits all materials explaining the change in position from February to September, with two exceptions — (1) a June 29 letter from Ken Paxton, the Attorney General of Texas, to Attorney General Sessions, in which he threatens to amend the suit challenging DAPA to also challenge DACA if it is not rescinded by September 5, and (2) Attorney General Sessions' September 4 letter to Secretary Duke expressing the opinion that DHS should rescind DACA. Reasoned agency decision-making ordinarily "demand[s] that [the agency] display awareness that it is changing position" and "show that there are good reasons for the new policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Accordingly, "the whole record" would ordinarily contain materials giving a "reasoned explanation . . . for disregarding the facts and circumstances that underlay or were engendered by the prior policy." *Ibid*. It is simply not plausible that DHS reversed policy between February and September because of one threatened lawsuit (never actually filed) without having generated any materials analyzing the lawsuit or other factors militating in favor of and against the switch in policy.

7

Based on the foregoing, plaintiffs have clearly shown that defendants excluded highly relevant materials from the administrative record and in doing so have rebutted the presumption that the record is complete.

Defendants' argument to the contrary is unpersuasive. Their position that only selected documents that Acting Secretary Duke personally reviewed need be part of the administrative record must yield to legal authority requiring both directly and *indirectly* considered documents be included in the record, *see, e.g.*, *Thompson*, 885 F.2d at 555–56, and by public statements illustrating both DOJ and the White House's direct involvement in the decision to rescind DACA. The rule that government counsel advocates would allow agencies to contrive a record that suppresses information actually considered by decision-makers and by those making recommendations to the decision-makers, information that might undercut the claimed rationale for the decision.

As stated, privilege log entries reveal several documents that were considered in arriving at the decision to rescind DACA. For example, at least seven entries refer to commentary in media articles regarding DACA. At oral argument, government counsel admitted that the Acting Secretary had seen several media items on the issue. There were not, however, any media articles on DACA in the administrative record, but those that came to the Acting Secretary should, of course, be included.[6]

Here, plaintiffs have rebutted the presumption of completeness. It is evident that Acting Secretary Duke considered information directly, or indirectly, through the advice of other agencies and others within her own agency. These documents, as set forth in detail below, should be made part of the administrative record and must be produced by defendants in an amended administrative record by **NOON ON OCTOBER 27**.

---

[6] Many documents were evidently excluded in their entirety based on an assertion of "deliberative-process" privilege. Any "[f]actual portions of documents covered by the deliberative process privilege, [however], must be segregated and disclosed unless they are so interwoven with the deliberative material" that they are not segregable. *See Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir 2008) (citations and quotations omitted). Accordingly, to the extent that media articles or other non-privileged factual materials were considered, they should have been included in the administrative record, and shall be filed as part of the amended administrative record, even if passages are redacted as deliberative, and called out as such in the privilege log.

8

### 3. WAIVER OF ATTORNEY-CLIENT PRIVILEGE.

Plaintiffs next argue that defendants have waived attorney-client privilege because they have put their attorneys' legal opinions at issue by arguing that the rescission was required due to concerns over DACA's legality (Br. at 15–16). Indeed, one of DHS's primary rationales for rescinding DACA was its purported illegality (*see* Dkt. No. 64-1 at 253–56 (Rescission Memorandum)).

Parties are not permitted to advance conclusions that favor their position in litigation, and at the same time shield the information that led to those conclusions from discovery. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Put differently, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Ibid*. Where a party raises a claim, which in fairness to its adversary requires it to reveal the information or communication that claim is predicated upon, it has implicitly waived any privilege over that communication.

Here, defendants argue that DHS had to rescind DACA because it exceeded the lawful authority of the agency. They cannot, therefore, simultaneously refuse to disclose the legal research that led to that conclusion. Defendants indeed, have included the September 4 legal opinion of the Attorney General, pithy as it may be — yet they seek to conceal all other legal analysis available to the Acting Secretary and to the Attorney General.

Significantly, defendants slide into a backup argument that the agency's legal worry was "reasonable" even if wrong. If this backup argument comes into play (as government counsel posits) then the "reasonableness" of taking an incorrect legal position would heavily turn on the underlying legal analysis so far withheld from view. In other words, assessing the reasonableness of the Secretary's legal rationale would turn, in part, on how consistent the analysis has been in the runup to the rescission.

Defendants' arguments to the contrary are unavailing. They first argue, without citation to any legal authority, that "[w]ere plaintiffs' argument accepted, the government would be deemed to have waived all privileges any time an assessment of the legal landscape informed an agency's decisionsmaking" (Opp. at 21). This argument vastly exaggerates plaintiffs' position,

9

and misrepresents the position defendants have staked out in this litigation. DHS specifically relied upon DOJ's assessment that DACA "was effectuated . . . without proper statutory authority," "was an unconstitutional exercise of authority by the Executive Branch" and "has the same legal and constitutional defects that courts recognized as to DAPA" (Dkt. No. 64-1 at 254). Plaintiffs are entitled to challenge whether this was a reasonable legal position and thus a reasonable basis for rescission. In making that challenge, plaintiffs are entitled to review the internal analyses that led up to this change in position.

Defendants further argue that the decisions cited by plaintiffs are inapplicable because they arose in different contexts than the present action. True, the decisions plaintiffs cite did not arise in identical circumstances. *E.g. Chevron Corp.*, 974 F.2d at 1162 (defendant prohibited from relying on legal opinion that tax position was reasonable while refusing to disclose the attorney communications leading to that conclusion). They still, however, stand for the widely-accepted proposition that it is unfair for a litigant to defend his action with a selective disclosure of evidence. This principle carries no less force here.

In the related context of FOIA, the Court of Appeals for the Second Circuit held that "the attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into an agency's policy." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 360 (2d Cir. 2005). There, DOJ invoked the reasoning of an OLC memorandum to justify its new position on an immigration issue. *Id.* at 357. The court held that the agency's "view that it may adopt a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA." *Id.* at 360. So too here.

Defendants have waived attorney-client privilege over any materials that bore on whether or not DACA was an unlawful exercise of executive power and therefore should be rescinded.

### 4. DELIBERATIVE-PROCESS PRIVILEGE BALANCING.

Defendants further assert the deliberative-process privilege over many documents.

The deliberative-process privilege, however, is qualified and will yield when the need for materials and accurate fact-finding "override the government's interest in non-disclosure."

10

1  *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "Among factors to
2  be considered in making this determination are:  (1) the relevance of the evidence; (2) the
3  availability of other evidence; (3) the government's role in the litigation; and (4) the extent to
4  which disclosure would hinder frank and independent discussion regarding contemplated
5  policies and decisions." *Ibid*.

6  As set forth below, the judge has personally reviewed *in camera* all materials on the
7  privilege log and applied the foregoing test to each document for which the deliberative-process
8  privilege is claimed.[7]

### 5. PRIVILEGE LOG REQUIREMENT.

10  While defendants did not file a privilege log with their original production, they have
11  since, pursuant to order, filed a privilege log claiming attorney-client or deliberative-process
12  privilege over 84 documents considered by Secretary Duke but not included in the
13  administrative record (Dkt. Nos. 67; 71-2).  Nevertheless, defendants argue that privilege logs
14  are not generally required in connection with an administrative record and that one should not
15  be required here.

16  Our court of appeals has not spoken on the issue.  Every court in this district
17  considering the issue, however, has required administrative agencies to provide a privilege log.
18  *See, e.g.*, *Ctr. for Food Safety v. Vilsack*, No. 15CV01590HSGKAW, 2017 WL 1709318, at *5
19  (N.D. Cal. May 3, 2017) (Magistrate Judge Kandis Westmore) ("[C]ourts in this district have
20  required parties withholding documents on the basis of the deliberative process privilege to, at a
21  minimum, substantiate those claims in a privilege log."); *Inst. for Fisheries Res. v. Burwell*, No.
22  16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (Judge Vince Chhabria);
23  *Lockyer*, 2006 WL 708914, at *4.

---

[7] Although not addressed in the brief or at oral argument, the privilege log referenced personal privacy and executive privilege objections for certain documents.  No substantial privacy interest is implicated in any of the documents ordered to be produced below, nor do any of these documents fall within the executive privilege.

11

1  "If a privilege applies, the proper strategy isn't pretending the protected material wasn't
2  considered, but withholding or redacting the protected material and then logging the privilege."
3  *Inst. for Fisheries Res.*, 2017 WL 89002 at *1.[8]

4  Courts outside this district that have determined no privilege log was required have done
5  so on the grounds that the defendants' judgment of what constitutes the administrative record is
6  entitled to a presumption of correctness. *See San Luis & Delta-Mendota Water Auth. v. Jewell*,
7  No. 115CV01290LJOGSA, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016) (Judge
8  Lawrence O'Neill); *Nat'l Ass'n of Chain Drug Stores v. United States Dep't of Health &
9  Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009). Here, however, that presumption has
10 been overcome by plaintiffs' showing that defendants failed to include documents considered in
11 arriving at the final decision to rescind DACA in the administrative record. Therefore, even
12 applying those courts' logic, a privilege log would still be appropriate here.

13 Going forward, defendants shall comply with the standing order in this case and provide
14 a privilege log for all documents withheld on grounds of privilege, which log shall include all
15 authors and recipients of privileged documents, as well as other information set forth in the rule
16 (*see* Dkt. No. 23 ¶ 18).

**RELIEF ORDERED**

18 Plaintiffs' motion to complete the administrative record is **GRANTED** to the extent now
19 stated. Defendants are directed to complete the administrative record by adding to it all emails,
20 letters, memoranda, notes, media items, opinions and other materials directly or indirectly
21 considered in the final agency decision to rescind DACA, to the following extent: (1) all
22 materials actually seen or considered, however briefly, by Acting Secretary Duke in connection
23 with the potential or actual decision to rescind DACA (except as stated in the next paragraph
24 below), (2) all DACA-related materials considered by persons (anywhere in the government)
25 who thereafter provided Acting Secretary Duke with written advice or input regarding the

---

[8] In a memorandum opinion, our court of appeals denied a plaintiff's request to require a privilege log. *See Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (2010). In that decision, however, our court of appeals first denied a motion to supplement the record, and finding that the plaintiffs had not presented evidence that the agency had considered the documents the plaintiffs sought to compel, only then denied the accompanying motion for preparation of a privilege log without further explanation.

12

actual or potential rescission of DACA, (3) all DACA-related materials considered by persons (anywhere in the government) who thereafter provided Acting Secretary Duke with verbal input regarding the actual or potential rescission of DACA, (4) all comments and questions propounded by Acting Secretary Duke to advisors or subordinates or others regarding the actual or potential rescission of DACA and their responses, and (5) all materials directly or indirectly considered by former Secretary of DHS John Kelly leading to his February 2017 memorandum not to rescind DACA.

The undersigned judge has balanced the deliberative-process privilege factors and determined *in camera* that the following materials from the government's *in camera* submission, listed by tab number, shall be included in the administrative record: 1–6, 7 (only the header and material on pages 3–4 concerning DACA), 12, 14, 17–25, 27–30, 36, 39, 44, 47, 49 (only the first paragraph, and the paragraph captioned "General"), 69–70, 73–74, 77, 79, 81, 84. The remainder of the *in camera* submission need not be included.

If the government redacts or withholds any material based on deliberative-process, or any other privilege in its next filing, it shall simultaneously lodge full copies of all such materials, indicating by highlighting (or otherwise) the redactions and withholdings together with a log justification for each. The judge will review and rule on each item.

Plaintiffs' insistence that defendants scour the Department of Justice and the White House for documents for inclusion in the administrative record is overruled except to the limited extent that DOJ or White House personnel fall within the category described in the first paragraph above as someone who gave verbal or written input to the Acting Secretary. Nor do defendants have to search for DACA materials below the agency levels indicated in the first paragraph above. These are intended as practical limits on what would otherwise be a bone-crushing expedition to locate needles in haystacks.

This order, however, is not intended to limit the scope of discovery (as opposed to the scope of the administrative record). The scope of discovery over and above the administrative record continues to be managed by Magistrate Judge Sallie Kim.

The federal defendants shall file an amended administrative record in conformity with this order by **NOON ON OCTOBER 27**.

If any party plans to seek a writ of mandate and wants a stay pending appellate review, then a fresh motion to that effect must be made very promptly.

**IT IS SO ORDERED.**

Dated: October 17, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE