CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
BRETT A. SHUMATE
Deputy Assistant Attorney General
JENNIFER D. RICKETTS
Director, Federal Programs Branch
JOHN R. TYLER
Assistant Branch Director
BRAD P. ROSENBERG (DC Bar #467513)
Senior Trial Counsel
STEPHEN M. PEZZI (DC Bar #995500)
KATE BAILEY (MD Bar #1601270001)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,

    Plaintiffs,

  v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,

    Defendants.

No. 3:17-cv-05211-WHA
No. 3:17-cv-05235-WHA
No. 3:17-cv-05329-WHA
No. 3:17-cv-05380-WHA
No. 3:17-cv-05813-WHA

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS ALL N.D. CAL. DACA CASES; MEMORANDUM IN SUPPORT**

Judge:  Honorable William Alsup
Hearing:  December 20, 2017, 8:00 a.m.
Place:  San Francisco U.S. Courthouse, Courtroom 8, 19th Floor

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 5

    A.    Deferred Action Generally ................................................................... 5

    B.    DAPA and DACA ................................................................................ 6

    C.    The *Texas* Litigation ......................................................................... 7

    D.    Rescission of DACA ........................................................................... 9

    E.    These Actions ................................................................................. 10

LEGAL STANDARDS .................................................................................................... 12

ARGUMENT .............................................................................................................. 13

I.    THESE CASES ARE NOT JUSTICIABLE ................................................................. 14

    A.    The Rescission Policy Is Not Justiciable Because this Immigration
           Enforcement Policy Is a Matter Committed to Agency Discretion
           by Law ........................................................................................... 14

    B.    The INA Deprives District Courts of Jurisdiction over Challenges
           to Denials of Deferred Action .......................................................... 17

    C.    The University, State, Municipal, and Union Plaintiffs' Claims Are
           Not Cognizable ............................................................................... 20

           1.    The University, State, Municipal, and Union Plaintiffs Lack
                 Article III Standing ................................................................ 20

           2.    The University, State, Municipal, and Union Plaintiffs Lack
                 a Cause of Action Under the APA ........................................... 21

    D.    The Government's Justiciability Objections Are Not Inconsistent with
           the Acting Secretary's Reliance on the Fifth Circuit's Decision ........................... 22

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

i

II.    PLAINTIFFS FAIL TO STATE A CLAIM ....................................................... 23

       A.    The Acting Secretary Rationally Explained Her Decision To Wind
             Down DACA, Particularly Given the Imminent Risk of A Nationwide
             Injunction ................................................................................................. 23

       B.    The Rescission Policy Is Exempt from Notice and Comment ............................ 29

       C.    Plaintiffs Fail to State an Equal Protection Claim ................................. 32

       D.    Plaintiffs Fail to State a Procedural Due Process Claim ........................ 35

       E.    Plaintiffs Fail to State a Substantive Due Process Claim. .................... 38

       F.    Plaintiffs' Regulatory Flexibility Act Claim Fails Because Notice-
             and-Comment Procedures Were Not Required ...................................... 41

       G.    Plaintiffs' Equitable Estoppel Claims Fail ............................................ 42

III.   NATIONWIDE DECLARATORY AND INJUNCTIVE RELIEF IS
       IMPERMISSIBLE ............................................................................................ 45

CONCLUSION ...................................................................................................... 46

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

ii

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ............................................................................. 45

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ............................................................................. 42

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982) ............................................................................. 21

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999) .............................................................................. 36

*Arizona v. United States*,
   567 U.S. 387 (2012) ..................................................................... 5, 15, 34

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) .......................................................... *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 12

*Bates v. Donley*,
   935 F. Supp. 2d 14 (D.D.C. 2013) .................................................... 12, 13

*Bd. of Regents v. Roth*,
   408 U.S. 564 (1972) ............................................................................. 36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 12

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
   239 U.S. 441 (1915) ............................................................................. 38

*Botezatu v. INS*,
   195 F.3d 311 (7th Cir. 1999) ........................................................... 18, 19

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*,
   419 U.S. 281 (1974) ........................................................................ 25, 26

*Brittain v. Hansen*,
   451 F.3d 982 (9th Cir. 2006) ............................................................... 40

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

iii

*Califano v. Sanders*,
   430 U.S. 99 (1977) ...................................................................................................... 12

*Camp v. Pitts*,
   411 U.S. 138 (1973) .................................................................................................... 24

*Cassirer v. Kingdom of Spain*,
   616 F.3d 1019 (9th Cir. 2010) .................................................................................... 12

*Chaudhry v. Holder*,
   705 F.3d 289 (7th Cir. 2013) ....................................................................................... 6

*Chavez v. Martinez*,
   538 U.S. 760 (2003) .................................................................................................... 40

*Chevron U.S.A. Inc. v. Echazabal*,
   536 U.S. 73 (2002) ...................................................................................................... 25

*Chrysler Corp. v. Braun*,
   441 U.S. 281 (1979) .................................................................................................... 30

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .............................................................................................. 15, 23

*Clarke v. Secs. Indus. Ass'n*,
   479 U.S. 388 (1987) .................................................................................................... 21

*Cmty. Nutrition Inst. v. Young*,
   818 F.2d 943 (D.C. Cir. 1987) ................................................................................... 30

*Conn. Bd. of Pardons v. Dumschat*,
   452 U.S. 458 (1981) .................................................................................................... 40

*Consumer Energy Council v. FERC*,
   673 F.2d 425 (D.C. Cir. 1982) ................................................................................... 29

*Cty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) .................................................................................................... 40

*De Silva v. Smith*,
   773 F.2d 1021 (9th Cir. 1985) .................................................................................... 37

*Decatur Liquors, Inc. v. Dist. of Columbia*,
   478 F.3d 360 (D.C. Cir. 2007) ................................................................................... 38

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

iv

*Dinh Nguy v. County of Yolo,*
  No. 2:14-cv-229-MCE-EFB PS, 2014 WL 4446829 (N.D. Cal. Sept. 9, 2014).......................45

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) ......................................................................................18

*Emery Min. Corp. v. Sec'y of Labor,*
  744 F.2d 1411 (10th Cir. 1984) ..................................................................................42

*FCC v. Fox TV Stations, Inc.,*
  556 U.S. 502 (2009)...........................................................................................23, 24

*Fed'n for Am. Immigration Reform, Inc. v. Reno,*
  93 F.3d 897 (D.C. Cir. 1996) .....................................................................................22

*Fla. Power & Light Co. v. Lorion,*
  470 U.S. 729 (1985) ................................................................................................24

*Gerhart v. Lake Cnty.,*
  637 F.3d 1013 (9th Cir. 2011) ....................................................................................39

*Green v. City of Tucson,*
  340 F.3d 891 (9th Cir. 2003) .....................................................................................35

*Heckler v. Chaney,*
  470 U.S. 821 (1985)...........................................................................................*passim*

*Heckler v. Community Health Servs.,*
  467 U.S. 51, 104 S. Ct. 2218 (1984)..........................................................................43

*Helgeson v. Bureau of Indian Affairs, Dep't of Interior,*
  153 F.3d 1000 (9th Cir. 1998) ..............................................................................14, 19

*Herguan Univ. v. Immigration & Customs Enf't,*
  No. 16-cv-06656-LHK, 2017 WL 2797860 (N.D. Cal. June 28, 2017) ...................................12

*Hoffman Plastic Compounds, Inc. v. NLRB,*
  535 U.S. 137 (2002)................................................................................................35

*Hyuk Joon Lim v. Holder,*
  710 F.3d 1074 (9th Cir. 2013) ...................................................................................40

*ICC v. Bhd. of Locomotive Eng'rs (BLE),*
  482 U.S. 270 (1987)...........................................................................................14, 16

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

v

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................. 13

*Ky. Dep't of Corrs. v. Thompson*,
   490 U.S. 454 (1989) .......................................................................... 36

*Lewis v. Casey*,
   518 U.S. 343 (1996) .......................................................................... 45

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) .......................................................................... 14

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) .......................................................................... 20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................. 12, 20, 29

*Mada-Luna v. Fitzpatrick*,
   813 F.2d 1006 (9th Cir. 1987) ........................................................... 16

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) .......................................................................... 46

*Mangindin v. Wash. Mut. Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ............................................... 45

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ............................................................. 13

*Marilley v. Bonham*,
   844 F.3d 841 (9th Cir. Dec. 21, 2016) ............................................... 35

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .......................................................................... 21

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ............................................................. 12

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1867) ............................................................. 22

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) .......................................................................... 46

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

vi

*Morgan v. United States,*
   304 U.S. 1 (1938)................................................................................... 24

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
   463 U.S. 29 (1983)................................................................................. 23

*Munoz v. Ashcroft,*
   339 F.3d 950 (9th Cir. 2003) ................................................................. 41

*N.W. Mining Ass'n v. Babbitt,*
   5 F. Supp. 2d 9 (D.D.C. 1998)............................................................... 41

*Nat'l Ass'n of Regulatory Utility Comm'rs v. U.S. Dep't of Energy,*
   851 F.2d 1424 (D.C. Cir. 1988)............................................................. 31

*Nat'l Mining Ass'n v. McCarthy,*
   758 F.3d 243 (D.C. Cir. 2014)............................................................... 30

*New Hampshire v. Maine,*
   532 U.S. 742 (2001)............................................................................... 42

*Omar v. McHugh,*
   646 F.3d 13 (D.C. Cir. 2011)................................................................. 36

*Pac. Gas & Elec. Co. v. FPC,*
   506 F.2d 33 (D.C. Cir. 1974)................................................................. 30

*Perales v. Casillas,*
   903 F.2d 1043 (5th Cir. 1990) ............................................................... 16

*Perez v. Mortgage Bankers Ass'n,*
   135 S. Ct. 1199 (2015)..................................................................... 28, 43

*Rempfer v. Sharfstein,*
   583 F.3d 860 (D.C. Cir. 2009)......................................................... 12, 13

*Reno v. Am.-Arab Anti-Discrimination Comm. (AADC),*
   525 U.S. 471 (1999)...................................................................... *passim*

*Robinson v. United States,*
   586 F.3d 683 (9th Cir. 2009) ................................................................. 12

*Salgado-Diaz v. Gonzales,*
   395 F.3d 1158 (9th Cir. 2005) ............................................................... 44

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

vii

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
  411 U.S. 1 (1973) ..................................................................................... 35

*San Luis Obispo Mothers for Peace v. U.S. N.R.C.,*
  789 F.2d 26 (D.C. Cir. 1986) ................................................................... 24

*Syncor Int'l Corp. v. Shalala,*
  127 F.3d 90 (D.C. Cir. 1997) ................................................................... 30

*Syracuse Peace Council v. FCC,*
  867 F.2d 654 (D.C. Cir. 1989) ................................................................. 26

*Tefel v. Reno,*
  180 F.3d 1286 (11th Cir. 1999) ............................................................... 41

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ................................................................................. 13

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) ............................................................. *passim*

*Town of Castle Rock v. Gonzales,*
  545 U.S. 748 (2005) ................................................................................. 36

*Town of Chester v. Laroe Estates, Inc.,*
  137 S. Ct. 1645 (2017) ............................................................................. 45

*Troy Corp. v. Browner,*
  120 F.3d 277 (D.C. Cir. 1997) ................................................................. 24

*U.S. Telecom Ass'n v. FCC,*
  400 F.3d 29 (D.C. Cir. 2005) ................................................................... 41

*United States v. Armstrong,*
  517 U.S. 456 (1996) ........................................................................... *passim*

*United States v. Browning,*
  630 F.2d 694 (10th Cir.1980) ................................................................... 43

*United States v. Morgan,*
  313 U.S. 409 (1941) ................................................................................. 24

*United States v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003) ................................................................... 13

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

viii

*United States v. Texas,*
   136 S. Ct. 2271 (2016) ............................................................................................ 8

*United States v. Texas,*
   137 S. Ct. 285 (2016) .............................................................................................. 8

*Univ. Med. Ctr. of S. Nev. v. Shalala,*
   173 F.3d 438 (D.C. Cir. 1999) .............................................................................. 13

*Vasquez v. Aviles,*
   639 F. App'x 898 (3d Cir. 2016) ........................................................................... 18

*Velasco-Gutierrez v. Crossland,*
   732 F.2d 792 (10th Cir. 1984) ............................................................................... 37

*Washington v. Davis,*
   426 U.S. 229 (1976) ............................................................................................... 33

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ............................................................................................... 40

*Watkins v. United States Army,*
   875 F.2d 699 (9th Cir. 1989) ........................................................................... 43, 44

*Yassini v. Crosland,*
   618 F.2d 1356 (9th Cir. 1980) ............................................................................... 38


STATUTES

5 U.S.C. § 553 ............................................................................................... 3, 29, 30

5 U.S.C. § 601 ......................................................................................................... 41

5 U.S.C. § 604 ......................................................................................................... 41

5 U.S.C. § 611 ......................................................................................................... 41

5 U.S.C. § 701 .............................................................................................. 14, 16, 19

5 U.S.C. § 702 ......................................................................................................... 21

5 U.S.C. § 706 ......................................................................................................... 23

6 U.S.C. § 202 ......................................................................................................... 18

6 U.S.C. § 251 ......................................................................................................... 18

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

ix

6 U.S.C. § 557 .................................................................................................................. 18

8 U.S.C. § 1103 ................................................................................................................... 5

8 U.S.C. § 1227 ................................................................................................................... 5

8 U.S.C. § 1229b ................................................................................................................. 5

8 U.S.C. § 1252 (g) ..................................................................................................... *passim*

8 U.S.C. § 1154 ................................................................................................................... 5

8 U.S.C. § 1158 ................................................................................................................... 5

8 U.S.C. § 1182 ................................................................................................................... 5

28 U.S.C. § 2201 ............................................................................................................... 45


**RULES**

Fed. R. Civ. P. 8(c) ........................................................................................................... 42

Fed. R. Civ. P. 12 ........................................................................................................ 12, 13


**REGULATIONS**

8 C.F.R. § 274a.12(c)(14) ............................................................................................... 5, 6


**OTHER AUTHORITIES**

Attorney General's Manual on the Administrative Procedure Act 30 (1947) .............................. 30

DHS DACA FAQ,
    https://go.usa.gov/xngCd ................................................................... 7, 28, 37, 39, 44

Press Release, DHS
    Statement from Acting Secretary Duke on the Rescission of DACA (Sept. 5, 2017),
    https://go.usa.gov/xncuM ......................................................................................... 25

U.S. Dep't of Justice, Office of Legal Counsel,
    *The Department of Homeland Security's Authority to Prioritize Removal of Certain Aliens
    Unlawfully Present*, 38 Op. O.L.C. (Nov. 19, 2014),
    https://www.justice.gov/file/179206/download .................................................... 28

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

x

USCIS, Policy Memorandum (Nov. 7, 2011),
     https://go.usa.gov/xncPK. .......................................................................................................... 7

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

xi

CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
BRETT A. SHUMATE
Deputy Assistant Attorney General
JENNIFER D. RICKETTS
Director, Federal Programs Branch
JOHN R. TYLER
Assistant Branch Director
BRAD P. ROSENBERG (DC Bar #467513)
Senior Trial Counsel
STEPHEN M. PEZZI (DC Bar #995500)
KATE BAILEY (MD Bar #1601270001)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | No. 3:17-cv-05211-WHA<br>No. 3:17-cv-05235-WHA<br>No. 3:17-cv-05329-WHA<br>No. 3:17-cv-05380-WHA<br>No. 3:17-cv-05813-WHA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS ALL N.D. CAL. DACA CASES; MEMORANDUM IN SUPPORT**<br><br>Judge:  Honorable William Alsup<br>Hearing:  December 20, 2017, 8:00 a.m.<br>Place:  San Francisco U.S. Courthouse, Courtroom 8, 19th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 20, 2017, at 8:00 a.m., before the Honorable William Alsup of the United States District Court for the Northern District of California, in Courtroom 8 of the 19th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California, Defendants will move this Court to dismiss all claims in the following related matters (hereinafter, "DACA cases"):

- No. 3:17-cv-05211-WHA, *Regents of the University of California, et al. v. U.S. Dep't of Homeland Security, et al.*

- No. 3:17-cv-05235-WHA, *State of California, et al. v. U.S. Dep't of Homeland Security, et al.*

- No. 3:17-cv-05329-WHA, *City of San Jose v. Trump, et al.*

- No. 3:17-cv-05380-WHA, *Garcia, et al. v. United States of America, et al.*

- No. 3:17-cv-05813-WHA, *County of Santa Clara, et al. v. Trump, et al.*

Defendants' motion to dismiss is being made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  The basis for this motion is set forth more fully in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In 2012, then-Secretary of Homeland Security Janet Napolitano adopted the policy now known as DACA, or Deferred Action for Childhood Arrivals.  DACA made deferred action—a practice by which the Secretary exercises individualized enforcement discretion to issue a reversible notification that she does not intend to remove an alien for a set period of time—available to a class of unlawfully present aliens who came to the United States as children.  In 2014, one of her successors expanded the parameters of DACA and adopted a similar policy known as DAPA, or Deferred Action for Parents of Americans.  DAPA, if implemented, would have made deferred action available to unlawfully present aliens who were parents of U.S. citizens and lawful permanent residents.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

1

DAPA, including its expansion of DACA, was promptly challenged by a coalition of 26 states.  Although then-Secretary of Homeland Security Jeh Johnson vigorously defended the policy, he was rebuffed at every turn:  the district court for the Southern District of Texas issued a nationwide preliminary injunction; the Fifth Circuit affirmed, declaring the policy "manifestly contrary" to the Immigration and Nationality Act (INA); and an equally divided Supreme Court affirmed, leaving the injunction in place.

Armed with this victory, the states threatened to amend their complaint to challenge not just DAPA, but DACA as well, arguing that it suffers from the same infirmities.  In view of the substantial similarities between the two policies, the significant litigation risk posed by the Supreme Court and Fifth Circuit decisions, and the Attorney General's view that DACA was in fact unlawful, Acting Secretary of Homeland Security Elaine C. Duke was faced with two options.  On the one hand, she could wind down DACA in an orderly fashion, minimizing the disruption to current recipients.  On the other, continued litigation would in all likelihood result in a nationwide injunction abruptly ending the policy, plunging its nearly 800,000 recipients into uncertainty.

The Acting Secretary chose the less disruptive option: an orderly process that formally rescinds DACA but allows it to sunset.  Under this Rescission Policy, no DACA recipient will have his or her deferred action abruptly terminated based solely on the Rescission Policy; instead, prior grants will remain valid for the remainder of their stated duration (generally two years) before ending consistent with their stated terms.  Any DACA recipient whose deferred action was due to expire within six months was given a month to request another two-year renewal.  And although the agency stopped accepting new DACA requests, it will finish processing those it had received when the rescission began.

In these five related cases, Plaintiffs—the University of California system and its president, four states, the City of San Jose, a group of individual DACA recipients, and Santa Clara County and a local labor union—challenge the Rescission Policy on a variety of statutory, constitutional, and common-law grounds, urging the Court to invalidate the agency's decision and enjoin the Acting Secretary from rescinding DACA.  There is no basis to do so.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

2

To begin, this case is not justiciable.  The Rescission Policy is a classic exercise of enforcement discretion "presumed immune from judicial review," *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985), and particularly unfettered in the context of immigration, *see Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 487–92 (1999).  In fact, Congress has stripped district courts of jurisdiction to review "'no deferred action' decisions and similar discretionary determinations" such as the one here.  *AADC*, 525 U.S. at 485; *see* 8 U.S.C. § 1252(g).  At a minimum, the university, state, municipal, and union Plaintiffs cannot proceed due to their lack of standing and a cause of action.  The Court should not permit Plaintiffs to circumvent these bedrock limits on judicial review.

On the merits, Plaintiffs' claims fail as a matter of law.  Their claim that the Rescission Policy is arbitrary and capricious under the Administrative Procedure Act (APA) because it was inadequately supported on the record is fundamentally misguided.  Agencies are always free to change course on policy matters so long as they provide a rational explanation.  Here, the Acting Secretary's explanation of her decision to rescind DACA amply meets that deferential standard, particularly given the adverse ruling from the Fifth Circuit and the Supreme Court's affirmance, the evident similarities between DACA and the policy that expanded DACA and created DAPA, the Attorney General's opinion that DACA was likewise unlawful, and the imminent risk of a nationwide injunction with potentially chaotic results.  Importantly, because this claim can be resolved now based on the Complaints, the documents attached or incorporated by reference therein, and other judicially noticeable materials (including those in the administrative record), the Court should either uphold the Rescission Policy and grant this motion if it agrees that the record supports Defendants' position, or set aside the Rescission Policy if it disagrees.

Plaintiffs' notice-and-comment claim is equally unavailing.  The APA exempts "general statements of policy" from notice and comment, 5 U.S.C. § 553(b), and the Rescission Policy is a reordering of enforcement priorities that readily qualifies.  Indeed, the Department of Homeland Security (DHS) and the former Immigration and Naturalization Service (INS) have adopted more than 20 deferred action or similar policies over the past 50 years.  Few have gone through notice and comment, and there is no warrant for those procedures here.  Nor does the

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

3

Fifth Circuit's ruling that the states established a substantial likelihood of success on their claim that the promulgation of DAPA required notice and comment mean that the rescission of DACA and a return to the *status quo ante* must likewise meet these procedural demands. Plaintiffs' Regulatory Flexibility Act (RFA) claim fails for the same reason, as that Act applies only where notice and comment is required. And in any event, if DACA's rescission required notice and comment, then DACA was void from the outset because its adoption would also have required notice and comment *a fortiori*.

Plaintiffs' equal protection claims get them no further. To the extent that a discriminatory motive claim—here, that the Policy was motivated by animus toward Mexican nationals—can ever be brought in a context like this one, *but see AADC*, 525 U.S. at 487–92, Plaintiffs must allege a clear case of discrimination given that they challenge an exercise of enforcement discretion, *see United States v. Armstrong*, 517 U.S. 456 (1996). They have failed to do so. Nor can Plaintiffs show that the Rescission Policy trenches on any fundamental right.

Plaintiffs' due process claims also cannot survive a motion to dismiss. DACA recipients have no protected liberty or property interest in the continued availability of deferred action, which is an exercise of prosecutorial discretion that confers no rights and is revocable at any time. Moreover, the Ninth Circuit has held that aliens—including those brought here as children—have no substantive due process right to stay in the United States, thus further dooming Plaintiffs' substantive due process claim.

Finally, Plaintiffs cannot state an equitable estoppel claim because estoppel does not run against the government. And even if they could, Plaintiffs fail to allege facts sufficient to make out such a claim.

In sum, even if Plaintiffs' challenge were somehow justiciable, the assumption underlying it would compel dismissal. DAPA—including its expansion of DACA—was enjoined by the Fifth Circuit, and that holding was affirmed by the Supreme Court. The original DACA policy is materially indistinguishable as a legal matter. At bottom, Plaintiffs' argument is that, when making discretionary enforcement determinations, federal agencies must ignore the legal rulings and reasoning of federal courts. To state the premise of this claim is to refute it.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

4

These five cases should all be dismissed.

## BACKGROUND

### A.    Deferred Action Generally

The Secretary of Homeland Security is charged "with the administration and enforcement" of the INA along with "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1).  Under these laws, individuals are subject to removal if, among other things, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 567 U.S. 387, 396 (2012) (citation omitted); *see* 8 U.S.C. §§ 1182(a), 1227(a).

Due to resource constraints, the federal government cannot remove every removable alien, which means that a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396 (citation omitted).  DHS officials must first "decide whether it makes sense to pursue removal at all," *id.*, and once proceedings begin, they may decide to grant certain forms of discretionary relief expressly authorized by statute, such as asylum, parole, or cancellation of removal, 8 U.S.C. §§ 1158(b)(1)(A), 1182(d)(5)(A), 1229b.  "At each stage" of the process, "the Executive has discretion to abandon the endeavor" entirely. *AADC*, 525 U.S. at 483.

"One form of discretion the Secretary of Homeland Security exercises is 'deferred action,' which entails temporarily postponing the removal of individuals unlawfully present in the United States." *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (citation omitted), *cert. denied*, 136 S. Ct. 900 (2016).  Deferred action is a practice by which the Secretary exercises her "discretion to abandon" the removal process, and to notify an individual alien of a non-binding decision to forbear from seeking his removal for a set period. *AADC*, 525 U.S. at 483; *see* 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of administrative convenience to the government which gives some cases lower priority").  Although originally "developed without express statutory authority," individualized deferred action has been recognized by Congress in certain circumstances inapplicable here, *see, e.g.*, 8 U.S.C. § 1154(a)(1)(D)(i)(II), (IV) (providing that certain individuals are "eligible for deferred action"), and described by the

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

5

Supreme Court as an "exercise in administrative discretion," *AADC*, 525 U.S. at 484.  Deferred action (or a similar form of relief) dates back to the 1960s, *Arpaio*, 797 F.3d at 16, and DHS and the former INS have adopted over 20 such policies over the past 50 years—rarely through notice-and-comment rulemaking.

A variety of consequences may flow from a decision to defer removal action, including the ability to apply for work authorization, under DHS regulations not challenged here.  *See, e.g.*, 8 C.F.R. § 274a.12(c)(14).  That decision does not, however, confer lawful immigration status or provide any defense to removal.  *Cf. Chaudhry v. Holder*, 705 F.3d 289, 292 (7th Cir. 2013) (discussing difference between "unlawful presence" and "unlawful status").  To the contrary, deferred action is "discretionary and reversible, and 'confers no substantive right, immigration status or pathway to citizenship.'"  *Arpaio*, 797 F.3d at 17 (citation omitted).  DHS thus has discretion to revoke deferred action unilaterally, for any reason or no reason, with or without notice, and an individual with deferred action remains removable at any time.  *See AADC*, 525 U.S. at 484–85.

## B.     DAPA and DACA

On June 15, 2012, then-Secretary Napolitano announced the policy now known as DACA, or Deferred Action for Childhood Arrivals.  *See* Admin. R. (AR) 1–3, ECF No. 64-1[1]; *see also* Compl. Ex. D, *State of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05235-WHA, ECF No. 1-4 (DACA Memo).  DACA made deferred action available to "certain young people who were brought to this country as children" in violation of the immigration laws.  DACA Memo at 1 (AR 1).  Following completion of a background check, successful requestors would receive deferred action for a period of two years, subject to indefinite renewal.  *Id.* at 2-3 (AR 2-3).

The DACA Memo stated that deferred action was an "exercise of prosecutorial discretion," *id.* at 1 (AR 1), and that requests for this relief would "be decided on a case by case basis," *id.* at 2 (AR 2).  Accordingly, the Memo provided that this grant of deferred action

---

[1] Unless otherwise noted, all references to the docket refer to the docket in *Regents of the University of California v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211-WHA.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

6

"confer[red] no substantive right, immigration status or pathway to citizenship.   Only the Congress, acting through its legislative authority, can confer these rights."  *Id.* at 3 (AR 3).

In public guidance published on its website, DHS also informed DACA requestors that information in their requests will be "protected from disclosure to [Immigration & Customs Enforcement (ICE)] and [Customs & Border Patrol (CBP)] for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice to Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance" (for example, when issues of national security, public safety, or significant criminal activity are raised).  DHS DACA FAQ No. 19, Compl. Ex. E, *State of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05235-WHA, ECF No. 1-5 (https://go.usa.gov/xngCd); *see* USCIS, Policy Memorandum (Nov. 7, 2011) (Notice to Appear Guidance), https://go.usa.gov/xncPK.  DHS instructed, however, that this information-sharing policy creates no rights and "may be modified, superseded, or rescinded at any time without notice."  DHS DACA FAQ No. 19.

In 2014, then-Secretary Jeh Johnson expanded DACA and created a new, similar policy known as Deferred Action for Parents of Americans and Lawful Permanent Residents, or DAPA.  *See* AR 37–41 (DAPA Memo).  DAPA made deferred action available to certain unlawfully present aliens who were "parents of U.S. citizens or lawful permanent residents."  DAPA Memo at 3 (AR 39).  The DAPA Memo also expanded DACA by relaxing the eligibility criteria and extending the DACA renewal period from two to three years.  *Id.* at 3–4 (AR 39-40).

## C.     The *Texas* Litigation

The DAPA Memo—including its expansion of DACA—was challenged by a coalition of 26 states, led by Texas, which sought to enjoin its implementation.  Affirming the district court, the Fifth Circuit upheld a nationwide preliminary injunction against implementation of the DAPA Memo.  *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).  Like the U.S. District Court for the Southern District of Texas, the Fifth Circuit held that the promulgation of the DAPA Memo was justiciable, in part because it believed that "the INA's intricate regulatory scheme for changing immigration classifications" allowed the court to determine whether DHS had exceeded its statutory authority.  *Id.* at 168.  It stressed, however, that "the *denial* of

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

7

voluntary departure and work authorization" would be unreviewable. *Id.* Also like the district court, the Fifth Circuit held that the DAPA Memo failed to comply with the APA's notice-and-comment requirement, but emphasized that "DAPA is much more than a nonenforcement policy," and that "a traditional nonenforcement policy would not necessarily be subject to notice and comment." *Id.* at 178 n.156. And going beyond the district court, the Fifth Circuit held that DAPA was "manifestly contrary" to the INA, in part because, unlike prior deferred-action policies that served as "bridges from one legal status to another," DAPA awarded deferred action "to persons who have never had a legal status and may never receive one." *Id.* at 184, 186 (footnotes omitted).

That decision was affirmed by an equally divided Supreme Court, *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam), which later denied the government's request for a rehearing upon confirmation of a ninth Justice, 137 S. Ct. 285 (2016), leaving the preliminary injunction in place. On November 18, 2016, the parties jointly moved the district court to stay merits proceedings to allow them to evaluate "how they might choose to move forward" given the upcoming "change in Administration[s]." Joint Mot. to Stay Merits ¶ 2, *Texas v. United States*, No. 14-254 (S.D. Tex. Nov. 18, 2016) (ECF No. 430).

Faced with continued litigation over a policy that had been enjoined by the courts, DHS rescinded the DAPA Memo on June 15, 2017, including its provisions expanding DACA. *See* Memorandum for Kevin McAleenan, Acting Commissioner, U.S. Customs and Border Protection, et al., from John F. Kelly, Secretary of Homeland Security, *Re: Rescission of November 20, 2014 Memorandum Providing for Deferred Action for Parents of Americans and Lawful Permanent Residents* (June 15, 2017), AR 235-37. Plaintiffs do not challenge that decision here.

On June 29, 2017, Texas and several other states threatened to amend their complaint to also challenge directly the DACA Memo, arguing that it suffers from the same legal infirmities as the DAPA Memo. *See* AR 238–40 (Paxton Letter).

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

8

**D.      Rescission of DACA**

Faced again with the prospect of continued litigation, Acting Secretary Duke decided on September 5, 2017, to wind down the DACA policy in an orderly fashion.  *See* AR 252–56 (Rescission Policy or Policy); *see also* Compl. Ex. A, *State of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05235-WHA, ECF No. 1-1.  As the Acting Secretary explained, "[t]aking into consideration the Supreme Court's and Fifth Circuit's ruling in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated."  Rescission Policy at 4 (AR 255).  Specifically, she quoted the Attorney General's September 4 recommendation to rescind DACA, which explained that because DACA "has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results."  *Id.* at 3 (AR 254).  Invoking her "authority in establishing national immigration policies and priorities," she rescinded the DACA Memo, *id.* at 4 (AR 255), and instructed that deferred action should instead be provided "only on an individualized[,] case-by-case basis," *id.* at 2 (AR 253).

At the same time, to facilitate an orderly transition, the Rescission Policy provides that:

- For *current DACA recipients*, DHS "[w]ill not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum for the remaining duration of their validity periods." *Id.* at 4 (AR 255)

- For *initial DACA requests*, DHS "[w]ill adjudicate—on an individual, case-by-case basis—properly filed pending DACA initial requests and associated applications for Employment Authorization Documents that have been accepted by [DHS] as of" September 5, 2017, but "[w]ill reject all DACA initial requests and associated applications for Employment Authorization Documents filed after" that date. *Id.*

- For *DACA renewal requests*, DHS "[w]ill adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries that have been accepted by [DHS] as of" September 5, 2017.  Further, DHS will similarly adjudicate such requests and applications "from current beneficiaries whose [deferred action under DACA] will expire between [September 5, 2017,] and March 5, 2018[,] that have been accepted by the Department as of October 5, 2017." *Id.*

Like the DACA and DAPA Memos, the Rescission Policy notes that it "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural,

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

enforceable at law by any party in any administrative, civil, or criminal matter." *Id.* at 5 (AR 256). Accordingly, DHS will "continue to exercise its discretionary authority to terminate or deny deferred action at any time." *Id.* at 4 (AR 255). The Rescission Policy says nothing about (and makes no changes to) DHS's information-sharing policy.

### E.     These Actions

Plaintiffs in these five related lawsuits raise seven overlapping sets of claims. First, they allege that the Rescission Policy is arbitrary and capricious and therefore violates the APA because it constitutes a change in agency policy without an adequate explanation or basis. *See Regents of Univ. of Cal.* Compl. ¶¶ 50-58 (Count 1), No. 3:17-cv-05211 ECF No. 1; *State of Cal.* Compl. ¶¶ 152-155 (Count 3), No. 3:17-cv-05235 ECF No. 1; *Garcia* Compl. ¶ 175 (Count 4), No. 3:17-cv-05380 ECF No. 1; *Cty. of Santa Clara* Compl. ¶ 71 (Count 2), No. 3:17-cv-05813 ECF No. 1. The *Garcia* and *County of Santa Clara* Plaintiffs also allege that the rescission is arbitrary and capricious because DHS, in rescinding DACA, allegedly "disregard[ed]" the "reliance" of DACA recipients in providing personal information to the government. *See Garcia* Compl. ¶ 172; *see generally id.* ¶¶ 165-184 (Counts 4 & 5); *Cty. of Santa Clara* Compl. ¶ 72; *see generally id.* ¶¶ 67-73 (Count 2). The *Garcia* Plaintiffs also quarrel with DACA's rescission both by claiming that the government improperly provided for a wind-down period, and then claiming that the wind-down period is unreasonably "short." *Garcia* Compl. ¶¶ 173-174; *see generally id.* ¶¶ 165-184 (Counts 4 & 5). Finally, the Garcia Plaintiffs repackage their constitutional claims under the rubric of the APA. *See Garcia* Compl. ¶¶ 160-164 (Count 3).

Second, Plaintiffs allege that the rescission violates the APA because it was issued without notice and comment. *See Regents of Univ. of Cal.* Compl. ¶¶ 59-66 (Count 2); *State of Cal.* Compl. ¶¶ 146-151 (Count 2); *City of San Jose* Compl. ¶¶ 59-63 (Count 2), No. 3:17-cv-05329 ECF No. 1; *Garcia* Compl. ¶¶ 177-184 (Count 5).

Third, Plaintiffs allege that the rescission violates procedural due process because DACA recipients will be deprived of their interests in their DACA status without notice or an opportunity to be heard. *See Regents of Univ. of Cal.* Compl. ¶¶ 67-73 (Count 3); *Garcia* Compl. ¶¶ 133-147 (Count 1); *Cty. of Santa Clara* Compl. ¶¶ 59-66 (Count 1).

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

Fourth, Plaintiffs suggest that the rescission violates DACA recipients' substantive due process rights because the government has allegedly changed its policy regarding the use of DACA-related information, including that the government will allegedly use such information for enforcement purposes in a manner that is not "fundamentally fair." *State of Cal.* Compl. ¶¶ 141-145 (Count 1); *Garcia* Compl. ¶¶ 133-147 (Count 1); *Cty. of Santa Clara* Compl. ¶¶ 59-66 (Count 1).

Fifth, Plaintiffs contend that the rescission violates the Equal Protection component of the Fifth Amendment's Due Process Clause because it was allegedly motivated by discriminatory animus against Mexican and Latino immigrants. *City of San Jose* Compl. ¶¶ 52-58 (Count 1); *Garcia* Compl. ¶¶ 148-159 (Count 2); *Cty. of Santa Clara* Compl. ¶¶ 74-78 (Count 3). The State of California Plaintiffs also claim that the rescission of DACA violates equal protection principles because it "violates fundamental conceptions of justice by depriving DACA grantees . . . of their substantial interests in pursuing a livelihood and to support themselves and further their education." *State of Cal.* Compl. ¶¶ 172-177 (Count 6).

Sixth, Plaintiffs allege that the rescission violates the Regulatory Flexibility Act because it was unaccompanied by a regulatory flexibility analysis. *State of Cal.* Compl. ¶¶ 156-163 (Count 4); *Garcia* Compl. ¶¶ 185-191 (Count 6).

Seventh, Plaintiffs bring equitable estoppel claims, alleging that DACA recipients provided detailed personal information to the government and "rearranged their lives" based on the government's representations, but now face the possibility of removal and deportation. On that basis, Plaintiffs argue that the government should be equitably estopped from terminating DACA or from using DACA information for enforcement purposes. *State of Cal.* Compl. ¶¶ 164-171 (Count 5); *Garcia* Compl. ¶¶ 192-199 (Count 7); *Cty. of Santa Clara* Compl. ¶¶ 79-86 (Count 4).

Finally, Plaintiffs seek declaratory judgments and injunctive relief. *Regents of Univ. of Cal.* Compl. 16, Prayer for Relief; *State of Cal.* Compl. 35-36, Prayer for Relief; *City of San Jose* Compl. 15-16, Prayer for Relief; *Garcia* Compl. 43, Prayer for Relief & ¶¶ 200-205 (Count 8); *Cty. of San Jose* Compl. 26-27, Prayer for Relief.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

11

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish a court's jurisdiction through sufficient allegations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In evaluating its jurisdiction, this Court should not "rely simply on the allegations in the complaint to determine subject matter jurisdiction. [It] must instead look to facts outside the pleadings to determine whether [it] has jurisdiction." *Cassirer v. Kingdom of Spain,* 616 F.3d 1019, 1043 n.7 (9th Cir. 2010) (citing *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)); *see also McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."). Furthermore, "[n]o presumptive truthfulness attaches to plaintiffs' allegations. Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson*, 586 F.3d at 685 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

With respect to Plaintiffs' APA claims, "the Court may consider matters outside the pleadings without converting Defendants' Motion to Dismiss to a motion for summary judgment." *Herguan Univ. v. Immigration & Customs Enf't*, No. 16-cv-06656-LHK, 2017 WL 2797860, at *8 (N.D. Cal. June 28, 2017). "[W]hen a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal." *Id.* (alterations in original) (quoting *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009)); *see also Bates v. Donley*, 935 F. Supp. 2d 14, 17 (D.D.C. 2013) (citing *Rempfer*, 583 F.3d at 865). "Accordingly, '[t]he entire case on review is a question of law, and the complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action.'" *Herguan Univ.*, 2017 WL 2797860, at *8 (quoting *Rempfer*,

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

12

583 F.3d at 865).  Under these circumstances, review "is based on the agency record and limited to determining whether the agency acted arbitrarily and capriciously."  *Id.* (quoting *Rempfer*, 583 F.3d at 865); *see also Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n. 3 (D.C. Cir. 1999) (explaining that when reviewing agency action the question of whether the agency acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record, regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment).

Even outside the context of the APA, the Court may consider "matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court may also consider exhibits that are submitted with the complaint, *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005), as well as "evidence on which the complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion," *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Ritchie*, 342 F.3d at 908.[2]

## ARGUMENT

In seeking to invalidate the Rescission Policy, Plaintiffs ask the Court to override the Acting Secretary's judgment about how to exercise her discretion in enforcing the Nation's immigration laws.  The Court need not consider this extraordinary request, however, because this case is not justiciable.  The exercise of enforcement discretion in the Rescission Policy is committed to agency discretion by law and is therefore unreviewable.  In fact, Congress has gone so far as to strip district courts of jurisdiction over "no deferred action" decisions such as the one here.  At a minimum, the university, state, municipal, and union Plaintiffs lack standing.  And in all events, Plaintiffs fail to state a claim.  These cases should therefore be dismissed.

---

[2] In the alternative, however, the Court may if it wishes convert this motion to one for summary judgment.  *See Bates*, 935 F. Supp. 2d at 17, 19.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

## I.     THESE CASES ARE NOT JUSTICIABLE

### A.     The Rescission Policy Is Not Justiciable Because this Immigration Enforcement Policy Is a Matter Committed to Agency Discretion by Law

**1.** The APA bars judicial review of certain categories of decisions that "courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)).  These decisions are typically unreviewable because there exists "no meaningful standard against which to judge the agency's exercise of discretion" in these areas.  *Chaney*, 470 U.S. at 830.  Moreover, review is particularly inappropriate where "the subject matter is 'an area of executive action in which the courts have long been hesitant to intrude.'"  *Helgeson v. Bureau of Indian Affairs, Dep't of Interior*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Lincoln*, 508 U.S. at 191).  This bar applies even when "the agency gives a 'reviewable' reason for otherwise unreviewable action."  *ICC v. Bhd. of Locomotive Eng'rs* (*BLE*), 482 U.S. 270, 283 (1987).

Among the decisions committed to executive discretion are "an agency's exercise of enforcement power."  *Chaney*, 470 U.S. at 833.  Such judgments involve "a complicated balancing of factors which are peculiarly within [an agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall priorities, and, indeed, whether the agency has enough resources to undertake the action at all."  *Id.* at 831.  As there is "no meaningful standard against which to judge the agency's exercise of discretion" in weighing these factors, an agency's exercise of enforcement powers is "presumed immune from judicial review under § 701(a)(2)."  *Id.* at 830, 832.

For instance, an "agency decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Id.* at 831 (citation omitted).  After all, "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing," and it "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Id.* at 831–32.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

14

An agency's decision *to* enforce the law against a particular individual is likewise presumptively unreviewable.  Just as "the decision whether or not to prosecute" presumptively "rests entirely in [the prosecutor's] discretion," *Armstrong*, 517 U.S. at 464 (citation omitted), an agency's decision to bring a civil enforcement action is generally not open to judicial scrutiny.  Considerations such as "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, [and] whether the particular enforcement action requested best fits the agency's overall priorities" are equally present in enforcement decisions as in nonenforcement decisions, *Chaney*, 470 U.S. at 831, and judicial intrusion into the deliberative process is equally improper, *see Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("there must be a strong showing of bad faith or improper behavior before courts can engage in an "inquiry into the mental processes of administrative decisionmakers" (citation omitted)), *abrogated on other grounds by Califano v. Sanders*, 40 U.S. 99 (1977).

This presumption of nonreviewability applies with particular force when it comes to immigration.  On top of the general concerns implicated in any enforcement decision, the enforcement of immigration laws "embraces immediate human concerns," and the "dynamic nature of relations with other countries requires the Executive Branch to ensure that [immigration] enforcement policies are consistent with this Nation's foreign policy." *Arizona*, 567 U.S. at 396–97.  Given these realities, the "broad discretion exercised by immigration officials" has become a "principal feature of the removal system." *Id.* at 396.  One form of that broad discretion is deferred action, a "discretionary and reversible" decision to notify an alien that DHS has chosen not to seek his removal for a specific period of time. *Arpaio*, 797 F.3d at 17; *see supra* at 5-6.  Like other agency nonenforcement decisions, grants of deferred action rest on a complex balancing of policy considerations that cannot serve as "meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830.  Such determinations are thus presumptively unreviewable. *See Arpaio*, 797 F.3d at 16.

The converse is equally true: *denials* of deferred action are also committed to agency discretion.  *See AADC*, 525 U.S. at 485 (treating "'no deferred action' decisions" as "discretionary determinations").  Because "[g]ranting an illegally present alien permission to

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

15

remain and work in this country" is fundamentally "a dispensation of mercy," there are "no standards by which judges may patrol its exercise." *Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990) (INS's decision not to grant pre-hearing voluntary departures and work authorizations to a group of aliens non-justiciable).  To be sure, a decision "not to grant deferred action status to a particular alien is not precisely a 'decision not to take enforcement action,'" but that does not obscure the fact that "many of the same factors" underlying the latter determinations usually play a role in the former. *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1011 n.4 (9th Cir. 1987) ("denials of deferred action status applications are not subject to judicial review" under § 701(a)(2)).

**2.**  As an exercise of enforcement discretion, the Rescission Policy is a classic example of a discretionary determination that is entrusted to the agency alone.  Indeed, any attempt to judge the Policy would quickly entangle this Court in the sort of complex and discretionary balancing that has been entrusted by Congress to the Executive Branch.  For example, the judiciary is institutionally ill-equipped to assess whether the Acting Secretary's decision to change "immigration policies and priorities" by rescinding DACA, Rescission Policy at 4 (AR 255), was an appropriate use of "the Department's limited resources," *Arpaio*, 797 F.3d at 16.  Nor is this Court well suited to second-guess the Acting Secretary's balancing of the costs and benefits of keeping the policy in place, on one hand, with the risk of "potentially imminent litigation" that could throw DACA into immediate turmoil, on the other.  Rescission Policy at 3 (AR 254) (citation omitted).

To be sure, the Acting Secretary *also* gave substantive legal reasons for her decision, *id.* at 2–4 (AR 253–55), but that does not render it justiciable.  That is because the Supreme Court has rejected the proposition that if an "agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." *BLE*, 482 U.S. at 283.  For example, "a common reason for failure to prosecute an alleged criminal violation is the prosecutor's belief (sometimes publicly stated) that the law will not sustain a conviction," which "is surely an eminently 'reviewable' proposition, in the sense that courts are well qualified to consider the point." *Id.*  But that does not change the fact that "it is entirely clear that the refusal to prosecute

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

16

cannot be the subject of judicial review." *Id.*  Likewise, the Acting Secretary's discussion of the question of DACA's legality does not transform her generally unreviewable exercise of enforcement discretion into a matter fit for judicial scrutiny.

Indeed, reviewing the Rescission Policy would be particularly inappropriate given the wide discretion the Secretary enjoys in the enforcement of the immigration laws.  In *AADC*, the Supreme Court held that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation," 525 U.S. at 488 (footnote omitted), subject to the "possib[le]" exception "of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome," *id.* at 491.  The reason for this highly restrictive rule is that the concerns raised by challenges to the Executive's enforcement discretion "are greatly magnified in the deportation context."  *Id.* at 490.  An alien subject to removal is, by definition, in continuing violation of the INA, and judicial interference with the Executive's enforcement therefore would compel the Executive to disregard such ongoing violations.  The "delay" associated with challenges to discretionary decisions not to forgo enforcement is more likely than in the criminal arena, as "[p]ostponing justifiable deportation (in the hope that the alien's status will change … or simply with the object of extending the alien's unlawful stay) is often the principal object of resistance to a deportation proceeding," and "the consequence is to permit and prolong a continuing violation" of the immigration laws.  *Id.* at 490.  For another, reviewing immigration decisions may involve "not merely the disclosure of normal domestic law enforcement priorities and techniques, but often the disclosure of foreign-policy objectives" or other sensitive matters as well.  *Id.* at 490–91. Finally, the idea that "an ongoing violation of United States law . . . must be allowed to continue because it has been improperly selected is not powerfully appealing."  *Id.* at 491 (emphasis omitted).

**B.     The INA Deprives District Courts of Jurisdiction over Challenges to Denials of Deferred Action**

Not only is the denial of deferred action committed to agency discretion under the APA, but the INA itself deprives federal district courts of jurisdiction over challenges to such denials

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

17

altogether.  As the Supreme Court explained in *AADC*, the Executive's "exercise of [its] discretion" in granting deferred action in some circumstances had "opened the door to litigation . . . where" the Executive had "chose[n] *not* to exercise it."  *Id.* at 484.  Specifically, some courts had entertained challenges to "the refusal to exercise such discretion" on various bases such as "selective prosecution," the use of "arbitrary or unconstitutional criteria, or on other grounds constituting abuse of discretion."  *Id.* at 485 (citation omitted).  To address what the Supreme Court referred to as this "particular evil"—*i.e.*, "attempts to impose judicial constraints upon prosecutorial discretion"—Congress enacted 8 U.S.C. § 1252(g).  *Id.* at 485 & n.9.

Section 1252(g) commands that, outside of petitions for review from final removal orders and certain other limited channels for review, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security[3]] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."  These were "the acts … that had prompted challenges to the … exercise of prosecutorial discretion" in denying deferred action, and thus § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed"—namely, an individual removal proceeding.  *AADC*, 525 U.S. at 485 & n.9.

Denials of deferred action—including under DACA itself—thus fall outside the jurisdiction of the federal courts.  *See, e.g.*, *Vasquez v. Aviles*, 639 F. App'x 898, 901 (3d Cir. 2016) ("[Section] 1252(g) … deprives all courts of jurisdiction to review a denial of DACA relief because that decision involves the exercise of prosecutorial discretion not to grant a deferred action."); *Botezatu v. INS*, 195 F.3d 311, 314 (7th Cir. 1999) ("Review of refusal to grant deferred action is … excluded from the jurisdiction of the district court.").

---

[3] *See* 6 U.S.C. § 557; *see also id.* §§ 202, 251; *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) ("[U]nder 6 U.S.C. § 557, . . . the statutory reference to the 'Attorney General' in § 1252(g) now means 'Secretary of DHS.'").

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

18

To be sure, Plaintiffs brought this challenge to the Rescission Policy before any removal proceedings took place, but that is beside the point.  The decision not to continue deferred action is an ingredient to the commencement of enforcement proceedings at some future date, and a person cannot circumvent the bar in 8 U.S.C. § 1252(g) by singling out that single step for a preemptive challenge.   Indeed, if aliens (or entities suing on their behalf) could evade § 1252(g)'s bar simply by challenging the forthcoming expiration of deferred action before actual removal proceedings (if any) began, then jurisdiction would turn on a race to the courthouse.  Such a framework would create the perverse incentive for DHS to begin removal proceedings immediately rather than to allow, as it did here, for rolling expirations of deferred action status over a two-and-a-half year period.  There is no indication that Congress sought to enact such a nonsensical regime.  Instead, § 1252(g) precludes review of either "the decision *or action*" by the Acting Secretary "to commence proceedings," and thereby sweeps in the Rescission Policy (emphasis added).

Moreover, at least one court has applied § 1252(g) to actions that are "not … on the list of precluded items"—*i.e.*, "decisions to commence proceedings, adjudicate cases, or execute removal orders"—in order to effectuate the object of this jurisdictional bar.  *Botezatu*, 195 F.3d at 313–14.  In *Botezatu*, the Seventh Circuit rejected an alien's argument that a court could review the Executive's "refusal to … grant him humanitarian parole or deferred action" simply because that denial occurred in "post-deportation procedures."  *Id.* at 313–14.  As the Seventh Circuit explained, because *AADC* broadly held that "'no deferred action' decisions and similar discretionary determinations' [were] governed by § 1252(g)," that jurisdictional bar should apply regardless of *when* such determinations occurred.  *Id.* at 314 (quoting *AADC*, 525 U.S. at 485).  Thus, just as an alien (or entity suing on his behalf) cannot circumvent § 1252(g) by bringing a challenge to a denial of deferred action on the back-end, Plaintiffs' broad front-end assault on the Rescission Policy is beyond the jurisdiction of this Court.  At the very least, 8 U.S.C. § 1252(g) reinforces the conclusion that enforcement discretion under the INA is at the core of unreviewable matters committed to agency discretion by law under the APA.  5 U.S.C. § 701(a)(2).  *See Helgeson*, 153 F.3d at 1003 (review inappropriate for subject areas where

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

19

courts traditionally hesitant to intrude).[4]

### C. The University, State, Municipal, and Union Plaintiffs' Claims Are Not Cognizable

#### 1. The University, State, Municipal, and Union Plaintiffs Lack Article III Standing

At a minimum, the Court should dismiss the actions brought by the Regents of the University of California (including its president); the States of California, Maine, Maryland, and Minnesota; the City of San Jose; and the County of Santa Clara in conjunction with the Service Employees International Union Local 521 for lack of standing.  To establish Article III standing, these parties must at least show that they have suffered an "injury in fact" that is "fairly traceable" to Defendants' challenged conduct and that will likely be "redressed by a favorable decision."  *Lujan*, 504 U.S. at 560–61 (brackets and citations omitted).  They cannot do so.  The Rescission Policy does not regulate them, require them to do (or refrain from doing) anything, or restrict them in any way.  Instead, these Plaintiffs complain of injury "from the government's allegedly unlawful regulation (or lack of regulation) of someone else," making standing "substantially more difficult to establish."  *Id*. at 562 (emphasis added).  That burden becomes insurmountable when a plaintiff claims to be injured by the incidental effects of federal enforcement policies, as it is settled that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

These principles apply with particular force where, as here, the parties are relying primarily on the incidental effects of federal immigration policies.  *See, e.g.*, *Regents of Univ. of Cal.* Compl. ¶ 2 (alleging harm arising from effect of DACA rescission on "members of [the

---

[4] The Ninth Circuit's decision in *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), does not foreclose the application of § 1252(g) to this case.  That case did not involve a decision not to continue deferred action, an ingredient to the commencement of enforcement proceedings and a subject directly addressed by *AADC* itself.  *See id.* at 964-65.  *AADC* thus provides more relevant guidance.  Indeed, *Kawi Fun Wong* relied upon the fact that the challenge there did "not pose the threat of obstruction of the institution of removal proceedings or the execution of removal orders about which *AADC* was concerned."  *Id.* at 970.  The same cannot be said about Plaintiffs' challenge here.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

20

University of California] community" such as "students and employees"); *State of Cal.* Compl. ¶ 10 (alleging that DACA rescission will injure state-run colleges, upset workforces, disrupt statutory and regulatory interests, cause harm to state residents, damage economies, and hurt companies)[5]; *City of San Jose* Compl. ¶ 10 (alleging that San Jose has suffered injury and has third-party standing to bring lawsuit "on behalf of its employees" with whom it allegedly "has a close relationship"); *Cty. of Santa Clara* Compl. ¶¶ 15-16 (alleging injury to county due to large number of foreign-born residents and county employment of DACA recipients); *id.* ¶¶ 18-20 (allegations that local union has members who are DACA recipients). It would be extraordinary to find Article III standing based on these assertions, as virtually any administration of federal law by a federal agency could have such effects. The unavoidable reality that any enforcement of immigration laws will inevitably have some unintended or derivative effects does not provide carte blanche to challenge such enforcement decisions whenever there is a disagreement about federal immigration policy.[6]

### 2.    The University, State, Municipal, and Union Plaintiffs Lack a Cause of Action Under the APA

Even if the non-individual Plaintiffs could establish Article III standing, they would lack a cause of action under the APA. The APA does not "allow suit by every person suffering an injury in fact." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 395 (1987). Rather, it provides a cause of action only to a plaintiff "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. To be "aggrieved" in this sense, "the interest sought to be protected by the complainant [must] be arguably within the zone of interests to be protected or regulated by the statute … in question." *Clarke*, 479 U.S. at 396 (brackets and citation omitted). Here, no provision of the INA even arguably protects the non-individual

---

[5] It is unclear whether and, if so, the extent to which the State of California can rely upon any alleged injury to its "state-run colleges and universities," as the University of California system is a separate plaintiff in the separate *Regents of the University of California* lawsuit.

[6] Plaintiffs cannot overcome their failure to establish standing in their own right by invoking the asserted rights of their citizens or residents as parens patriae. "A State does not have standing as parens patriae to bring an action against the Federal Government," *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982) (citation omitted), as "it is no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government," *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923).

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

21

Plaintiffs from bearing any incidental effects of a denial of deferred action. *Cf. Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 899 (D.C. Cir. 1996) (dismissing under zone-of-interests a suit challenging parole of aliens into this country, where plaintiffs relied on incidental effects of that policy on workers).

### D.   The Government's Justiciability Objections Are Not Inconsistent with the Acting Secretary's Reliance on the Fifth Circuit's Decision

Although the Fifth Circuit in *Texas* included holdings that a challenge to the DAPA Memo was reviewable, 809 F.3d at 165–70, neither that decision nor Acting Secretary Duke's reliance on it forecloses the government from arguing here that the DACA Rescission Policy is unreviewable.   First, neither the Acting Secretary's memo nor the Attorney General's letter expressly relied upon or gave any indication that they agreed with the Fifth Circuit's justiciability rulings, and it was far from arbitrary and capricious for the Acting Secretary to weigh litigation risk based on judicial decisions without regard to whether those courts had been correct to assert jurisdiction in the first place.   Second, officers of the Executive Branch have an independent duty to consider the legality of their policies regardless of whether they are judicially reviewable; all swear an oath to uphold the United States Constitution.   *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1867) (Take Care Clause imposes a generally nonjusticiable duty on the Executive Branch).   Finally, even if courts could have reviewed the adoption of DACA as "an abdication of [DHS's] statutory responsibilities," *Chaney*, 470 U.S. at 833 n.4, that would not make the Rescission Policy, a classic exercise of agency enforcement discretion, open to challenge.   After all, the Fifth Circuit itself emphasized that "DAPA is much more than a nonenforcement policy, which presumptively would be committed to agency discretion," *Texas*, 809 F.3d at 178 n.156, and pointed out that a "*denial* of voluntary departure and work authorization" by DHS would have been nonjusticiable, *id.* at 168.   Denials of deferred action under a return to a more traditional enforcement policy should be treated no differently.[7]

---

[7] Similarly, the fact that the Fifth Circuit held that Texas had standing because it specifically demonstrated that "it would incur significant costs in issuing driver's licenses to DAPA beneficiaries," has no bearing on the States' standing in this case. *Texas*, 809 F.3d at 155. The States here have failed to point to analogous injury similarly traceable to the Rescission Policy.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

22

## II.   PLAINTIFFS FAIL TO STATE A CLAIM

Even if Plaintiffs' claims were justiciable, the Court should dismiss these cases in their entirety for failure to state a claim.

### A.   The Acting Secretary Rationally Explained Her Decision To Wind Down DACA, Particularly Given the Imminent Risk of A Nationwide Injunction

Plaintiffs contend that the Rescission Policy is arbitrary and capricious because it constitutes a change in agency policy without an adequate explanation.  *Regents of Univ. of Cal.* Compl. ¶¶ 50-58 (Count 1); *State of Cal.* Compl. ¶¶ 152-155 (Count 3); *Garcia* Compl. ¶¶ 175 (Count 4); *Cty. of Santa Clara* Compl. ¶ 71 (Count 2).  Plaintiffs' allegations misapprehend the nature of the inquiry under the APA.  It is black-letter law that agencies are free to change course on policy matters so long as they provide a rational explanation.  Here, the Acting Secretary's explanation of her decision to rescind DACA readily meets this deferential standard, particularly in view of the imminent risk of a nationwide injunction, which could have prompted an immediate—and chaotic—end to the policy.

**1.**  Under the APA, an agency's decision must be upheld unless arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A); *see also id.* § 706(2)(B).  The agency's decision is presumed valid under this standard, and the Court asks only whether it "was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Overton Park*, 401 U.S. at 416.  A decision may be held to be arbitrary and capricious only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency," or the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983).  The Court may not "substitute its judgment for that of the agency."  *Id.*  And when an agency changes policies, it "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one."  *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009). Rather, "it suffices that the new policy is permissible under the statute, that there are good

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

23

reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.*

In assessing whether a decision was arbitrary and capricious, "[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citation omitted).   If the agency's action "is not sustainable on the administrative record made," then the administrative "decision must be vacated and the matter remanded to [the agency] for further consideration."   *Camp v. Pitts*, 411 U.S. 138, 143 (1973). This Court should therefore decide whether the Acting Secretary's decision to wind down DACA was arbitrary and capricious on the administrative record she has produced.   This Court cannot consider additional materials concerning her deliberative process.   It is "not the function of the court to probe the mental processes" of the agency. *Morgan v. United States*, 304 U.S. 1, 18 (1938).   "Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected." *United States v. Morgan*, 313 U.S. 409, 422 (1941).   Deliberative materials are therefore not merely protected from disclosure—they do not form part of the administrative record at all.   *See San Luis Obispo Mothers for Peace v. U.S. N.R.C.*, 789 F.2d 26, 45 (D.C. Cir. 1986) (en banc).   Thus, while the government submits that the Acting Secretary's decision was plainly not arbitrary and capricious under the record already before this Court, if this Court were to disagree, it should do no more than simply grant Plaintiffs the relief they seek by setting aside the Rescission Policy and remanding to her.

**2.**   The Rescission Policy amply meets the "minimal standards of rationality" required by the APA.   *Troy Corp. v. Browner*, 120 F.3d 277, 283 (D.C. Cir. 1997).   Plaintiffs do not deny that "the new policy is permissible under the [INA]." *Fox*, 556 U.S. at 515.   And there are eminently "good reasons for it," *id.*, particularly in view of the litigation risk posed by the proceedings in *Texas*.   In the Rescission Policy, the Acting Secretary explained that, "[t]aking into consideration the Supreme Court's and Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated."   Rescission Policy at 4 (AR 255).   Specifically, after

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

24

summarizing the *Texas* litigation and the nationwide injunction against DAPA (and its expansion of DACA), she quoted the Attorney General's conclusion in his letter that because DACA "has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results." *Id.* at 3 (AR 254).  The Acting Secretary thus concluded that maintaining the DACA Policy would, in all likelihood, result in another nationwide injunction plunging the policy, and its nearly 800,000 recipients, into uncertainty.

The Acting Secretary was then "faced with two options:  wind the program down in an orderly fashion that protects beneficiaries in the near-term while working with Congress to pass legislation; or allow the judiciary to potentially shut the program down completely and immediately."  Press Release, DHS, Statement from Acting Secretary Duke on the Rescission of DACA (Sept. 5, 2017), https://go.usa.gov/xncuM.  She reasonably opted for an orderly rescission, which she considered "the least disruptive option." *Id.*

There is nothing at all irrational about this choice or that explanation. *Cf. Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 84 (2002) ("regulation reasonable" based on concerns about subjecting parties to "possible … liability").  Indeed, it is entirely sensible, given the turmoil that an abrupt, court-ordered shutdown would likely have provoked.  The Acting Secretary balanced the litigation risk of keeping DACA in place with "the administrative complexities associated with ending the program," and opted for a solution that would "wind it down in an efficient and orderly fashion" accounting for the interests of DACA recipients.  Rescission Policy at 3 (AR 254).  She explained her reasonable decision to rescind DACA, and the APA requires no more. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (APA satisfied where agency's explanation is clear enough that its "path may reasonably be discerned").[8]  And no matter whether her (or the Attorney General's) judgment about the likely result of the *Texas* litigation would have turned out to be correct, it was surely not an irrational or arbitrary and capricious conclusion in light of the fact that at least the Fifth Circuit and four

---

[8] For these same reasons, the *Garcia* Plaintiffs' inconsistent allegations that the government both improperly provided for a wind-down period and, at the same time, made that wind-down period unreasonably "short," fails to state a claim under the APA.  *See Garcia* Compl. ¶¶ 173-74.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

justices of the Supreme Court had already held that a materially indistinguishable policy was unlawful.

**3.**   Plaintiffs acknowledge that the State of Texas and nine other states sent a letter to the Attorney General "threaten[ing] to challenge DACA in court unless the federal government rescinded the DACA program by September 5, 2017." *Garcia* Compl. ¶ 115.   Plaintiffs nonetheless contend that the decision to rescind DACA was arbitrary and capricious because the Acting Secretary of Homeland Security considered the Attorney General's views regarding the legality of DACA, which views Plaintiffs contend "contradict conclusions previously reached by both the Department of Justice" through the Office of Legal Counsel "and the Department of Homeland Security" through its prior litigation position in the *Texas* litigation. *Id.* ¶ 120; *see also Regents of Univ. of Cal.* Compl. ¶¶ 7, 9-12, 40-41, 43; *State of Cal.* Compl. ¶¶ 105-108; *City of San Jose* Compl. ¶¶ 44; *Cty. of Santa Clara* Compl. ¶ 57.   Plaintiffs' argument suffers from three independent flaws.

First, the Acting Secretary did not rely on the Attorney General's September 4 letter solely for its assessment of DACA's legality.   Instead, as discussed above, she concluded that DACA "should" be wound down after considering, among other things, his litigation-risk determination that it was "likely" that a legal challenge to DACA "would yield similar results" as the DAPA litigation under Fifth Circuit precedent.   Rescission Policy at 3 (AR 254).   That independent conclusion, based on a reasonable predictive judgment about litigation risk, is a sufficient basis for upholding the Acting Secretary's decision to rescind DACA. *See Bowman*, 419 U.S. at 286.

Second, to the extent the Acting Secretary did rely on the proposition that DACA was unlawful, this Court need not agree with that determination to uphold her decision.   If an agency's constitutional analysis and policy judgment overlap, courts should presume an independent policy judgment to avoid constitutional questions, even if the two determinations are arguably "intertwined." *See Syracuse Peace Council v. FCC*, 867 F.2d 654, 657–59 (D.C. Cir. 1989) (if "even in the absence of constitutional problems the [agency] would have reached the same outcome," "we must end our inquiry without reaching that issue").   Here, the Attorney

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

26

General regarded DACA as unconstitutional in part because it was an "open-ended" policy that closely tracked "proposed legislation" that Congress had repeatedly rejected.  Rescission Policy at 3 (AR 254).  But those same concerns equally support a policy judgment by the Acting Secretary that "deferred action" should "be applied only on an individualized case-by-case basis" rather than used as a tool "to confer certain benefits to illegal aliens that Congress had not otherwise acted to provide by law."  *Id.* at 2 (AR 253).  This Court should sustain her decision based on a reasonable policy judgment that immigration decisions of this magnitude should be left to Congress.

Third, although this Court need not decide the issue to resolve this case in favor of the government on the basis that the agency decision was at least rational, the Attorney General's view that DACA was unlawful is strongly supported by the Fifth Circuit's decision in *Texas* that was affirmed by the Supreme Court.  The Fifth Circuit held not only that DAPA—including its proposed expansion of DACA—was likely unlawful, but also that DACA bore many "important similarities" to it.  *Texas*, 809 F.3d at 174 & n.139 (noting that "the DAPA Memo's plain language … equates the DACA and DAPA procedure[s]," making DACA an "apt comparator").  Indeed, given that DAPA was enjoined before its implementation, the Fifth Circuit's decision was "informed by analysis of the implementation of DACA" itself.  *Id*. at 172.  On that score, while, "[l]ike the DAPA Memo, the DACA Memo instructed agencies to review applications on a case-by-case basis," and thus "facially purport[ed] to confer discretion," *id*. at 171–72, the court found that discretion to be illusory in practice:  Because relatively few DACA requests were denied, the Fifth Circuit believed "there was evidence from DACA's implementation that [this] discretionary language was pretextual," *id*. at 172–73.  Based on these findings by the Fifth Circuit, it would follow that DACA, like DAPA, did not "genuinely leave the agency and its employees free to exercise discretion" on a case-by-case basis, *id*. at 176—which supports the Attorney General's view that DACA was unlawful.  And it seems likely that at least four Justices of the Supreme Court agree.

Regardless of whether the Office of Legal Counsel was correct when it previously "orally advised" that its "preliminary view" was that the proposed version of DACA would be lawful,

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

27

the reasoning in that opinion further confirms the invalidity of DACA as actually implemented in practice as found by the Fifth Circuit.[9]   The "preliminary" conclusion was conditioned on the proviso that "it was critical that … the DACA program require immigration officials to evaluate each application for deferred action on a case-by-case basis."  *Id.*   Yet the Fifth Circuit found that DHS officials did not "genuinely" retain such discretion in practice.  *Texas*, 809 F.3d at 176. Indeed, because deferred action continues to exist on an individualized basis, the only change made by the Acting Secretary is the elimination of the factors that, according to the Fifth Circuit, led to the policy being applied without sufficient case-by case discretion.  *See id.* at 172–73 (noting testimony that, for DACA, requests were "simply rubberstamped if the applicants meet the necessary criteria").  Further, the original DACA program largely shares the relevant defects of the proposed expansion of deferred action that OLC rejected, rather than the aspects of the new program that it approved.

    **4.**   The *University of California*, *Garcia*, and *County of Santa Clara* plaintiffs also allege that the rescission is arbitrary and capricious because DHS has failed to "tak[e] into account" the "serious reliance interests" of DACA recipients who submitted personal information to DHS. *Garcia* Compl. ¶ 171 (quoting *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015)); *see also Univ. of Cal.* Compl. ¶ 55 (similar); *Cty. of Santa Clara* Compl. ¶ 72 (similar).  The *Garcia* Complaint's citation to inapposite Supreme Court dicta—which concerned whether agencies could "skirt notice-and-comment provisions" that applied to "regulated entities"—has no bearing here:  DHS made clear that the DACA information-sharing policy on which Plaintiffs allegedly relied created no rights and "may be modified, superseded, or rescinded at any time without notice."  DHS DACA FAQ No. 19.  For these reasons, as described more fully in Part II.E, *infra*, any "reliance" by Plaintiffs on that policy was, at best, misplaced.  Moreover, as set forth in Part II.D, *supra*, the Rescission Memo is merely a statement of policy that—like the original DACA

---

[9]  U.S. Dep't of Justice, Office of Legal Counsel, *The Department of Homeland Security's Authority to Prioritize Removal of Certain Aliens Unlawfully Present*, 38 Op. O.L.C. 1, 18 n.8 (Nov. 19, 2014) (OLC Op.), https://www.justice.gov/file/179206/download.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

28

policy—does not create any enforceable rights and is subject to change at any time.[10]  And insofar as Plaintiffs suggest that the Acting Secretary failed to consider the reliance interests of DACA recipients more generally, that assertion ignores her calculus based the looming risk of a nationwide injunction ending the DACA program altogether.  Given her view that she faced an imminent, court-ordered end to DACA, the Acting Secretary opted for an orderly wind-down process that would protect the reliance interests of DACA recipients far more than an immediate injunction terminating the program would.  *See* Part II.A.2, *supra*.  Finally, to the extent that she rationally concluded DACA was illegal, there would be no legitimate reliance interests at all.

In all events, the foregoing analysis confirms that the Acting Secretary's decision was at a minimum reasonable and that Plaintiffs' APA challenge can be resolved at this stage based on the record now before the Court.  Indeed, whatever this Court decides, there is no basis for supplementing the record or discovery to assess the Acting Secretary's explanation.

### B.  The Rescission Policy Is Exempt from Notice and Comment

Plaintiffs miss the mark in arguing that the Rescission Policy must be set aside because it is a substantive rule issued without notice and comment.  *See Regents of Univ. of Cal.* Compl. ¶¶ 59-66 (Count 2); *State of Cal.* Compl. ¶¶ 146-151; *City of San Jose* Compl. ¶¶ 59-63 (Count 2); *Garcia* Compl. ¶¶ 177-184 (Count 5); *see also* 5 U.S.C. § 553(b)–(c).  If winding down the DACA policy is a "substantive rule," then *a fortiori* so was enacting the policy in the first place.  Critically, though, the DACA Memo itself also was not adopted through notice and comment.  So even on Plaintiffs' own theory, it would be void *ab initio*—leaving Plaintiffs without a remedy.  That is reason enough to dismiss this claim.  *See Lujan*, 504 U.S. at 561 (plaintiff must show "injury will be 'redressed by a favorable decision'" to establish standing).[11]

---

[10] The *Garcia* plaintiffs also allege that DACA's termination violated the APA because it was unconstitutional.  *See Garcia* Compl. ¶¶ 160-164 (Count 3).  Plaintiffs' allegations that the rescission of DACA was unconstitutional are addressed in Sections II.C-E, *infra*.

[11] To be sure, the D.C. Circuit has rejected the "argument that notice and comment requirements do not apply to 'defectively promulgated regulations'" as "untenable because it would permit an agency to circumvent the requirements of § 553 merely by confessing that the regulations were defective in some respect and asserting that modification or repeal without notice and comment was necessary to correct the situation."  *Consumer Energy Council of Am. v. FERC*, 673 F.2d 425, 447 n.79 (D.C. Cir. 1982).  That holding, however, concerned the rescission of a rule promulgated after notice and comment that was allegedly defective on other grounds, not a rule

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

In any event, Plaintiffs' claim is erroneous.  DHS and INS have adopted over 20 deferred action or similar policies over the past 50 years—rarely through notice and comment.  That is because such policies, like the Rescission Policy, are not substantive rules at all.  Rather, they are classic examples of "general statements of policy" that are exempt from the APA's notice-and-comment requirements.  5 U.S.C. § 553(b)(3)(A).

A "substantive rule establishes a standard of conduct which has the force of law."  *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974).  Thus, an "agency action that purports to impose legally binding obligations or prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations or requirements—is a legislative rule."  *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014).

A statement of policy, by contrast, "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979) (quoting Attorney General's Manual on the Administrative Procedure Act 30 n.3 (1947)).  It "explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule."  *McCarthy*, 758 F.3d at 252.  It serves to "appris[e] the regulated community of the agency's intentions" and "inform[] the exercise of discretion by agents and officers in the field."  *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 949 (D.C. Cir. 1987).  And "a general statement of policy, like a press release," often "announces the course which the agency intends to follow in future adjudications."  *Pac. Gas & Elec.*, 506 F.2d at 38.  Accordingly, policy statements "are binding on neither the public nor the agency," and the agency "retains the discretion and the authority to change its position … in any specific case."  *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) (citations omitted).

---

that was defective precisely because it had failed to go through notice and comment in the first place.  *See id.* at 445–46.  When an agency has already "circumvent[ed] the requirements of § 553," *id.* at 447 n.79, there is no reason why it must go those procedures to cure the underlying defect.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

30

As these principles make clear, the Rescission Policy is a quintessential policy statement—a point that its text reinforces again and again. It was issued as an "exercise of [the Secretary's] authority in establishing national immigration policies and priorities." Rescission Policy at 4 (AR 255). It explains how the agency intends to exercise its enforcement authority on a prospective basis, a matter that is "generally committed to an agency's absolute discretion." *Chaney*, 470 U.S. at 831. It does not immediately deprive any DACA recipients of their current deferred action status, but describes how pending and future deferred action requests will be "adjudicate[d]—on an individual, case-by-case basis." Rescission Policy at 4 (AR 255). It does not categorically forbid the agency from continuing to defer enforcement action against DACA recipients in the future, but instead acknowledges the background principle, recognized by Congress and the courts, that deferred action is "an act of prosecutorial discretion" that may be exercised "on an individualized case-by-case basis," *id.* at 2 (AR 253), and that places "no limitations" on the agency's exercise of such "otherwise lawful enforcement … prerogatives," *id.* at 5 (AR 256). And it explains that it "does not … create any right or benefit, substantive or procedural, enforceable at law by any party." *Id.* Thus, in the wake of the Rescission Policy, deferred action "remains discretionary and reversible," *Arpaio*, 797 F.3d at 17—as with the 20-odd deferred action or similar policies that DHS and INS have adopted over the past half-century, generally without going through the full notice-and-comment process.[12]

That is as it should be. An agency's enforcement priorities will inevitably shift over time, whether due to changing circumstances or resource constraints. *See Chaney*, 470 U.S. at 831. Indeed, the DACA policy was originally adopted in part to set enforcement priorities in view of the agency's limited resources. *See Arpaio*, 797 F.3d at 16; DACA Memo at 1 (AR 1); DAPA Memo at 1 (AR 37). Under Plaintiffs' theory, however, even if Congress were to vastly

---

[12] The Fifth Circuit's ruling that the adoption of the DAPA Memo required notice and comment does not imply that the rescission of DACA does as well. Unlike the DAPA or DACA Memos, the Rescission Policy announced a return to an enforcement policy of using deferred action on an individualized basis, which cannot be cast as a substantive rule. Indeed, the Fifth Circuit itself stressed that "DAPA is much more than a nonenforcement policy," and that "a traditional nonenforcement policy would not necessarily be subject to notice and comment." *Texas*, 809 F.3d at 178 n.156. In any event, if this Court agrees with the Fifth Circuit, then DACA was void *ab initio* and Plaintiffs lack a remedy.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

increase appropriations for immigration enforcement, the agency's hands would be tied: it would not be free to adjust its enforcement priorities without engaging in "cumbersome and time-consuming rulemaking proceedings." *Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy*, 851 F.2d 1424, 1430 (D.C. Cir. 1988). The Court should not endorse such an intrusion into matters that have "long been regarded as the special province of the Executive Branch." *Chaney*, 470 U.S. at 832.

### C.   Plaintiffs Fail to State an Equal Protection Claim

**1.**   If this Court disagrees with Defendants and concludes that it can review Plaintiffs' equal protection challenges under *AADC*, *but see supra* § I.A, B, it nonetheless should dismiss them for failure to state a claim. In *Armstrong*, the Supreme Court considered whether criminal defendants could obtain discovery to support a "selective prosecution" claim arising under the Equal Protection Clause. 517 U.S. at 463–64. The Court recognized that such claims, like the discriminatory-motive claims here, "ask[] a court to exercise judicial power over a 'special province' of the Executive"—specifically, the "constitutional responsibility to 'take Care that the Laws be faithfully executed'"—and thereby risk "impair[ing] the performance of a core executive constitutional function." *Id*. at 464-65 (citations omitted). Given these considerations, a "presumption of regularity supports" such enforcement decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*. at 464 (citation omitted). Applying this "rigorous standard," *id.* at 468, the Court refused to allow discovery in support of the selective-prosecution claim before it, even though the claimants had provided evidence that in each of the 24 prosecutions for certain drug-trafficking offenses that were closed by the federal defender's office in a single year, the defendant was African-American, *id.* at 459, 469-70.

Although Plaintiffs here allege that the Rescission Policy was motivated by discriminatory animus rather than assert that they have been selectively prosecuted, *Armstrong* still requires them to allege, and ultimately prove, that this is a "clear" case of discrimination in order to overcome the presumption that Defendants have faithfully enforced the laws. *Id.* at 464. As in *Armstrong*, Plaintiffs here ask this Court to "exercise judicial power over a 'special

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

32

province' of the Executive," with the associated risk of "impair[ing] the performance of a core executive constitutional function."  *Id.* at 464–65 (citations omitted).  Plaintiffs consequently must overcome "a significant barrier to the litigation" of their claims.  *Id.* at 464.  And that is especially true given that they allege an unlawful enforcement of the *immigration* laws.  Even if *AADC* permitted the adjudication of Plaintiffs' claims, that decision would at least require them to satisfy a rigorous standard similar to the one in *Armstrong*.  As *AADC* explained, the concerns justifying a heightened burden under *Armstrong* "are greatly magnified in the deportation context," 525 U.S. at 490, and all of those considerations are present here, *see supra* p. 17.  Accordingly, Plaintiffs must at least meet a heavy burden to survive a motion to dismiss on a claim that Defendants harbored a hidden discriminatory motive in their enforcement of the immigration laws.

Plaintiffs cannot carry that burden here.  Their allegations consist of the assertion that 80 percent of DACA recipients were Mexican nationals, *see Cty. of Santa Clara* Compl. ¶ 75, and that approximately 93 percent of DACA recipients are individuals from Latin American countries, *see id.*; *see also Garcia* Compl. ¶ 151, as well as selected references to statements by the President and others relating to immigrants, Mexicans, or Latinos, *see City of San Jose* Compl. ¶¶ 30-36; *Garcia* Compl. ¶¶ 99-113; *Cty. of Santa Clara* Compl. ¶ 9.   These allegations are insufficient to overcome the "significant barrier" to moving forward on a claim of this sort.  *Armstrong*, 517 U.S. at 464.

The fact that approximately 80 percent of approved DACA recipients are Mexican nationals is an unsurprising accident of geography, not evidence of discrimination, let alone the kind sufficient to establish discriminatory motive in the enforcement of immigration laws.  Even in the ordinary domestic equal protection setting, a disparate impact of a facially neutral rule such as the Rescission Policy, standing alone, cannot establish discriminatory intent.  *See Washington v. Davis*, 426 U.S. 229, 242 (1976), *superseded by statute, see Veasey v. Perry*, 29 F. Supp. 3d 896, 916 (S.D. Tex. 2014).   Much less can it do so when the exercise of enforcement discretion is involved:  In *Armstrong*, the fact that 100 percent of the relevant defendants were African-American was not enough to justify discovery.  517 U.S. at 459.  *A*

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

33

*fortiori*, the fact that approximately 80 percent of DACA recipients are Mexican nationals provides no basis for ordering discovery into the discretionary administration of the immigration laws, especially given the heightened deference owed to the political branches on immigration matters, where sensitive considerations of relations and proximity to particular foreign nations necessarily plays a role.

Nor do the President's statements—most of which were made before he took the oath of office—indicate that the rescission of DACA is a clear case of discrimination. To start, none of these stray remarks concern the Rescission Policy itself. To the contrary, Plaintiffs themselves emphasize that when the President has spoken on this issue, he has shown support for DACA recipients.[13] More importantly, Plaintiffs point to nothing that would suggest Acting Secretary Duke—the decisionmaker ultimately responsible for the Rescission Policy— chose to wind-down DACA due to animus towards Mexican nationals. Given that the statements at issue have no connection to either the relevant decision (the rescission of DACA) or the relevant decision-maker (the Acting Secretary), adopting Plaintiffs' theory would mean that any time DHS enforces the immigration laws in a way that has a statistically significant disparate impact on Mexican nationals, the agency would be subject to intrusive discovery on allegations of a violation of Fifth Amendment equal protection principles. That would set a dangerous precedent, and it would freeze the enforcement discretion of the entire Executive Branch. That ossification would be particularly inappropriate in this context, given that immigration enforcement policies must constantly be adjusted to account for "[t]he dynamic nature of relations with other countries." *Arizona*, 567 U.S. at 397. In all events, Plaintiffs'

---

[13] *See City of San Jose* Compl ¶ 37 (alleging the President "has repeatedly stated his support for DACA recipients" including through statement that "[w]e're going to work something out that's going to make people happy and proud. They got brought here at a very young age, they've worked here, they've gone to school here. Some were good students. Some have wonderful jobs."); *id.* ¶ 38 (President's statement that his plan to address DACA is "going to have a lot of heart"); *id.* ¶ 39 (Presidential statement that DACA grantees "shouldn't be very worried" because "[w]e're going to take care of everybody."); *id.* ¶ 40 (describing DACA recipients as "some absolutely incredible kids – I would say mostly."); *id.* ¶ 42 (Presidential statement that "I do not favor punishing children, most of whom are now adults, for the actions of their parents. But we must also recognize that we are [a] nation of opportunity because we are a nation of laws.").

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

34

inferences from unrelated remarks cannot qualify as the sort of "clear" allegations of discrimination necessary in this context.  *Armstrong*, 517 U.S. at 464.

**2.**  The State Plaintiffs advance a separate equal protection theory alleging that "[t]he rescission of DACA violates fundamental conceptions of justice by depriving DACA grantees, as a class, of their substantial interests in pursuing a livelihood to support themselves and further their education."  *State of Cal.* Compl. ¶ 174.  This claim fails for the simple reason that Plaintiffs have failed to identify any "fundamental rights" implicated by the Rescission Policy. *See Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003) (under equal protection doctrine, strict scrutiny applies if "the statute in question substantially burdens fundamental rights, such as the right to vote").  Even for U.S. citizens, "the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause."  *Marilley v. Bonham*, 844 F.3d 841, 854-55 (9th Cir. 2016) (citation omitted), *cert. denied*, No. 16-1391, 2017 WL 2256242 (Oct. 10, 2017). Nor, for that matter, is the right to further an education.  *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973).  If the contrary were true, then all sorts of regulations addressing employment and education, including various licensing laws, would suddenly be subject to strict scrutiny.  *A fortiori*, unlawfully present aliens, who do not even have a fundamental right to remain in the United States, *see infra* Part D, cannot invoke a right to pursue a calling or further an education.  Indeed, an alternate rule would call into question longstanding immigration laws.  *See, e.g.*, *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002) (discussing "[Immigration Reform and Control Act of 1986], a comprehensive scheme prohibiting the employment of illegal aliens in the United States" (citations omitted)). Accordingly, the Rescission Policy can be subject only to rational-basis review, *see* Green, 340 F.3d at 896, and easily survives that standard for the reasons given above, *see* Part II.A, *supra*. Plaintiffs' claim therefore fails as a matter of law.

### D.    Plaintiffs Fail to State a Procedural Due Process Claim

The *University of California*, *Garcia*, and *County of Santa Clara* Plaintiffs allege that the rescission violates procedural due process norms to the extent that DACA recipients will be deprived of their interests in their DACA status without notice and an opportunity to be heard.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

35

*See Regents of Univ. of Cal.* Compl. ¶¶ 67-73 (Count 3); *Garcia* Compl. ¶¶ 133-147 (Count 1); *Cty. of Santa Clara* Compl. ¶¶ 59-66 (Count 1).  This claim fails on the merits for the simple reason that DACA recipients have no protected liberty or property interest in deferred action entitling them to due process protections.

The Fifth Amendment provides that "no person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Thus, the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citation omitted).  The "Due Process Clause does not protect everything that might be described as a 'benefit.'"  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  Rather, "'[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'"  *Id*. (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Such entitlements "are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source"—*e.g.*, statutes or regulations—"that secure certain benefits and that support claims of entitlement to those benefits."  *Roth*, 408 U.S. at 577.

A benefit "is not a protected entitlement" for due process purposes where, as here, "government officials may grant or deny it in their discretion."  *Castle Rock*, 545 U.S. at 756. For due process purposes, statutes or regulations limit discretion only when they contain "explicitly mandatory language"—*i.e.*, "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow."  *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 462–63 (1989) (citation omitted).  The DACA policy contains no such "explicitly mandatory language."  *Id*.  The policy is codified in no statute or regulation.  Its source—the DACA Memo—describes it as a "policy" for the "exercise of prosecutorial discretion."  DACA Memo at 2-3 (AR 2-3); *see Omar v. McHugh*, 646 F.3d 13, 22 n.7 (D.C. Cir. 2011) (the "use of the word 'policy'"—"rather than a word such as 'right'— reinforces the conclusion that Congress did not intend to create an 'entitlement'").  And the

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

36

agency's public guidance makes clear that, under DACA, deferred action "may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion."  DHS DACA FAQ No. 27.

Under DACA, "deferred action remains discretionary and reversible, and 'confers no substantive right, immigration status or pathway to citizenship.'"  *Arpaio*, 797 F.3d at 17 (quoting DACA Memo at 3 (AR 3)).  "Only the Congress, acting through its legislative authority, can confer these rights."  DACA Memo at 3 (AR 3).  Simply put, there is "no protectable liberty interest in deferred action."  *Romiero de Silva v. Smith*, 773 F.2d 1021, 1024 (9th Cir. 1985).  Thus, deferred action is not a protected entitlement for due process purposes, and Plaintiffs' claim fails as a matter of law.  *See Velasco-Gutierrez v. Crossland*, 732 F.2d 792, 798 (10th Cir. 1984) (deferred action guidance "places no effective limitations on official discretion, and thus creates no protected liberty interest in deferred action").

Moreover, even if DACA could be conceived of as an entitlement, Plaintiffs' due process claim would still fail because changes in agency policy do not require individualized process.  Due process doctrine recognizes a "distinction between individualized deprivations, [which] are protected by procedural due process, and policy-based deprivations of the interests of a class, [which] are not protected by procedural due process."  2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.2 (5th ed. 2010).  The rescission of DACA falls squarely in the latter category.[14]

Plaintiffs allege that DACA could not be rescinded without first giving recipients "process before depriving them of their work authorizations and DACA status, and the benefits that flow from that status."  *Regents of Univ. of Cal.* Compl. ¶ 16; *see also Cty. of Santa Clara* Compl. ¶¶ 7, 63 (alleging violation of due process rights).  But Plaintiffs' theory is not that individual DACA requests were adjudicated incorrectly (for example, due to factual error)—the sort of mistake that notice and a hearing could conceivably help correct.  Instead, Plaintiff's

---

[14] The *University of California* and *Santa Clara* Plaintiffs also appear to allege that the due process rights of the university and county have somehow been violated.  *See Univ. of Cal.* Compl. ¶ 69; *Cty. of Santa Clara* Compl. ¶¶ 60, 62.  The legal basis for this claim is unclear at best, and in any event to the extent this Court finds that individual DACA recipients lack due process rights, *a fortiori* universities, counties, and other entities would also lack any such rights.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

37

claim appears to be that DHS cannot alter the DACA policy, even on a prospective basis, without providing individualized notice and hearings to nearly 800,000 recipients.

Such individualized process is not required.  The Supreme Court held long ago that where a government policy "applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption," and thus due process does not require individualized pre-deprivation notice.  *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).  This case presents "the classic *Bi-Metallic* scenario"—the challenged policy applies across-the-board to a large number of people, so "[n]ot only would individualized hearings be impractical, they would be unnecessary."  *Decatur Liquors, Inc. v. Dist. of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007) (citing *Bi-Metallic*, 239 U.S. at 445).

The Ninth Circuit's decision in *Yassini v. Crosland*, 618 F.2d 1356 (9th Cir. 1980), is instructive in this regard.  There, the INS had issued a policy directive granting "deferred voluntary departure"—a form of deferred action—to Iranian nationals who were unwilling to return home due to political instability.  *Id*. at 1359.  Then, in response to the Iranian hostage crisis, the INS issued another policy directive "rescinding the … deferred departure" and requiring its recipients to depart the country within 30 days.  *Id*.  Relying on *Bi-Metallic*, the Ninth Circuit rejected the plaintiff's claim "that he should have had a prior opportunity to contest [the INS's] decision to rescind deferred departure."  *Id*. at 1363.  "Where an agency action is not based on individual grounds, but is a matter of general policy," the court explained, "no hearing is constitutionally required."  *Id*. (citing, *inter alia*, *Bi-Metallic*, 239 U.S. 441).  So too here.

### E.     Plaintiffs Fail to State a Substantive Due Process Claim.

Taking a different tack, the *State of California*, *Garcia*, and *County of Santa Clara* Plaintiffs assert that the Rescission Policy violates substantive due process because DHS has allegedly changed its policy on the use of information contained in DACA requests, including that DHS will allegedly use such information for enforcement purposes in a manner that is not "fundamentally fair."  *State of Cal.* Compl. ¶¶ 141-145 (Count 1); *Garcia* Compl. ¶¶ 133-147 (Count 1); *Cty. of Santa Clara* Compl. ¶¶ 59-66 (Count 1).  None of these claims has merit.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

As a threshold matter, no Plaintiff alleges facts sufficient to show that there actually has been a substantive change in policy regarding information sharing.  For example, the State Plaintiffs merely allege that the "Rescission Memorandum does not provide adequate assurances that this information will not be used for enforcement purposes following DACA's termination." *State of Cal.* Compl. ¶ 120; *see also Garcia* Compl. ¶ 126 (similar allegations); *Cty. of Santa Clara* Compl. ¶ 58 (alleging that there "appears" to be a change of policy).  And while they cite language in the Rescission FAQs indicting that information "[g]enerally . . . will not be proactively provided to other law enforcement entities," *State of Cal.* Compl. ¶ 122 (emphasis omitted) (quoting Rescission FAQs), that language is entirely consistent with DHS's policy regarding the protection of DACA information, including its many exceptions that Plaintiffs largely gloss over.  *See State of Cal.* Compl. ¶ 121 (characterizing exceptions to policy as "limited").

Contrary to Plaintiffs' suggestion that DHS has flatly and completely prohibited the use of DACA information for enforcement purposes, *see Garcia* Compl. ¶ 126, the agency's information-sharing policy in fact contains (and has always contained) a number of exceptions.  For example, under that policy, information submitted in DACA requests "is protected from disclosure to ICE and CBP for the purpose of immigration enforcement proceedings *unless* the requestor meets the criteria for the issuance of a Notice to Appear or a referral to ICE under the criteria set forth in USCIS'[s] Notice to Appear guidance" (for example, when issues of national security, public safety, or significant criminal activity are raised).  DHS DACA FAQ No. 19 (emphasis added); *see* Notice to Appear Guidance.  While this policy "may be modified, superseded, or rescinded at any time" and creates no legal rights, DHS DACA FAQ No. 19, nothing in the Rescission Policy purports to change it, and it currently remains in effect.  *Cf. Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1020-21 (9th Cir. 2011) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government . . . .  '[A] constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and *expressly*

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

39

discretionary state privilege has been granted generously in the past.'" (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)) (citations omitted)).

In any event, Plaintiffs fail to state a substantive due process claim.  Substantive due process protects those rights that rank as "fundamental"—that is, both "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citation omitted).  The Supreme Court has also made clear that a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising such a claim.  *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003).  "[V]ague generalities," like Plaintiffs' wish that DHS would adopt their preferred policies, "will not suffice." *Id.* at 776.

While in rare cases a "denial of fundamental fairness" may rise to the level of a substantive due process violation, to survive dismissal in a "challenge to executive action" such as this one, Plaintiffs must allege behavior that is "so egregious" and "outrageous" as "to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 850 (1998). "It is not enough to allege conscience shocking action, however.  As a threshold matter, to establish a substantive due process claim a plaintiff must how a government deprivation of life, liberty, or property." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (quotation omitted).

Plaintiffs here cannot meet that standard because the Ninth Circuit—in a context nearly identical to the circumstances presented by Plaintiffs here—squarely rejected the argument that the denial of discretionary relief in the immigration context can give rise to a substantive due process claim.  In *Munoz v. Ashcroft*, a Guatemalan citizen who was unlawfully brought to the United States when he was one year old, and who continuously lived in the United States until he was 24 years old, was found to be removable by the Board of Immigration Appeals.  399 F.3d 950, 953-54 (9th Cir. 2003).  On review of the Board's decision, the Ninth Circuit rejected petitioner's argument that he had acquired a substantive due process right to stay in the United States due to his unique circumstances, holding that the "denial of [discretionary] relief cannot violate a substantive interest protected by the Due Process clause." *Id.* at 954; *see also Hyuk Joon Lim v. Holder*, 710 F.3d 1074, 1076 (9th Cir. 2013) ("Cancellation of removal is a form of

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

40

discretionary relief which does not give rise to a 'substantive interest protected by the Due Process Clause.'") (quoting *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003)); *Tefel v. Reno*, 180 F.3d 1286, 1300-01 (11th Cir. 1999) ("[n]o constitutionally protected interest arises from the INS' actions in granting or denying applications for suspension," that "prior generosity in awarding wholly and expressly discretionary relief does not prove the existence of a constitutional entitlement," and that "awarding and then revoking discretionary relief does not offend due process" (quotation marks omitted)).  The harm alleged by Plaintiffs here—that the alleged use of information for immigration enforcement purposes—therefore cannot give rise to a substantive due process claim because DACA recipients simply "ha[ve] no substantive due process right[s] to stay in the United States."  *Munoz*, 339 F.3d at 954.  And even if they did, there is certainly nothing conscience-shocking about DHS's information-sharing policy, which has always been subject to a number of exceptions and in fact remains unchanged.

### F.     Plaintiffs' Regulatory Flexibility Act Claim Fails Because Notice-and-Comment Procedures Were Not Required

Plaintiffs' Regulatory Flexibility Act (RFA) claim fails for the same reasons as its notice-and-comment claim, and it can be quickly dispatched.  *See State of Cal.* Compl. ¶¶ 156-163 (Count 4); *Garcia* Compl. ¶¶ 185-191 (Count 6).  The RFA's requirement that an agency publish analyses of a rule's impact on small businesses applies only "'when an agency promulgates a final rule under section 553 of … title [5], after being required by that section or any other law to publish a general notice of proposed rulemaking,'" *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 42 (D.C. Cir. 2005) (quoting 5 U.S.C. § 604(a))—in other words, only where notice-and-comment procedures are required.  Because those procedures were not required here, *see supra* § II.B, the RFA does not apply.

Plaintiffs also lack standing to raise an RFA claim:  They allege no facts to demonstrate that they are "small entities" entitled to seek judicial review under the RFA.  *See* 5 U.S.C. § 601(6) (defining "small entity"); *id*. § 611 (restricting judicial review to "a small entity that is adversely affected or aggrieved"); *see also*, *e.g.*, *N.W. Mining Ass'n v. Babbitt*, 5 F. Supp. 2d 9, 13 (D.D.C. 1998) ("[T]he language of the RFA extends standing to seek judicial review only to a

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

41

'small entity.'").  Plaintiff states are not, of course, small entities subject to the RFA, and they offer only conclusory allegations about the impact of DACA's rescission on undefined small entities within their respective states.  *See State of Cal.* Compl. ¶ 4, 28, 49, 88, 156-163.  And the *Garcia* plaintiffs—who are individual DACA recipients—do not offer any substantive RFA allegations at all.

### G.     Plaintiffs' Equitable Estoppel Claims Fail.

The *States*, *Garcia*, and *County of Santa Clara* Plaintiffs have brought equitable estoppel claims, alleging that DACA recipients provided detailed personal information to the government and "rearranged their lives" based on the government's representations, but now face removal due to the rescission of DACA.  On that basis, those Plaintiffs claim that the government should be equitably estopped from terminating DACA or from using DACA information for enforcement purposes.  *See State of Cal.* Compl. ¶¶ 164-171 (Count 5); *Garcia* Compl. ¶¶ 192-199 (Count 7); *Cty. of Santa Clara* Compl. ¶¶ 79-86 (Count 4).

Plaintiffs' equitable estoppel claims cannot succeed for several reasons.  As a threshold matter, Plaintiffs cannot succeed because there is no recognized cause of action for estoppel.  The Supreme Court has explained that "private rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Congress has created no such cause of action for estoppel.  This is further confirmed by the Federal Rules of Civil Procedure, which expressly recognize estoppel as an affirmative defense—not a cause of action. *See* Fed. R. Civ. P. 8(c).

Even then, the remedy of equitable estoppel does not apply in this context.  Even assuming arguendo that this remedy could ever be applied to the federal government, *but see OPM v. Richmond*, 496 U.S. 414, 419, 423 (1990), equitable estoppel does not apply to the policy decisions of the federal government.  *See, e.g.*, *United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995) ("[T]he government should not be unduly hindered from changing its position if that shift is the result of a change in public policy."), *cited in New Hampshire v. Maine*, 532 U.S. 742, 755 (2001); *Emery Min. Corp. v. Sec'y of Labor*, 744 F.2d 1411, 1416 (10th Cir. 1984) (the doctrine of estoppel cannot be justified against the government where it would "interfere with

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

42

underlying government policies or unduly undermine the correct enforcement of a particular law or regulation"). Indeed, it is axiomatic that the government may alter its policies for any number of reasons, in accordance with any applicable procedures. *See generally Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1210 (2015). Here, the Acting Secretary of Homeland Security issued a memorandum rescinding DACA, which is a matter committed to agency discretion by law.

Finally, even if a cause of action for estoppel were available to challenge the policy here (it is not), Plaintiffs could not satisfy the elements of that claim. Even in situations where an estoppel claim against the government may be appropriate (*e.g.,* individualized challenges to non-policy actions), courts "invoke the doctrine of estoppel against the government with great reluctance." *United States v. Browning,* 630 F.2d 694, 702 (10th Cir. 1980); *see also Heckler v. Cmty. Health Servs.,* 467 U.S. 51, 60 (1984) (government may not be estopped on same terms as any other litigant). In other words, estoppel can only be invoked against the government "where justice and fair play require it." *Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989) (en banc) (quotation omitted). In the rare circumstances in which equitable estoppel may apply against the government, a party must show "affirmative misconduct going beyond mere negligence" and, "even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Id.* at 707 (quotation omitted). Plaintiffs cannot meet this standard.

First, Plaintiffs have failed to plausibly allege that the government engaged in any "affirmative misconduct going beyond mere negligence." *Id.* To meet that standard, Plaintiffs must plead "an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Id.* The cases that Plaintiffs have previously cited to this Court, *see* Letter from State of Cal. re Equitable Estoppel, ECF No. 51, make clear that Plaintiffs cannot overcome this high bar. In the *Watkins* case, the Army affirmatively misrepresented a soldier's qualifications throughout fourteen years of official records. *Watkins*, 875 F.2d at 707. Similarly, in *Salgado-Diaz v. Gonzales*, the INS was precluded from relying upon a misrepresentation made by an alien petitioner that occurred only after, and as a downstream effect of, the INS's own

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

43

misconduct in denying the alien's due process rights.  395 F.3d 1158, 1166 (9th Cir. 2005).[15]
Here, Plaintiffs have not identified any governmental misconduct, let alone extraordinary
misconduct.  Instead, they have merely pleaded that there was a change in policy.

Second, estoppel for individual claims is only available where the government's act will
cause a "serious injustice" and applying estoppel will not cause the public's interest to "suffer
undue damage."  *Watkins*, 875 F.2d at 707 (quotation omitted).  Plaintiffs have failed to
sufficiently plead facts that would support these necessary threshold elements.  To the contrary,
as reflected in Plaintiffs' exhibits, DHS made clear in its FAQs that "DACA is an exercise of
prosecutorial discretion and deferred action may be terminated at any time, with or without a
Notice of Intent to Terminate, at DHS's discretion."  DHS DACA FAQ No. 27, attached as Ex. E
to *State of Cal.* Compl.  Moreover, nothing in the 2012 DACA Memorandum, the form used to
request DACA (USCIS Form I-821D, attached as Ex. N to *State of Cal.* Compl.), or in the
DACA FAQs generally could be construed to represent to DACA recipients that the DACA
policy was permanent and not subject to change.  There is therefore no "serious injustice" that
Plaintiffs can point to relating to the rescission of this discretionary policy.[16]

At bottom, Plaintiffs' estoppel claims merely repackage their policy challenges.
Equitable estoppel, however, is unavailable for such broad-based challenges.  And even if the
Court were to review Plaintiffs' claims on an individualized basis, those claims still fail.  While
Plaintiffs surely disagree with the rescission of DACA, that disagreement does not mean that
Plaintiffs have alleged that there is a "serious injustice," much less a circumstance in which
estoppel should apply.  For these reasons, Plaintiffs' equitable estoppel claims should be
dismissed.

---

[15]  As both of these cases previously cited by Plaintiffs make clear, to the extent equitable
estoppel is available at all, it is only available for individualized claims.  Plaintiffs' authority is
inapplicable to the policy challenges that Plaintiffs present here.

[16]  Even if this Court were to conclude that Plaintiffs can somehow meet these threshold
requirements, it would still need to apply traditional estoppel elements to Plaintiffs' claims on an
individualized bases:  "(1) The party to be estopped must know the facts; (2) he must intend that
he conduct shall be acted on or must so act that the party asserting the estoppel has a right to
believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on
the former's conduct to his injury."  *Watkins*, 875 F.2d at 709 (quotation omitted).  Plaintiffs
have failed to plausibly allege facts in support of these elements as well.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

### III.   NATIONWIDE DECLARATORY AND INJUNCTIVE RELIEF IS IMPERMISSIBLE

The *Garcia* Plaintiffs seek in a separate cause of action a declaratory judgment that DACA is "lawful."  *See Garcia* Compl. ¶¶ 200-205 (Count 8).  Declaratory relief, however, "is a remedy, not an independent cause of action."  *Dinh Nguy v. Cty. of Yolo*, No. 2:14-cv-229-MCE-EFB PS, 2014 WL 4446829, at *8 (E.D. Cal. Sept. 9, 2014); *see Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009) (dismissing declaratory relief claim as "duplicative and unnecessary" because relief "is entirely commensurate with the relief sought through their other causes of action").  Moreover, to establish standing and seek relief under the Declaratory Judgment Act, a plaintiff must demonstrate that there is an "actual controversy" necessitating declaratory relief.  28 U.S.C. § 2201(a); *see Garcia* Compl. ¶ 202; *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239-40 (1937).  The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests."  *Aetna*, 300 U.S. at 240.

Here, even assuming DACA were "lawful," any declaratory relief that this Court might provide would merely be an academic dispute because the Acting Secretary still would have had the discretion to rescind the policy.  *See supra* Part II.A.  Instead, the "controversy" (to the extent it is even justiciable) concerns whether the Acting Secretary of Homeland Security's decision to rescind DACA in light of litigation risk that DHS was facing was arbitrary or capricious.  Any after-the-fact conclusion by this Court that DACA is "lawful" has no bearing on that decision, which was based on the litigation risk that DHS was then confronting.  Thus, any declaratory judgment that this Court might issue would not provide any actual benefits to Plaintiffs.

Plaintiffs also seek injunctive relief.  To the extent this Court ultimately concludes that Plaintiffs are entitled to any injunction, it should dismiss the request for nationwide relief.  Both constitutional and equitable principles require that injunctive relief be limited to redressing a plaintiff's own cognizable injuries.  Article III demands that "a plaintiff must demonstrate standing … for each form of relief that is sought."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).  "The remedy" sought thus must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established."  *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996).  "The actual-injury requirement would hardly serve [its] purpose … of

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

45

preventing courts from undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in that administration." *Id.*   And equitable principles independently require that an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 163 (2010) (narrowing injunction in part because the plaintiffs "do not represent a class, so they could not seek to enjoin such an order on the ground that it might cause harm to other parties").   Accordingly, any injunction here should be limited to particular individual Plaintiffs found to have cognizable claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss these cases.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

46

Dated:  November 1, 2017                Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIAN STRETCH
United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG (DC Bar #467513)
Senior Trial Counsel
STEPHEN M. PEZZI (DC Bar #995500)
KATE BAILEY (MD Bar #1601270001)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Phone: (202) 514-3374
Fax: (202) 616-8460
Email: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS; MEM. IN SUPPORT
All N.D. Cal. DACA Cases (Nos. 17-5211; 17-5235; 17-5329; 17-5380; 17-5813)

47