FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: UNITED STATES OF AMERICA; DONALD J. TRUMP; U.S. DEPARTMENT OF HOMELAND SECURITY; ELAINE C. DUKE, _____ UNITED STATES OF AMERICA; DONALD J. TRUMP; U.S. DEPARTMENT OF HOMELAND SECURITY; ELAINE C. DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, Petitioners, v. UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO, Respondent, REGENTS OF THE UNIVERSITY OF CALIFORNIA; JANET NAPOLITANO, In her official capacity as President of the University of California; STATE OF CALIFORNIA; STATE OF MAINE; STATE OF MINNESOTA; STATE OF MARYLAND; CITY OF SAN JOSE; DULCE GARCIA; MIRIAM GONZALEZ AVILA; VIRIDIANA CHABOLLA | No. 17-72917 D.C. Nos. 3:17-cv-05211-WHA 3:17-cv-05235-WHA 3:17-cv-05329-WHA 3:17-cv-05380-WHA 3:17-cv-05813-WHA Northern District of California, San Francisco ORDER |

| | |
|---|---|
| MENDOZA; NORMA RAMIREZ; COUNTY OF SANTA CLARA; SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 521; JIRAYUT LATTHIVONGSKORN; SAUL JIMENEZ SUAREZ,<br><br>    Real Parties in Interest. | |

Petition for Writ of Mandamus

Argued and Submitted November 7, 2017
Pasadena, California

Before: WARDLAW, GOULD, and WATFORD, Circuit Judges.

WARDLAW and GOULD, Circuit Judges:

On September 5, 2017, the Acting Secretary of the Department of Homeland Security ("DHS"), Elaine Duke, announced the end of DHS's Deferred Action for Childhood Arrivals policy ("DACA"), effective March 5, 2018. Begun in 2012, DACA provided deferred action for certain individuals without lawful immigration status who had entered the United States as children. Several sets of plaintiffs sued to enjoin the rescission of DACA under the Administrative Procedure Act ("APA") and under various constitutional theories not relevant here.

The merits of those claims are not before us today. The only issue is a procedural one, raised by the government's petition for a writ of mandamus. The

2

government asks us to permanently stay the district court's order of October 17, 2017, which required it to complete the administrative record.[1]  *See* Order re Motion to Complete Administrative Record, *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324 (October 17, 2017) ("Order").  We have jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651.  Because the district court did not clearly err by ordering the completion of the administrative record, we hold that the government has not met the high bar required for mandamus relief.

One note at the outset:  We are not unmindful of the separation-of-powers concerns raised by the government.  However, the narrow question presented here simply does not implicate those concerns.  We consider only whether DHS failed to comply with its obligation under the APA to provide a complete administrative record to the court—or, more precisely, whether the district court clearly erred in so holding.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the full administrative record that was before the Secretary at the time he made his decision.").  This obligation is

---

[1] Issues regarding supplementation—as opposed to completion—of the record and the propriety of discovery on the non-APA claims, including the propriety of depositions, are not properly before us at this time, and we do not address them here.

imposed to ensure that agency action does not become effectively unreviewable, for "[i]f the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Assuring that DHS complies with this requirement—imposed by the APA on all agencies and embodied in decades of precedent—is undoubtedly a proper judicial function.

    1.    "The writ of mandamus is a drastic and extraordinary remedy reserved only for really extraordinary cases." *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947) (internal quotation marks omitted)). Indeed, "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted). Ultimately, the issuance of the writ is "in large measure . . . a matter of the court's discretion." *Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1023 (9th Cir. 2014) (quoting *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978)).

Our discretion is guided by the five factors laid out in *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977). However, we need not consider four

of those five factors here, because "the absence of factor three—clear error as a matter of law—will always defeat a petition for mandamus." *In re Bundy*, 840 F.3d 1034, 1041 (9th Cir. 2016) (quoting *In re United States*, 791 F.3d 945, 955 (9th Cir. 2015)). This factor—whether "[t]he district court's order is clearly erroneous as a matter of law," *Bauman*, 557 F.2d at 654–55—"is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *In re Bundy*, 840 F.3d at 1041 (quoting *In re United States*, 791 F.3d at 955).

  2. The district court's order is not clearly erroneous as a matter of law. APA § 706 provides that arbitrary and capricious review shall be based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The whole record "includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon*, 984 F.2d at 1548; *see also, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) ("The administrative record includes all materials compiled by the agency that were before the agency at the time the decision was made.") (internal quotation marks and citations omitted). More specifically, we have explained that the whole administrative record "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position."

5

*Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks omitted); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (same). The record is thus not necessarily limited to "those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson*, 885 F.2d at 555 (internal quotation marks omitted).

At the initial case management conference before the district court, the government agreed to produce the complete administrative record on October 6, 2017. On that date, the government submitted as "the" administrative record fourteen documents comprising a mere 256 pages, all of which are publicly available on the internet. Indeed, all of the documents in the government's proffered record had previously been included in filings in the district court in this case, and 192 of its 256 pages consist of the Supreme Court, Fifth Circuit, and district court opinions in the *Texas v. United States* litigation.[2]

Faced with this sparse record, and on the plaintiffs' motion (opposed by the government), the district court ordered the government to complete the record to include, among other things, all DACA-related materials considered by

---

[2] That lawsuit challenged a related but distinct deferred action policy, Deferred Action for Parents of Americans and Lawful Permanent Residents, or DAPA. *See United States v. Texas*, 136 S. Ct. 2271 (2016); *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015); *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015).

subordinates or other government personnel who then provided written or verbal input directly to Acting Secretary Duke. The district court excluded from the record documents that it determined *in camera* are protected by privilege. Order at *8.

3. The administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary. *Bar MK Ranches*, 994 F.2d at 740; *see also Thompson*, 885 F.2d at 555 (noting that the administrative record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record."). The district court correctly stated this legal framework and concluded that the presumption of completeness had been rebutted here. Order at *5. This conclusion was not clear legal error: Put bluntly, the notion that the head of a United States agency would decide to terminate a program giving legal protections to roughly 800,000 people[3]

---

[3] *See* U.S. Citizenship and Immigration Services, *Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by Fiscal Year, Quarter, Intake, Biometrics and Case Status Fiscal Year 2012–2017 (June 30)* (Sept. 20, 2017), goo.gl/UcGJww.

based solely on 256 pages of publicly available documents is not credible, as the district court concluded.[4]

The district court identified several specific categories of materials that were likely considered by the Acting Secretary or those advising her, but which were not included in the government's proffered record. For example, the record contains no materials from the Department of Justice or the White House—other than a one-page letter from Attorney General Jefferson B. Sessions—despite evidence that both bodies were involved in the decision to end DACA, including the President's own press release taking credit for the decision.[5] Nor does the proffered record include any documents from Acting Secretary Duke's subordinates; we agree with the district court that "it strains credulity" to suggest that the Acting Secretary decided to terminate DACA "without consulting one advisor or subordinate within DHS." Order at *4. And the proffered record contains no materials addressing the change of position between February 2017—when then-Secretary John Kelly affirmatively decided *not* to end DACA—and Acting Secretary Duke's September

---

[4] The dissent agrees that "a policy shift of that magnitude presumably would not have been made without extensive study and analysis beforehand." Dissent at 1.

[5] *See* Press Release, White House Office of the Press Secretary, President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration (Sept. 5, 2017), https://www.whitehouse.gov/the-press-office/2017/09/05/president-donald-j-trump-restores-responsibility-and-rule-law.

8

2017 decision to do the exact opposite, despite the principle that reasoned agency decision-making "ordinarily demand[s] that [the agency] display awareness that it *is* changing position" and "show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

At oral argument, the government took the position that because the Acting Secretary's stated justification for her decision was litigation risk, materials unrelated to litigation risk need not be included in the administrative record. Simply put, this is not what the law dictates. The administrative record consists of all materials "*considered by* agency decision-makers," *Thompson*, 885 F.2d at 555 (emphasis added), not just those which support or form the basis for the agency's ultimate decision. *See also, e.g.*, *Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) ("[A] complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision.") (quoting *Bethlehem Steel v. EPA*, 638 F.2d 994, 1000 (7th Cir. 1980)). And even if the record were properly limited to materials relating to litigation risk, the district court did not clearly err in concluding that it is implausible that the Acting Secretary would make a litigation-risk decision "without having generated any materials analyzing

9

the lawsuit or other factors militating in favor of and against the switch in policy." Order at *4.

It was therefore not clear error for the district court to conclude that the presumption of regularity that attaches to the government's proffered record is rebutted, and that ordering completion of the record was necessary and appropriate.

4. Nor did the district court clearly err in identifying the materials that should have been included within the scope of the complete administrative record. The government challenges the decision to include materials considered by subordinates who then briefed the Acting Secretary, but this decision was not clear legal error. We have held that the record properly includes "all documents and materials directly or *indirectly* considered by agency decision-makers," *Thompson*, 885 F.2d at 555, but have not yet clarified the exact scope of "indirectly considered." District courts in this and other circuits, however, have interpreted that phrase to include materials relied on by subordinates who directly advised the ultimate decision-maker. *See, e.g.*, *Nat. Res. Def. Council v. Gutierrez*, No. C 01-0421 JL, 2008 WL 11358008, at *6 (N.D. Cal. Jan. 14, 2008) ("To the extent [the government argues] that only those documents that reached [the agency's] most senior administrators were in fact 'considered,' courts have rejected that view as contrary to the Ninth and other Circuits' pronouncements . . . .");

10

*GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 212 F. Supp. 3d 1348, 1352 (N.D. Ga. 2016) ("Documents and materials indirectly considered by agency decision-makers are those that may not have literally passed before the eyes of the decision-makers, but were so heavily relied on in the recommendation that the decisionmaker constructively considered them."); *Amfac Resorts*, 143 F. Supp. 2d at 12 ("[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well.").[6]

Moreover, as noted in the district court's October 17 order, a Department of Justice guidance document directs agencies compiling the administrative record to "[i]nclude all documents and materials prepared, reviewed, or received by agency personnel and used by or available to the decision-maker, *even though the final decision-maker did not actually review or know about the documents and materials.*" U.S. Dep't of Justice, Env't and Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record 3 (Jan. 1999) (emphasis added). It further provides that the administrative record should include "communications

---

[6] We also note that the government has conceded in other cases that documents relied on by subordinates are properly part of the administrative record. *See Oceana, Inc. v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at *4 (N.D. Cal. June 21, 2017) ("Defendants acknowledge . . . that a decision-maker can be deemed to have 'constructively considered' materials that, for example, were relied on by subordinates . . . .").

11

the agency received from other agencies . . . documents and materials that support *or* oppose the challenged agency decision . . . minutes of meetings or transcripts thereof . . . [and] memorializations of telephone conversations and meetings, such as a memorandum or handwritten notes." *Id.* at 3–4. The district court's October 17 order complies with this Department of Justice guidance; the government's proffered record does not.

We recognize that such guidance is not binding; we nevertheless find it persuasive as a statement by the Department of Justice as to what should be included in a complete administrative record. We also note that the guidance document DHS failed to comply with here was inexplicably rescinded the very same day that the government filed this petition for a writ of mandamus.

Given that the district court's interpretation of *Thompson* is consistent with the rulings of other district courts, comports with the Department of Justice's guidance on administrative records, and is not foreclosed by Ninth Circuit authority, we cannot say that the district court's interpretation was clearly erroneous as a matter of law. *See In re Swift Transp. Co.*, 830 F.3d 913, 916–17 (9th Cir. 2016) ("It is well established that '[t]he absence of controlling precedent

12

weighs strongly against a finding of clear error [for mandamus purposes].'")

(quoting *In re Van Dusen*, 654 F.3d at 845).[7]

    5.      The district court's order that the government complete the record with documents considered by former DHS Secretary John Kelly in the course of deciding not to terminate DACA in February 2017 also withstands mandamus scrutiny. This is not because of some freestanding requirement that all the materials underlying a previous decision on a similar subject are always part of the administrative record; rather, it simply recognizes that both decisions were part of an ongoing decision-making process regarding deferred action: In February 2017, Secretary Kelly ended other prioritization programs, but left DACA and DAPA in place; in June 2017, Secretary Kelly ended DAPA but left DACA intact; finally, in September 2017, Acting Secretary Duke ended DACA. The materials considered by Secretary Kelly in the course of deciding against ending DACA in February

---

[7] There is tension within our decisions about whether controlling Ninth Circuit precedent is a *necessary* precondition to finding clear error as a matter of law. *Compare In re Swift Transp. Co.*, 830 F.3d at 917 ("If 'no prior Ninth Circuit authority prohibited the course taken by the district court, its ruling is not clearly erroneous.'") (quoting *In re Morgan*, 506 F.3d 705, 713 (9th Cir. 2007)), *with Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010) ("[T]he necessary clear error factor does not *require* that the issue be one as to which there is established precedent.") (emphasis added). At a minimum, however, the lack of such authority "weighs strongly" against finding clear error. *In re Swift Transp. Co.*, 830 F.3d at 916.

2017 did not cease to be "before the agency" for purposes of the administrative record during that seven-month evolution in policy. *Thompson*, 885 F.2d at 555–56. The district court's decision to order their inclusion in the record was therefore not clear legal error.

6. Finally, the government makes two categorical arguments with respect to privilege.[8] First, it contends that *Cheney v. U.S. District Court*, 542 U.S. 367 (2004), bars the completion of the administrative record with any White House materials, because requiring White House officials to search for and assert privilege as to individual documents would be an unwarranted intrusion into executive decision-making. *Cheney*, of course, did not involve an administrative agency's obligation under the APA to provide the court with the record underlying its decision-making. It instead involved civil discovery requests that the Supreme Court described variously as "overbroad" and as "ask[ing] for everything under the sky." *Id.* at 383, 387. We do not read *Cheney* as imposing a categorical bar against requiring DHS to either include White House documents in a properly-

---

[8] The government also appears to challenge the district court's individual privilege determinations, but it has provided little in the way of argument regarding the specific documents ordered disclosed by the district court. We are unable to conclude that the government has met its burden of showing that the district court's privilege analysis was clearly erroneous as a matter of law.

defined administrative record or assert privilege individually as to those documents.

Moreover, the reasoning of *Cheney* appears to be based substantially on the fact that the Vice President himself was the subject of discovery. *See id.* at 381 ("Here, however, the Vice President and his comembers on the NEPDG are the subjects of the discovery orders."), 382 ("These separation-of-powers considerations should inform a court of appeals' evaluation of a mandamus petition involving the President or the Vice President."). Here, although the government is of course correct that the President is named as a defendant in some of the underlying lawsuits, there is no indication that either his documents or those of the Vice President would fall within the completed administrative record as ordered by the district court. *Cheney* therefore does not render the district court's order clearly erroneous.

Second, the government argues that it was clear legal error to require a privilege log and to evaluate documents allegedly protected by the deliberative process privilege on an individual basis, since "deliberative" materials are not properly within the administrative record at all. As noted above, the district court reviewed *in camera* each of the documents as to which the government asserted the deliberative process privilege, and ordered the inclusion of only those documents

15

that met the balancing standard laid out in *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The court stated that it would similarly review *in camera* any additional documents as to which the government claims privilege in the future. Order at *8.

As the government acknowledges, we have not previously addressed whether assertedly deliberative documents must be logged and examined or whether the government may exclude them from the administrative record altogether. However, many district courts within this circuit have required a privilege log and *in camera* analysis of assertedly deliberative materials in APA cases. *See, e.g.*, *Ctr. for Food Safety v. Vilsack*, No. 15-cv-01590, 2017 WL 1709318, at *5 (N.D. Cal. May 3, 2017)*; Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574 VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017); *California* ex rel. *Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. March 16, 2008). Again, "the absence of controlling precedent" and the practice of the district courts "weigh[] strongly against a finding of clear error" for purposes of mandamus. *In re Swift Transp. Co.*, 830 F.3d at 916–17 (citation omitted).

We further note that the "deliberative" materials at issue in the main case cited by the government, *San Luis Obispo Mothers for Peace v. U.S. Nuclear*

16

*Regulatory Comm'n*, 789 F.2d 26 (D.C. Cir. 1986) (en banc), were transcripts of literal deliberations among the members of a multi-member agency board. *See id.* at 44. Where—as in *Mothers for Peace*—an agency is headed by a multi-member board, the deliberations among those members are analogous to the internal mental processes of the sole head of an agency, and thus are generally not within the scope of the administrative record. *Cf. Portland Audubon*, 984 F.2d at 1549 (distinguishing *Mothers for Peace* as involving "the internal deliberative processes of *the agency* [and] the mental processes of *individual agency members*") (emphases added). No such deliberations among a multi-member agency are at issue here. The district court's decision to require a privilege log and evaluate claims of privilege on an individual basis before including documents in the record was not clearly erroneous as a matter of law.

\* \* \*

The district court's October 17, 2017 order represents a reasonable approach to managing the conduct and exigencies of this important litigation—exigencies which were dictated by the government's March 5, 2018 termination date for DACA. In order for the government to prevail in its request for the extraordinary remedy of mandamus, we must be "left with a definite and firm conviction that a mistake has been committed." *In re Bundy*, 840 F.3d at 1041 (quoting *In re United*

17

*States*, 791 F.3d at 955). We are left with no such conviction here, and mandamus relief is therefore not appropriate.

Accordingly, the stay of proceedings entered on October 24, 2017 is lifted.

**PETITION DENIED.**