CHAD A. READLER
Principal Deputy Assistant Attorney General
BRIAN STRETCH
United States Attorney
BRETT A. SHUMATE
Deputy Assistant Attorney General
JENNIFER D. RICKETTS
Branch Director
JOHN R. TYLER
Assistant Branch Director
BRAD P. ROSENBERG (DC Bar #467513)
Senior Trial Counsel
STEPHEN M. PEZZI (DC Bar #995500)
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC  20530
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and KIRSTJEN M. NIELSEN,[1] in her official capacity as the Secretary of Homeland Security,<br><br>Defendants. | No. 3:17-cv-05211-WHA<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL N.D. CAL. DACA CASES**<br><br>Judge:  Honorable William Alsup<br>Hearing:  December 20, 2017, 8:00 a.m.<br>Place:  San Francisco U.S. Courthouse, Courtroom 8, 19th Floor |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kirstjen M. Nielsen, in her official capacity as the Secretary of Homeland Security, has been substituted as a defendant in all of these matters (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813) for Elaine C. Duke.

STATE OF CALIFORNIA, STATE OF
MAINE, STATE OF MARYLAND, and
STATE OF MINNESOTA,

          Plaintiffs,

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, KIRSTJEN M. NIELSEN, in her
official capacity as Secretary of Homeland
Security, and the UNITED STATES OF
AMERICA,

          Defendants.

No. 3:17-cv-05235-WHA

---

CITY OF SAN JOSE, a municipal
corporation,

          Plaintiff,

      v.

DONALD J. TRUMP, President of the United
States, in his official capacity, KIRSTJEN M.
NIELSEN, in her official capacity as
Secretary of Homeland Security, and the
UNITED STATES OF AMERICA,

          Defendants.

No. 3:17-cv-05329-WHA

---

DULCE GARCIA, MIRIAM GONZALEZ
AVILA, SAUL JIMENEZ SUAREZ,
VIRIDIANA CHABOLLA MENDOZA,
NORMA RAMIREZ, and JIRAYUT
LATTHIVONGSKORN,

          Plaintiffs,

      v.

UNITED STATES OF AMERICA,
DONALD J. TRUMP, in his official capacity

No. 3:17-cv-05380-WHA

---

1    as President of the United States, U.S.
     DEPARTMENT OF HOMELAND
2    SECURITY, and KIRSTJEN M. NIELSEN,
     in her official capacity as Secretary of
3    Homeland Security,

4                        Defendants.

5

6

7    COUNTY OF SANTA CLARA and
     SERVICE EMPLOYEES INTERNATIONAL
8    UNION LOCAL 521,

9                        Plaintiffs,

10                                                          No. 3:17-cv-05813-WHA
          v.
11
     DONALD J. TRUMP, President of the United
12   States, in his official capacity; JEFFERSON
     BEAUREGARD SESSIONS, Attorney
13   General of the United States, in his official
     capacity; KIRSTJEN M. NIELSEN, Secretary
14   of Homeland Security, in her official capacity;
     and the U.S. DEPARTMENT OF
15   HOMELAND SECURITY,

16                       Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

   I.   THESE CASES ARE NOT JUSTICIABLE ................................................ 1

       A.   The Rescission Policy Is Unreviewable Under the APA ...................... 1

       B.   The INA Deprives District Courts of Jurisdiction over Challenges
            to Denials of Deferred Action ............................................................. 5

       C.   The Entity Plaintiffs Lack Standing ..................................................... 6

       D.   The Entity Plaintiffs Lack Standing to Assert APA and RFA
            Claims .................................................................................................. 7

   II.   PLAINTIFFS FAIL TO STATE A CLAIM ............................................... 8

       A.   Plaintiffs' APA Claims Fail ................................................................. 8

       B.   Plaintiffs Fail to State an Equal Protection Claim ............................... 9

       C.   Plaintiffs Fail to State a Procedural Due Process Claim ..................... 12

       D.   Plaintiffs Fail to State a Substantive Due Process Claim ................... 13

       E.   Plaintiffs' Equitable Estoppel Claims Fail ......................................... 18

   III.   NATIONWIDE DECLARATORY AND INJUNCTIVE RELIEF IS
        IMPERMISSIBLE ..................................................................................... 20

CONCLUSION ................................................................................................. 20

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

i

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                    **PAGE(S)**

3

*Air Courtier Conference v. Am. Postal Workers Union*,

4
   498 U.S. 517 (1991) ........................................................................................... 7

5

*Alaska v. Organized Vill. of Kake*,

6
   136 S. Ct. 1509 (2016) ...................................................................................... 2

7

*Am. Med. Ass'n v. Reno*,

8
   57 F.3d 1129 (D.C. Cir. 1995) .......................................................................... 5

9

*Arce v. Douglas*,
   793 F.3d 968 (9th Cir. 2015) ........................................................................... 10

10

*Arpaio v. Obama*,

11
   797 F.3d 11 (D.C. Cir. 2015) ...................................................................... 13, 17

12

*Ave. 6E Investments, LLC v. City of Yuma*,

13
   818 F.3d 493 (9th Cir. 2016), *cert denied*, 137 S. Ct. 295 (2016) ...................... 10, 11

14

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,

15
   239 U.S. 441 (1915) ......................................................................................... 12

16

*Botezatu v. INS*,
   195 F.3d 311 (7th Cir. 1999) ............................................................................ 6

17

*Catholic Soc. Servs., Inc. v. INS*,

18
   232 F.3d 1139 (9th Cir. 2000) .......................................................................... 6

19

*Crowley Caribbean Transp., Inc. v. Pena*,

20
   37 F.3d 671 (D.C. Cir. 1994) ........................................................................... 3

21

*Ctr. for Law & Educ. v. Dep't of Educ.*,

22
   396 F.3d 1152 (D.C. Cir. 2005) ....................................................................... 7

23

*Cty. of Sacramento v. Lewis*,

24
   523 U.S. 833 (1988) ......................................................................................... 14

25

*Cunney v. Bd. of Trs. of Grand View*,
   660 F.3d 612 (2d Cir. 2011) ............................................................................ 15

26

*Emery Mining Corp. v. Sec'y of Labor*,

27
   744 F.2d 1411 (10th Cir. 1984) ....................................................................... 18

28

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir. 2017), *vacated on other grounds*,
    2017 WL 4782860 (U.S. Oct. 24, 2017)...........................................................................7

*Heckler v. Chaney*,
    470 U.S. 821 (1985)..................................................................................................*passim*

*Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs* (*BLE*),
    482 U.S. 270 (1987).......................................................................................................2, 3

*Johnson v. Newburgh Enlarged Sch. Dist.*,
    239 F.3d 246 (2d Cir. 2001)..............................................................................................15

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)............................................................................................................5

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973)............................................................................................................7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................................7

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990)............................................................................................................7

*Lyng v. Payne*,
    476 U.S. 926 (1986)..........................................................................................................19

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987) .......................................................................................4, 8

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)..........................................................................................................20

*Marilley v. Bonham*,
    844 F.3d 841 (9th Cir. 2016) ...........................................................................................16

*Marsh v. Cty. of San Diego*,
    680 F.3d 1148 (9th Cir. 2012) ....................................................................................14, 15

*Municipality of Anchorage v. United States*,
    980 F.2d 1320 (9th Cir. 1992) ...........................................................................................9

*Munoz v. Ashcroft*,
    339 F.3d 950 (9th Cir. 2003) .....................................................................................15, 18

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

iii

*Nw. Mining Ass'n v. Babbit*,
   5 F. Supp. 2d 9 (D.D.C. 1998) ........................................................................... 8

*Natale v. Town of Ridgefield*,
   170 F.3d 258 (2d Cir. 1999) ............................................................................. 15

*Noel v. Chapman*,
   508 F.2d 1023 (2d Cir. 1975) ............................................................................. 4

*Organized Vill. Of Kake v. U.S. Dep't of Agric.*,
   795 F.3d 956 (9th Cir. 2015) .............................................................................. 2

*Pac. Shores Properties, LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) .......................................................................... 10

*Perales v. Casillas*,
   903 F.2d 1043 (5th Cir. 1990), *reh'g denied*, 912 F.2d 1465 (5th Cir. 1990) ........................... 3

*Ramirez Medina v. U.S. Dep't of Homeland Sec.*,
   No. 17-0218, 2017 WL 5176720 (W.D. Wash. Nov. 8, 2017) .................................................. 6

*Reno v. Am.-Arab Anti-Discrimination Comm.(AADC)*,
   525 U.S. 471 (1999) ................................................................................. 4, 5, 10

*Robbins v. Reagan*,
   780 F.2d 37 (D.C. Cir. 1985) ............................................................................. 2

*Romeiro de Silva v. Smith*,
   773 F.2d 1021 (9th Cir. 1985) ......................................................................... 8, 13

*Rusu v. INS*,
   296 F.3d 316 (4th Cir. 2002) ......................................................................... 16-17

*Salgado-Diaz v. Gonzales*,
   395 F.3d 1158 (9th Cir. 2005) .......................................................................... 19

*Shaar v. INS*,
   141 F.3d 953 (9th Cir. 1998) ........................................................................... 16

*Silva v. U.S. Bancorp*,
   No. 5:10-CV-01854-JHN, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ........................................ 12

*Smith v. Town of Clarkton*,
   682 F.2d 1055 (4th Cir. 1982) .......................................................................... 11

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ........................................................................ 17

*Stevens v. GCS Serv.*,
    281 F. App'x 670 (9th Cir. 2008) ................................................................... 19

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ............................................................. 1, 2, 6, 9

*Texas v. United States*,
    787 F.3d 733 (5th Cir. 2015) ............................................................................ 5

*Town of Castle Rock v. Gonzales*,
    545 U.S. 748 (2005) ................................................................................. 12, 13

*U.S. Telecom Ass'n v. FCC*,
    400 F.3d 29 (D.C. Cir. 2005) ........................................................................... 9

*United States v. Armstrong*,
    517 U.S. 456 (1996) ................................................................................. 10, 11

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975) ........................................................................................ 16

*United States v. Merkt*,
    794 F.2d 950 (5th Cir. 1986) ......................................................................... 16

*United States v. Owens*,
    54 F.3d 271 (6th Cir. 1995) ..................................................................... 18, 19

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................................. 10, 11

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ......................................................................... 6

*Watkins v. U.S. Army*,
    875 F.2d 699 (9th Cir. 1989) ............................................................. 18, 19, 20

**STATUTES**

5 U.S.C. § 601 ........................................................................................................... 8

5 U.S.C. § 604 ........................................................................................................... 9

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

5 U.S.C. § 611 .................................................................................................................. 8

5 U.S.C. § 701 ........................................................................................................... 1, 4, 5

5 U.S.C. § 706 .................................................................................................................. 4, 5

8 U.S.C. § 1103 .................................................................................................................. 11

8 U.S.C. § 1252(g) ..................................................................................................... 1, 5, 6

## REGULATIONS

8 C.F.R. § 212.5 ................................................................................................................ 16

8 C.F.R. § 223.2 ................................................................................................................ 16

8 C.F.R. § 274a.12 ............................................................................................................ 16

## OTHER AUTHORITIES

DHS, USCIS, *Frequently Asked Questions: Rejected DACA Requests* (Dec. 7, 2017),
    https://www.uscis.gov/daca2017/mail-faqs ................................................. 17, 18, 20

DHS, *Frequently Asked Questions: Rescission of DACA* (Sept. 5, 2017),
    https://www.dhs.gov/news/2017/09/05/frequently-questions-rescission-deferred-action-
    childhood-arrivals-daca.......................................................................................... 17, 18

The White House, *Remarks by the President on Immigration*,
    obamawhitehouse.archives.gov (June 15, 2012 2:09 PM),
    https://go.usa.gov/xnZFY ................................................................................................ 14

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

vi

**INTRODUCTION**

The Rescission Policy challenged here provides for an orderly wind-down of Deferred Action for Childhood Arrivals (DACA), an exercise of prosecutorial discretion that, from the start, conferred no rights and was revocable at any time.  The Executive's discretionary enforcement decisions, especially in the immigration context, are presumptively unreviewable and, in this case, the Immigration and Nationality Act (INA) specifically precludes judicial review.  5 U.S.C. § 701; 8 U.S.C. § 1252(g).  Plaintiffs' claims in these five related lawsuits are not justiciable.

Dismissal is also warranted for failure to state a claim.  Then-Acting Secretary of Homeland Security Elaine C. Duke rationally explained her decision to wind down DACA, particularly given the imminent risk of a nationwide injunction abruptly ending deferred action for roughly 800,000 individuals, and that decision was not subject to the notice-and-comment rulemaking requirement of the Administrative Procedure Act (APA).   Plaintiffs' equal protection and due process claims also fail because Plaintiffs have failed to plead a clear case of discriminatory animus or that there is something "fundamentally unfair" about the rescission of DACA.  Finally, equitable estoppel is not available for policy challenges like these.  Accordingly, the Court should dismiss these five related cases.

**ARGUMENT**

I.   **THESE CASES ARE NOT JUSTICIABLE**

   A.   **The Rescission Policy Is Unreviewable Under the APA**

Then-Acting Secretary Duke's decision to rescind DACA was an exercise of enforcement authority that is committed to agency discretion and, thus, unreviewable under the APA.  Defs.' Mot. to Dismiss (Defs.' Motion or Mot.) 14-17, ECF No. 114; 5 U.S.C. § 701; *Heckler v. Chaney*, 470 U.S. 821 (1985).   Plaintiffs' contrary claim is premised on a misunderstanding of the basis for and nature of the Policy itself.  Pls.' Opp. to Defs.' Mot. (Pls.' Opp.) 5-9, ECF No. 205.

Plaintiffs' claim that the "purported justification" for the Rescission Policy "was a legal one" that can be assessed by this Court, *id.* at 5, misunderstands the reasons underlying the Policy.  The Rescission Policy itself makes clear that the former Acting Secretary relied on considerations other than DACA's legality in the abstract, such as the history of the *Texas v. United States*

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

1

litigation, 809 F.3d 134 (5th Cir. 2015), her reasonable predictive judgment about the significant risk of an immediate injunction enjoining DACA, and the complexities of ending such a large-scale policy.[2]  *See* Rescission Policy 2-4 (AR 253-55), ECF No. 64-1.  The balancing of those considerations is not amenable to review in light of the sources cited by Plaintiffs (such as statutory text, the history of the use of deferred action, and an Office of Legal Counsel opinion), nor does the Rescission Policy itself provide "law to apply."[3]  Pls.' Opp. 5.

Next, Supreme Court precedent blocks Plaintiffs' attempt to make an end-run around the discretionary nature of the rescission decision.  *Interstate Commerce Commission v. Brotherhood of Locomotive Engineers* (*BLE*) rejected the proposition that if an "agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable."  482 U.S. 270, 283 (1987).  Plaintiffs argue that *BLE* applies only when a decision is "categorically unreviewable," Pls.' Opp. 6, but the Rescission Policy is precisely that.  In attempting to show otherwise, Plaintiffs ask the Court to evaluate the basis for the Policy in the first instance.  *Id.*  But *BLE* rejected the same argument.  *See BLE*, 482 U.S. at 283.  Indeed, as the Court reasoned:  Prosecutors commonly decline to prosecute alleged criminal violations based on substantive legal reasons, but it is "entirely clear" that the refusal to prosecute is committed to agency discretion and not subject to judicial review, even though courts are "well qualified to consider," for example, whether a conviction was likely or the evidence was sufficient.  *Id.*  "[I]t is the [agency's] formal action, rather than its discussion, that is dispositive."  *Id.* at 281.

Plaintiffs also argue that, because the Rescission Policy is a broad enforcement policy, it

---

[2] The Policy's detailed discussion of these issues, *see* Rescission Policy at 2-4 (AR 253-55), also refutes Plaintiffs' claim that it did not involve a "complicated balancing of a number of factors." Pls.' Opp. 7.

[3] Plaintiffs' reliance on *Robbins v. Reagan*, 780 F.2d 37 (D.C. Cir. 1985)—a case challenging the government's decision to close a federal building it had agreed to lease out and renovate for use as a homeless shelter—is strained.  *Id.* at 39-40.  A failed public-private venture "shares virtually none of the characteristics that led the Court in *Chaney* to apply a presumption of nonreviewability."  *Id.* at 46.  *Organized Village of Kake v. United States Department of Agriculture* likewise did not concern an agency's exercise of enforcement discretion, did not address justiciability, and turned on the agency's failure to reasonably explain contradictory factual findings (not litigation risk).  795 F.3d 956, 959 (9th Cir. 2015), *cert denied sub nom. Alaska v. Organized Vill. of Kake*, 136 S. Ct. 1509 (2016).

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

is not presumptively immune from review under *Chaney*.  Pls.' Opp. 7-8.  But *Chaney* itself involved a broad enforcement policy, and the Supreme Court held that the FDA's decision "[g]enerally" not to pursue enforcement actions in the "area" of "unapproved use of approved drugs for human execution," 470 U.S. at 824, was a presumptively unreviewable exercise of discretion, *id.* at 833.  Although *Chaney* concerned individuals facing lethal injection in only two states, the relief sought would have affected entire segments of the drug market, *id.* at 824, not to mention at least "several other[]" states that had adopted the same method of capital punishment, *id.* at 823.  Likewise, *Perales v. Casillas* addressed a broad enforcement policy; there, the Fifth Circuit held that a class action challenge to an Immigration & Naturalization Service (INS) district office's decision not to grant pre-hearing voluntary departure and work authorization to eligible aliens for a roughly three-year period was an unreviewable exercise of agency discretion.  903 F.2d 1043, 1046 (5th Cir. 1990), *reh'g denied*, 912 F.2d 1465 (5th Cir. 1990).[4]

In an attempt to distinguish *Chaney*, Plaintiffs mischaracterize the nature of the Rescission Policy, claiming that it "revokes the availability of prosecutorial discretion" in "an indisputable exercise of 'coercive state authority.'"  Pls.' Opp. 7 (citation omitted); *see id.* at 8 ("the Rescission operates as an affirmative decision to constrain DHS's prosecutorial discretion" (citation omitted)).  To the contrary, the Rescission Policy was itself an act of discretion, which is best described as a reordering of the agency's enforcement priorities.  Moreover, it does not prevent DHS officials from later exercising their delegated discretion to confer deferred action on an individual former DACA recipient.  The Secretary remains free to establish (or revoke) other deferred action policies; to grant (or deny) deferred action under other policies or no policy at all; to revoke a grant of deferred action; and to pursue removal, all in her discretion.  In any event, the

---

[4] Plaintiffs claim that courts reviewing "programmatic decisions like the Rescission" "routinely" find there is law to apply.  Pls.' Opp. 8.  Of course, if the agency's interpretation of a statute is embedded in a non-reviewable enforcement policy, the former may be reviewable as such.  *See, e.g.*, *Crowley Caribbean Transp., Inc. v. Pena*, 37 F.3d 671, 676–77 (D.C. Cir. 1994).  It does not follow, however, that the enforcement policy itself is reviewable.  *See BLE*, 482 U.S. at 283.  For present purposes, the Rescission Policy does not contain an embedded interpretation of the INA (or any other statute) that would be otherwise reviewable.  Rather, it merely contains a non-reviewable decision about the exercise of enforcement discretion.  *See id.*

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

Ninth Circuit has not drawn the same distinction between non-enforcement decisions, as in *Chaney*, and denials of deferred action. *See Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1011 n.4 (9th Cir. 1987).

Plaintiffs argue that courts routinely conduct APA review in the immigration context, Pls.' Opp. 8-9, but they ignore the strong presumption of non-reviewability of agency enforcement decisions, *see Chaney*, 470 U.S. at 824.   And, in fact, most of the cases they cite involve attacks on a removal order, either through a petition for review of a Board of Immigration Appeals decision (in which the courts did not apply the APA) or a petition for writ of habeas corpus.[5]   This suit, by contrast, involves an APA challenge "outside the streamlined process that Congress has designed" to the Executive's broad discretion to enforce the nation's immigration laws, the invasion of which raises "greatly magnified" concerns. *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 485, 490 (1999).   Those concerns are not dispelled by the preemptive nature of this challenge:   Plaintiffs seek not merely to delay the effects of DHS's enforcement decision, but to enjoin its implementation altogether.   In the immigration context, however, judicial management of the Executive's enforcement discretion would prolong ongoing violations of the INA in just the way that the Supreme Court has warned against. *See id*. at 490.

Finally, Plaintiffs erroneously contend that review of their notice-and-comment, Regulatory Flexibility Act, and constitutional claims is not foreclosed.   But the APA's plain text bars review of agency action falling within the scope of Section 701, whether the challenges raised are substantive or procedural, and whether statutory or constitutional. *See* 5 U.S.C. § 701 (bar on review "applies" throughout "[t]his chapter"); *id*. § 706 ("[s]cope of review" includes "agency action" "contrary to constitutional right" or "without observance of procedure required by law").   Indeed, many of the Plaintiffs themselves invoked these very provisions in asserting their

---

[5] The single case cited by Plaintiffs involving an APA action did not raise or address questions of justiciability and, in fact, recognizes "the plenary power vested in Congress to fix and in the executive to enforce, the terms and conditions of [an alien's] entry and stay in the United States." *Noel v. Chapman*, 508 F.2d 1023, 1028 (2d Cir. 1975); *id.* at 1027 ("The power of congress to exclude aliens altogether from the United States, . . . and to have its declared policy in that regard *enforced exclusively through executive officers, without judicial intervention*, is settled by our previous adjudications" (emphasis added) (citation omitted)).

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

constitutional claims.  *Regents of Univ. of Cal.* Compl. ¶ 57 (citing 5 U.S.C. § 706); *State of Cal.* Compl. ¶ 154 (same); *Garcia* Compl. ¶¶ 160-64.  Because all of Plaintiffs' claims challenge agency action that is "committed to agency discretion by law," all of their claims are barred from review—a limitation they cannot avoid by including meritless constitutional claims in their complaint, as *Chaney* itself recognized.  470 U.S. at 838 (bar on review stands at least absent a "colorable claim . . . that the agency's [action] . . . violated any constitutional rights").[6]

## B.   The INA Deprives District Courts of Jurisdiction over Challenges to Denials of Deferred Action

Plaintiffs do not dispute that Section 1252(g) eliminates federal court jurisdiction over denials of deferred action.  *See* 8 U.S.C. § 1252(g) (barring review "notwithstanding any other provision of law (statutory or nonstatutory)" of "any cause or claim").  Instead, they claim that Section 1252(g) is inapplicable because their lawsuits do not arise from one of the three actions enumerated in that section—*i.e.*, "a 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  Pls.' Opp. 10 (alteration omitted) (quoting *AADC*, 525 U.S. at 482).  That crabbed view ignores both the purpose of this provision and the Supreme Court's decision in *AADC*.

Plaintiffs misread the Supreme Court's statement that Section 1252(g) is not intended to act as "a sort of 'zipper' clause" covering "all claims arising from deportation proceedings." *AADC*, 525 U.S. at 482.  Defendants advance no such broad reading here, and the Supreme Court's interpretation of Section 1252(g)'s scope is entirely consistent with the section's application to the Rescission Policy, which is precisely the type of "no deferred action' decision[] [or] similar[ly] discretionary determination[]" that this provision "seems clearly designed" to protect.  *Id.* at 485.[7]

---

[6]   Although Plaintiffs claim that substantively unreviewable decisions remain procedurally reviewable under the APA, none of the cases addressed the text of Sections 701 and 706.  Pls.' Opp. 5.  In any event, for largely the same reasons the Policy is not substantively reviewable under the APA, it is exempted from the APA's rulemaking requirements.  *See* Section II.A, *infra*; *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (finding exemption "surely includes" agency decision to discontinue a discretionary allocation of funds), *declined to extend by Texas v. United States*, 787 F.3d 733 (5th Cir. 2015); *Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1135 (D.C. Cir. 1995) (implicitly recognizing that, "in the absence of statutory standards, certain resource allocation choices [such as] whether or not to prosecute a case . . . are committed to agency discretion by law" and thus are "screened from comment and review" (internal citations omitted)).

[7]   In contrast, none of the three cases that Plaintiffs identify as "rejecting the government's invocation of Section 1252(g) to block challenges to enforcement policies," Pls.' Opp. 11,

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

1    Indeed, these cases raise the same concern that prompted the enactment of Section 1252(g)—that

2    such discretionary decisions, to the extent "they are reviewable at all," should not be "the bases

3    for separate rounds of judicial intervention outside the streamlined process that Congress . . .

4    designed." *Id.*

5         The fact that DHS exercised its enforcement discretion before any individual removal

6    proceeding and with respect to a class of individuals does not preclude the application of Section

7    1252(g).  As *AADC* made clear, "Section 1252(g) was directed against a particular evil:  attempts

8    to impose judicial constraints upon prosecutorial discretion."  525 U.S at 485 n.9.  The decision to

9    rescind deferred action, regardless of when it is made and how many individuals it involves, is an

10   action leading up to the commencement of removal proceedings at some future date, and a person

11   cannot circumvent the bar in Section 1252(g) by singling out that single step for a preemptive

12   challenge.  *See* 8 U.S.C. § 1252(g) (precluding review of "decision[s] *or action[s]*" "to commence

13   proceedings" (emphasis added)); *see also Botezatu v. INS*, 195 F.3d 311, 313-14 (7th Cir. 1999)

14   (applying Section 1252(g) to INS's refusal to grant alien deferred action in "post-deportation

15   procedures" even though such action was not on Section 1252(g)'s "list of precluded items").

16        **C.     The Entity Plaintiffs Lack Standing**

17        Plaintiffs concede that standing must be assessed "claim by claim," but nonetheless argue

18   that Defendants' challenge to the entities' standing is "irrelevant" because "the presence of any

19   plaintiff with standing is sufficient to confer jurisdiction on this Court."  Pls.' Opp. 12.  Defendants,

20   however, moved to dismiss the particular claims and actions brought by the entity plaintiffs for

21   lack of standing, which is precisely the type of "claim by claim" analysis that Plaintiffs concede is

22   substantively reviewed a discretionary decision to deny deferred action.  Instead, these cases
23   addressed challenges to agency procedures that resulted in deportations.  *See Catholic Soc. Servs.,*
     *Inc. v. INS* 232 F.3d 1139, 1150 (9th Cir. 2000) ("[W]e have affirmed grants of injunctive relief to
24   classes of aliens challenging deportation procedures in two recent cases."); *Walters v. Reno*, 145
     F.3d 1032, 1051-52 (9th Cir. 1998) (upholding jurisdiction over injunction prohibiting
25   "deportation of aliens who received inadequate notice" under agency procedures); *Ramirez*
     *Medina v. U.S. Dep't of Homeland Sec.*, No. 17-0218-RSM, 2017 WL 5176720, at *6 (W.D. Wash.
26   Nov. 8, 2017) (holding that Section 1252(g) did not bar jurisdiction over claim that agency failed
     to "compl[y] with their own non-discretionary procedures" when taking him into custody, which
27   resulted eventually in his deportation, but agreeing that Section 1252(g) would bar "review of the
     government's ultimate discretionary decision to terminate [the plaintiff's] DACA").  Plaintiffs'
28   citation to the *Texas* case is also inapposite because that case involved the Executive's
     discretionary decision to *grant* deferred action to a class of aliens.  *See Texas*, 809 F.3d at 164.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

1   appropriate (as they must) in these related (but not consolidated) cases.  The cases that Plaintiffs

2   cite regarding standing generally and this Court's overall jurisdiction in the context of consolidated

3   cases are therefore irrelevant.  *See* Pls.' Opp. 12.

4       Plaintiffs also fail to fully address that the entities' injuries merely reflect the indirect

5   effects of federal enforcement policies, as well as Defendants' argument that "a private citizen

6   lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S.*

7   *v. Richard D.*, 410 U.S. 614, 619 (1973).  To the extent the rescission affects the entities, it only

8   does so through its potential future impact on individual DACA recipients.  Any such "regulation

9   . . . of someone else" imposes a "substantially more difficult" jurisdictional bar which the entity

10  plaintiffs cannot meet here.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (emphasis

11  omitted) (citations omitted).

12      **D.**     **The Entity Plaintiffs Lack Standing to Assert APA and RFA Claims**

13      Contrary to Plaintiffs' assertion that the entity plaintiffs have a cause of action under the

14  APA, none of the entities have identified interests that are arguably protected or regulated by the

15  INA.  Claims that Plaintiffs' students or employees have been affected by the Rescission Policy

16  are insufficient because a plaintiff cannot meet the zone-of-interests test merely by alleging that

17  an agency has acted against someone else's interests in a way that might indirectly affect his own.

18  *See Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 522-31

19  (1991); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).  Instead, a plaintiff must show

20  that "the [actions] in question are *designed* to protect [or regulate] some . . . concrete interest of

21  *his* that is the ultimate basis of his standing." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d

22  1152, 1157 (D.C. Cir. 2005) (citation omitted).[8]  The entities fail to meet that standard here.

23

24

---

25  [8] Plaintiffs' reliance on *Hawaii v. Trump* is unpersuasive.  859 F.3d 741 (9th Cir. 2017), *vacated*

26  *on other grounds,* 2017 WL 4782860, at *1 (U.S. Oct. 24, 2017).  In *Hawaii*, the Court held that
    "the State's interests in student- and employment- based visa petitions for its students and faculty
    are related to the basic purposes of the INA" because the INA specifically provides a mechanism

27  for such visas.  *Id.* at 766.  In contrast, the INA does not regulate States with respect to discretionary

28  enforcement decisions.  Thus, the States' or other entities' interest in enrolling and hiring DACA
    recipients is not within the zone of interests protected by the INA.

    **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
    **All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

1    With respect to the RFA claims, Plaintiffs cannot manufacture standing by asserting that
2    persons or states will be indirectly affected by injuries to a different, non-party "small entity." *See*
3    Pls.' Opp. 19-20.  Moreover, Plaintiffs ignore that "the language of the RFA extends standing to
4    seek judicial review only to a 'small entity,'" *Nw. Mining Ass'n v. Babbit*, 5 F. Supp. 2d 9, 13
5    (D.D.C. 1998), instead offering only a series of cases denoted with a "*cf.*" citation to argue that
6    standing exists here.  *See* Pls.' Opp. 19.  None of the cases cited by Plaintiffs, however, actually
7    analyzed standing to bring a RFA claim.  And at bottom, no Plaintiff alleges facts that they
8    themselves are a "small entity" entitled to judicial review under the RFA.  *See* 5 U.S.C. § 601(6)
9    (defining "small entity"); *id*. § 611(a)(1) (restricting judicial review to "a small entity that is
10   adversely affected or aggrieved").

## II.    PLAINTIFFS FAIL TO STATE A CLAIM

### A.    Plaintiffs' APA Claims Fail

13   Defendants have demonstrated that then-Acting Secretary Duke's decision to wind down
14   DACA was both eminently reasonable and adequately explained in the Rescission Policy.  *See*
15   Defs.' Mot. 23–29.  Plaintiffs fail to engage those arguments in any meaningful way, instead
16   merely asserting that they "have adequately pleaded that the Rescission was arbitrary and
17   capricious," reiterating their allegations without any specificity, and citing to related sections of
18   their motion for provisional relief. Pls.' Opp. 20.  Accordingly, Defendants' motion to dismiss
19   arguments regarding these claims remain unrebutted.

20   Plaintiffs also continue to press the argument that DHS could not rescind DACA without
21   adhering to the APA's notice-and-comment requirements. Pls.' Opp. 20–22.  The Ninth Circuit,
22   however, has twice rejected a similar argument that a deferred-action directive was void for failure
23   to abide by notice-and-comment requirements.  *See Mada-Luna*, 813 F.2d at 1013; *Romeiro de*
24   *Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985) (discussed at Defs.' Opp. to Pls.' Mot. for
25   Prov. Relief (Defs.' Opp.) 28, ECF No. 204).  That binding precedent established that deferred-
26   action guidance is "a clear[] case of a general statement of policy" not subject to the APA's notice-
27   and-comment requirements. *Mada-Luna*, 813 F.2d at 1017. Plaintiffs fail to address this authority.
28   Instead, Plaintiffs assert that "the government effectively concedes that the Rescission is a

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

8

substantive rule" under the APA because "'[t]he rescission of DACA falls squarely in' the category of 'policy-based deprivations of the interests of a class' because it 'applies across-the-board to a large number of people.'" Pls.' Opp. 21 (quoting Defs.' Mot. 37, 38). This so-called "concession" was creatively constructed by Plaintiffs through the stringing-together of three separate quotes, out-of-order, even though those quotes appear in two separate paragraphs across two pages of the *due process* section of Defendants' brief. Plaintiffs also omit the context of the quoted language: To the extent Defendants argued that DACA's rescission falls into the category of a "policy-based deprivation[ ] of the interests of a class," the beginning of the paragraph containing the quoted language makes clear that the assertion is only being made in the alternative, "if DACA could be conceived of as an entitlement." Defs.' Mot. 37. The thrust of Defendants' argument, however, is that DACA is *not* an "entitlement," and to the extent the rescission applies "across the board," Defs.' Mot. 38, it undoes a policy that the Fifth Circuit found lacked individualized discretion, at least in practice. *See Texas*, 809 F.3d at 172-73; Rescission Policy 2 (AR 253) ("The Fifth Circuit agreed with the lower court that DACA decisions were not truly discretionary"). And the Rescission Policy makes clear that DHS not only retained its right to "continue to exercise its discretionary authority to terminate or deny deferred action at any time," but also that "no limitations are placed by this guidance on the otherwise lawful enforcement or litigation prerogatives of DHS." Rescission Policy 4-5 (AR 255-56).

Plaintiffs do not otherwise respond to Defendants' arguments that the rescission is "a quintessential policy statement" that "explains how the agency intends to exercise its enforcement authority," a matter which is "'committed to [the] agency's absolute discretion.'" *See generally* Defs.' Mot. 29-32 (quoting *Chaney*, 470 U.S. at 831). Plaintiffs' citation to *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1325 (9th Cir. 1992), *see* Pls.' Opp. 21, is therefore inapposite; rather than binding the agency, the rescission is a paradigmatic exercise of discretion.[9]

### B.  Plaintiffs Fail to State an Equal Protection Claim

Plaintiffs do not state a plausible Equal Protection claim, and their Opposition does not

---

[9] Because Plaintiffs' procedural APA claim fails, their RFA claim (which is contingent on there being a notice-and-comment rulemaking requirement) also fails. *See, e.g.*, *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 42 (D.C. Cir. 2005) (quoting 5 U.S.C. § 604(a)).

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

9

1   demonstrate otherwise.  Plaintiffs assert that their allegations suffice to show "discriminatory

2   intent and discriminatory treatment" when judged against the factors  discussed in *Village of*

3   *Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252 (1977).  Pls.' Opp.

4   22.  But even assuming those factors are applicable—which they are not—Plaintiffs must

5   overcome the presumption that government officials "properly discharged their official duties"

6   when making prosecutorial decisions, by making plausible and specific factual allegations that

7   offer "clear evidence to the contrary."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

8   They have not done so.

9          Plaintiffs unpersuasively attempt to distinguish *Armstrong* and *AADC* by contending that

10  they challenge "a policy decision to rescind the DACA program, not individual prosecutorial

11  decisions."  Pls.' Opp. 22.  But DACA itself was a policy by which the Secretary made deferred

12  action—an exercise of individualized enforcement discretion—available to a class of unlawfully

13  present aliens who came to the United States as children.  And in rescinding the DACA policy,

14  then-Acting Secretary Duke instructed that deferred action should instead be provided "only on an

15  individualized[,] case-by-case basis."  Rescission Policy 2 (AR 253).  Accordingly, as in

16  *Armstrong*, Plaintiffs' claim of a secret discriminatory intent underlying the Acting Secretary's

17  decision regarding her exercise of prosecutorial discretion invades "a 'special province' of the

18  Executive."  517 U.S. at 464 (quoting *Chaney*, 470 U.S. at 832).  And as "[t]hese concerns are

19  greatly magnified in the deportation context," Plaintiffs must satisfy *Armstrong*'s "particularly

20  demanding" standard.  *AADC*, 525 U.S. at 489, 490.  None of the Ninth Circuit cases cited by

21  Plaintiffs, which do not involve decisions relating to prosecutorial discretion or the immigration

22  context, are to the contrary.  *See Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 496 (9th Cir.

23  2016) (denial of rezoning request), *cert. denied*, 137 S. Ct. 295 (2016); *Arce v. Douglas*, 793 F.3d

24  968, 973 (9th Cir. 2015) (state statute regulating school curricula); *Pac. Shores Properties, LLC v.*

25  *City of Newport Beach*, 730 F.3d 1142, 1147 (9th Cir. 2013) (city zoning ordinance), *denied reh'g*

26  *en banc*, 746 F.3d 936 (9th Cir. 2014).

27         Plaintiffs' allegations do not suggest clear evidence of discriminatory intent.  First,

28  Plaintiffs contend that the rescission of DACA has a disparate impact on individuals of Mexican

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

heritage and Latinos, who allegedly account for 93% of approved DACA applicants.  Pls.' Opp. 23.  But "a racially disproportionate impact" alone is never sufficient to establish discriminatory intent, *Arlington Heights*, 429 U.S. at 264–65, especially in a case like this in which the plausible alternative explanations—*i.e.*, that these statistics are explained by geography, not discrimination—overwhelm the inference Plaintiffs seek to draw.  Indeed, in *Armstrong*, the Supreme Court found insufficient allegations of discriminatory intent where evidence suggested that 100% of prosecutions for certain drug-trafficking offenses closed by the federal defender's office in a given year involved African-American defendants.  517 U.S. at 470.  Nor does Plaintiffs' statistic provide circumstantial support for such an intent because, even accepting it as true, *any* change to the DACA program would likely have had a disparate impact on those communities—as would nearly any change to this country's immigration policies.

Second, Plaintiffs rely solely on allegations of statements made by President Trump and others in arguing that the historical background of the Acting Secretary's decision supports a finding of discriminatory intent.  Pls.' Opp. 24 & n.13.  None of those statements, however, provides any evidence of a secret discriminatory motive for the rescission of DACA by then-Acting Secretary Duke, let alone the sort of clear evidence that would be required to state such a claim.  The statements do not address the actual decision at issue—the rescission of DACA—nor were they made by the Acting Secretary, the only official vested with authority under the INA to make the decision at issue.  8 U.S.C. § 1103(a)(1).  Plaintiffs rely heavily on their allegation that "President Trump himself took responsibility for the decision to rescind DACA."  Pls.' Opp. 24 n.15.  But the identity of the relevant decisionmaker is not a question of fact; it is a settled issue of law.[10]

Third, Plaintiffs rely on allegations purporting to show that the government "created a pretext for its discriminatory animus" by providing "[o]nly the thinnest of justifications" for the

---

[10] Plaintiffs also err in suggesting that discriminatory intent could be found based on "anti-Mexican and Latino animus among [President Trump's] supporters."  Pls.' Opp. 24 n.14.  The case law on which Plaintiffs rely pertains to discrimination in housing and zoning (not prosecutorial discretion and immigration) where "council members may vote based on constituents concerns about 'an influx of undesirables' into the neighborhood."  *Ave. 6E Investments, LLC*, 818 F.3d at 504-05 (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1066 (4th Cir. 1982)).

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

change in agency policy.  Pls.' Opp. 25.  But Plaintiffs' allegations provide no support for finding that the Acting Secretary's stated reasons for adopting the Rescission Policy were pretextual, as Defendants have explained.  *See* Defs.' Opp. 21-26.  And as discussed above, the Acting Secretary rationally explained her decision to wind down DACA, given the imminent risk of a disruptive, nationwide injunction.

Finally, Plaintiffs offer no response to Defendants' argument that the State Plaintiffs' equal-protection theory regarding the pursuit of a livelihood and education by DACA recipients fails because it identifies no fundamental right.  *See* Defs.' Mot. 35.  Plaintiffs thus concede the argument, and the claim should be dismissed.  *Silva v. U.S. Bancorp*, No. 5:10-CV-01854-JHN, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (holding that the plaintiff "concede[d] [a] claim should be dismissed by failing to address Defendants' arguments in [its] Opposition").

## C.     Plaintiffs Fail to State a Procedural Due Process Claim

Plaintiffs now concede, as Defendants argued in their motion to dismiss, that no form of individualized notice or hearing was required before the rescission of DACA.  *See* Defs.' Mot. 37-38 (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)).  Instead, they now argue, as "a complement to their procedural APA claim," that "the notice and comment requirements of the APA provide a measure of due process to parties affected by the Rescission." Pls.' Opp. 21.  In other words, Plaintiffs seem to argue that the "process" to which they were entitled under the Due Process Clause was notice-and-comment rulemaking under the APA.

This (far less ambitious) argument still fails.  The "Due Process Clause does not protect everything that might be described as a 'benefit,'" and a benefit "is not a protected entitlement" where, as here, "government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  Plaintiffs repeatedly reference—without any support or explanation—the government's alleged "promises" to DACA recipients.  *See, e.g.*, Pls.' Opp. 1 ("The rescission of the DACA program breaks the promises that the federal government made . . . .").  To be sure, if the Government had actually "*promised* certainty, security, and opportunity" to DACA recipients in some permanent or binding fashion, Pls.' Opp. 32 (emphasis added)—say, by enacting a federal statute addressing their immigration status—Plaintiffs might have a stronger

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

12

1  case.  But a discretionary Executive Branch policy of non-enforcement is something that

2  "government officials may grant or deny . . . in their discretion," *Castle Rock*, 545 U.S. at 756, and

3  therefore creates no protected "entitlement" for purposes of the Due Process Clause.  *See Arpaio*

4  *v. Obama*, 797 F.3d 11, 17 (D.C. Cir. 2015) (DACA "remains discretionary and reversible, and

5  'confers no substantive right, immigration status or pathway to citizenship'").  Because it can be

6  granted or denied in the agency's broad discretion, there is "no protectable liberty interest in

7  deferred action." *Romeiro de Silva*, 773 F.2d at 1024.  The same is necessarily true of any indirect

8  benefits that may flow from a grant of deferred action under DACA.

9      Even if Plaintiffs had identified a liberty or property interest protected by the Due Process

10  Clause, the specific procedure that they seek—notice-and-comment rulemaking under the APA—

11  was not required here.  As discussed above, the APA exempts general statements of policy from

12  the requirements of notice-and-comment rulemaking.  *See* Section II.A, *supra*.  And the

13  uncontroversial fact that notice-and-comment rulemaking is often *sufficient* to satisfy the

14  requirements of due process (as the cases cited by Plaintiffs suggest, *see* Pls.' Opp. 21-22) says

15  nothing about whether or when (if ever) notice-and-comment rulemaking is actually *required* by

16  the Due Process Clause.  Plaintiffs cannot avoid dismissal of their procedural APA claim by

17  recasting the same allegations under the duplicative rubric of procedural due process.

### D.      Plaintiffs Fail to State a Substantive Due Process Claim

19      Plaintiffs' substantive due process claim fails for similar reasons and more, and their

20  contentions to the contrary are flawed at each turn.

21      **a.**  Plaintiffs' argument that Defendants "effectively concede[d]" that Plaintiffs have stated

22  a substantive due process claim, Pls.' Opp. 26, is specious.  In fact, Defendants argued that

23  Plaintiffs "have no protected liberty or property interest" entitling them to due process protections

24  at all, Defs.' Mot. 36, and that, in any event, Plaintiffs have failed to establish entitlement to any

25  right "that rank[s] as 'fundamental,'" *id*. 40.  Each of those points independently bars Plaintiffs'

26  substantive due process claim, and they fail to overcome either one.

27      **b.**  There is nothing "fundamentally unfair" about the rescission of DACA, Pls.' Opp. 31–

28  34—a discretionary policy, always intended to be temporary and revocable, the winding down of

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

1   which over a two-and-a-half-year period cannot credibly be characterized as "so egregious" and

2   "outrageous" as "to shock the contemporary conscience," *Cty. of Sacramento v. Lewis*, 523 U.S.

3   833, 847 n.8, 850 (1988).

4          Plaintiffs repeatedly assert that the government has "broken promises" of "certainty,

5   security, and opportunity." Pls.' Opp. 32.  But they fail to explain how.  In fact, DACA was never

6   "promised" to be indefinite.  When former President Obama announced the policy in 2012, he

7   explained that it was a "not a permanent fix" but a "temporary stopgap measure," and urged

8   Congress to act "because these kids deserve to plan their lives in more than two-year increments."

9   The White House, *Remarks by the President on Immigration*, obamawhitehouse.archives.gov

10  (June 15, 2012 2:09 PM), https://go.usa.gov/xnZFY.  Former Secretary Napolitano (a named

11  Plaintiff in one of these cases) likewise explained that DACA "confers no substantive right," that

12  DHS "cannot provide any assurance that relief will be granted," and that "[o]nly the Congress,

13  acting through its legislative authority, can confer these rights."  DACA Memo 2-3 (AR 2-3).  And

14  former Secretary Johnson emphasized that the policy "may be terminated at any time at the

15  agency's discretion."  DAPA Memo 2 (AR 38).[11]  Thus, contrary to Plaintiffs' claims, DACA

16  recipients were repeatedly and publicly cautioned that the policy could end at any time.  Nor can

17  Plaintiffs plausibly claim to have been denied "the benefit of their bargain," Pls.' Opp. 33, given

18  that the rescission left in place existing grants of deferred action for the remaining duration of their

19  stated periods.  Rescission Policy 4 (AR 255).  Thus, their analogy to "plea bargain agreements

20  and cooperation agreements," Pls.' Opp. 33–34, is misplaced, as even if there were an enforceable

21  "quid pro quo" here, *id.*, the rescission does nothing to upset it.

22          This case bears no resemblance to *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir.

23  2012), on which Plaintiffs principally rely, Pls.' Opp. 32–33.  There, a county prosecutor kept as

24  a "memento" of his career a "hideous" autopsy photo of a two-year-old boy who died from a

---

25  [11] Plaintiffs take another statement by former Secretary Johnson wildly out of context.  His

26  statement that "DACA applicants most assuredly relied" on "representations made by the U.S.

27  government," Pls.' Opp. 2 (citation omitted), refers specifically to DHS's information-sharing
    policy, as the balance of the quoted letter makes clear.  *See* Letter from Secretary Jeh Johnson to

28  Representative Judy Chu 1 (Dec. 30, 2016) (responding to inquiry regarding "the personal
    identifying information of DACA enrollees"), App. 1822, ECF No. 121-1 at 252.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

14

"severe head injury." *Marsh*, 680 F.3d at 1152, 1155.  Twenty years later, he gave a copy of the photo "to a newspaper and a television station" for publication, *id*. at 1152—an act the court characterized as an "unwarranted public exploitation of death images" akin to the "desecration of [a] burial site" or the "[m]utilation of a deceased family member's body," *id*. at 1155.  While such "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury" may be so conscience-shocking as to violate substantive due process, *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001), this theory does not reach "government action that is [merely] incorrect or ill advised," *Cunney v. Bd. of Trs. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (citation omitted).  Certainly, it does not "forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a . . . lawsuit seeking review of administrative action," *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999), such as this one (at least according to Plaintiffs).

Rather, this case is governed by *Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir. 2003), which recognized that, "[i]n the immigration context," the "denial of" "discretionary relief" "cannot violate a substantive interest protected by the Due Process clause." *Id*. at 954.  There, a 24-year-old man brought to the United States as a baby argued that his being denied cancellation of removal—a discretionary form of relief, much like deferred action—violated substantive due process.  Despite the petitioner's longstanding presence and community ties, the court was "unable to grant" relief, *id*. at 959, as he simply "ha[d] no substantive due process right to stay in the United States," *id*. at 954.  Plaintiffs cannot meaningfully distinguish *Munoz*, Pls.' Opp. 33 n.25, and it controls here.

**c.**  Perhaps recognizing the weakness of their claim of a constitutionally protected entitlement to the continued receipt of DACA, Plaintiffs attempt to recast the interest at stake.  Rather than focusing on the "discretionary grant of deferred action" itself, they urge the Court to look to other alleged "interests that flow" from DACA. Pls.' Opp. 27.  But while they offer an assortment of options, the Rescission Policy simply does not have the effects that Plaintiffs claim.  The rescission of DACA does not trench on any interest to be free from "custody or detention" or

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

15

to "live with and care for family." *Id*. And it has no legal effect on the independent decisions of third parties, including states, to offer their own "benefits" or "licenses." *Id*.

The only two indirect interests that are even arguably implicated by the rescission of DACA—namely, individual DACA requestors' legal right to work in the United States, and their ability to travel freely to and from the United States under a grant of advance parole—cannot qualify as "fundamental" interests protected by substantive due process. Those so-called "rights"—which are in fact also entirely discretionary, just like deferred action itself—derive only indirectly from a grant of DACA under separate and pre-existing regulations not at issue in this case. *See* 8 C.F.R. § 274a.12(c)(14) (employment authorization); *id.* §§ 212.5(f), 223.2(a) (advance parole). And because DACA recipients have no fundamental right to deferred action—indeed, as aliens, they "have no fundamental right to be in the United States" at all, *Shaar v. INS*, 141 F.3d 953, 958 (9th Cir. 1998), *superseded by statute as stated in Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005)—any indirect benefits that may flow from DACA cannot qualify as fundamental interests for purposes of substantive due process.[12]

**d.** Even if DACA recipients had a constitutionally cognizable interest in the availability of deferred action, this claim still would fail because the Acting Secretary's decision is narrowly tailored to serve a compelling state interest. Plaintiffs insist that the Rescission "was based entirely on minimizing purported 'litigation risk,' . . . a justification that cannot rise to the level of a compelling state interest." Pls.' Opp. 31. But this characterization misframes the inquiry: The Acting Secretary rescinded the program in "the exercise of [her] authority in establishing national immigration policies and priorities," Rescission Policy 4 (AR 255), and the government unquestionably has a compelling state interest in the orderly and lawful enforcement of the immigration laws, *United States v. Merkt*, 794 F.2d 950, 956 (5th Cir. 1986); *cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 878-79 (1975) (public interest demands effective measures to prevent illegal entry of aliens); *Rusu v. INS*, 296 F.3d 316, 321 (4th Cir. 2002) (recognizing that

---

[12] Even for U.S. citizens, "the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause." *Marilley v. Bonham*, 844 F.3d 841, 854-55 (9th Cir. 2016) (citation omitted). And because aliens "have no fundamental right to be in the United States" at all, *Shaar*, 141 F.3d at 958, *a fortiori* they have no fundamental right to leave and return at their leisure.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

16

"[b]ecause of the Government's compelling interest in controlling immigration," due process requirements may be relaxed in immigration context).  Plaintiffs' argument that the Rescission Policy "is the opposite of narrowly tailored" is even more misguided.  Pls.' Opp. 31.  Because "deferred action remains discretionary and reversible" even under DACA, *Arpaio*, 797 F.3d at 17, the Acting Secretary could have ended the policy entirely and immediately, and such action would have been permissible as a matter of substantive due process.  Instead, she opted for a gradual wind-down and a return to a traditional enforcement policy—a choice that was both less disruptive for recipients and more appropriately tailored to the situation faced by the agency.[13]

**e.**  The *State of California*, *Garcia*, and *County of Santa Clara* Plaintiffs also assert a substantive due process claim arising from DHS's alleged change to its policy on the sharing of information from DACA requests across DHS components.  *State of Cal.* Compl. ¶¶ 141-145 (Count 1); *Garcia* Compl. ¶¶ 133-147 (Count 1); *Cty. of Santa Clara* Compl. ¶¶ 59-66 (Count 1).  This claim fails for the simple reason that the alleged change never happened.  The Rescission Policy says nothing about, and makes no changes to, DHS's information-sharing policy.  Rescission Policy (AR 252-56).  And DHS recently and publicly confirmed publicly that "[t]his information-sharing policy has not changed in any way since it was first announced, including as a result of the Sept. 5, 2017 memo starting a wind-down of the DACA policy."  DHS, USCIS, *Frequently Asked Questions:  Rejected DACA Requests* Q5 (Dec. 7, 2017), https://www.uscis.gov/daca2017/mail-faqs (Dec. 7, 2017 FAQs).  Even at the pleadings stage, Plaintiffs' conclusory allegations are not entitled to the presumption of truth in the face of judicially noticeable documents that contradict them.  *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Plaintiffs quote selected portions of older FAQs that were issued with the rescission of DACA, which confirm that, unless certain exceptions are satisfied, DACA information "will not be proactively provided to ICE and CPB for the purpose of immigration enforcement proceedings."  *Garcia* Compl. ¶ 126 (emphasis omitted) (quoting DHS, FAQ: Rescission of

---

[13] Because no fundamental interests are at stake, rational basis review applies to the Rescission Policy.  Plaintiffs' cursory assertion that the decision "does not pass muster" even under that highly deferential standard of review, Pls.' Opp. 26, is flatly incorrect.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

DACA Q8).[14]   But that was true when the DACA policy was first announced in 2012, and it remains true today, notwithstanding Plaintiffs' unwarranted alarm about the adverb "proactively." In any event, more recent FAQs unequivocally confirm that the policy "has not changed in any way since it was first announced."  Dec. 7, 2017 FAQs No. 5.

Moreover, even if DHS *had* modified that policy, the policy has always explicitly noted that it "may be modified, superseded, or rescinded at any time" and that it creates no legal rights. DHS, *FAQ:  Rescission of DACA* Q19; *see also* USCIS Form I-821-D, App. 1820, ECF No. 121-1 at 249 (similar).  That would be fatal to any substantive due process claim even if such a change *had* occurred.  *See Munoz*, 339 F.3d at 954 (holding that, at least in the immigration context, "denial of [discretionary] relief cannot violate a substantive interest protected by the Due Process clause").   Because there is nothing conscience-shocking about DHS's information-sharing policy—which has always been subject to change, subject to a number of exceptions, and in fact remains unchanged—these claims fail.

### E.    Plaintiffs' Equitable Estoppel Claims Fail

As noted in Defendants' opening brief, principles of equitable estoppel do not apply to the *policy* decisions of the federal government.  *See, e.g.*, *United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995); *Emery Mining Corp. v. Sec'y of Labor*, 744 F.2d 1411, 1416 (10th Cir. 1984). Plaintiffs fail to address these cases at all, even though their challenge is, in the end, one based on such a policy decision.  Instead, they simply assert that this principle "is not the law in this circuit" and cite *Watkins v. U.S. Army* to argue that the Ninth Circuit affirmed an order "estopping the Army from refusing to reenlist plaintiff 'despite [the Army's] longstanding policy that homosexuality was a nonwaivable disqualification for reenlistment."  Pls.' Opp. 39 (alteration in original) (quoting *Watkins v. United States Army*, 875 F.2d 699, 701, 711 (9th Cir. 1989) (en banc)).  But unlike here, *Watkins* did not involve a challenge to the "longstanding policy" itself; the claims in that case centered on the Army's treatment of an individual plaintiff.  *Watkins*, 875 F.2d at 708.  In other words, *Watkins* presented precisely the type of individualized claim to a non-

---

[14]  https://www.dhs.gov/news/2017/09/05/frequently-asked-questions-rescission-deferred-action-childhood-arrivals-daca

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

policy action that, on rare occasion, has led to the application of estoppel against the government because "justice and fair play require it." *Id.* at 706.[15]

Even if *Watkins* could be construed to apply to a policy challenge, Plaintiffs fail to meet the high bar that the case imposes. First, Plaintiffs need to plead "an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Watkins*, 875 F.2d at 707. Plaintiffs cite, without any context, then-Acting Secretary Duke's statement in the rescission that "DACA was fundamentally a lie." Pls.' Opp. 36 (quoting *Garcia* Compl. ¶ 122). But that statement—to the extent it is even relevant—actually undercuts Plaintiffs' estoppel argument because the Acting Secretary (much like President Obama when he announced the policy) was merely acknowledging that DACA was always intended to be a temporary, stop-gap measure:

> DACA was never more than deferred action—a bureaucratic delay—that never promised the rights of citizenship or legal status in this country. The program did not grant recipients a future, it was instead only a temporary delay until a day of likely expiration. And for that reason, DACA was fundamentally a lie.

Statement from Former Acting Sec'y Duke on the Rescission of DACA, App. 1869, ECF No. 121-2 at 15. In the same vein, Plaintiffs assert that the Government has represented that DACA recipients could renew their status. *See* Pls.' Opp. 37. (Of course, they could—and in fact many did—while the policy was in effect, and also pursuant to the terms of the ongoing wind-down as laid out in the Rescission Policy itself.) But that assertion ignores both the discretionary nature of the policy and case law that "[t]he government should not be unduly hindered from changing its position if that shift is the result of a change in public policy." *Owens*, 54 F.3d at 275.

Plaintiffs alternatively base their "misrepresentation or affirmative concealment" claim on the allegation that Defendants changed their information-sharing policy. *See* Pls.' Opp. 37-38. As

---

[15] The other case Plaintiffs cite for the proposition that estoppel can apply to policy challenges involved an individualized claim raised in the context of a petition for a review of a Board of Immigration Appeals decision. *See Salgado-Diaz v. Gonzales*, 395 F.3d 1158 (9th Cir. 2005). As for Plaintiffs' contention that estoppel can apply "in non-individualized cases, including in class actions," Pls.' Opp. 39, the principal case that they cite involved a set of plaintiffs who "have never sought to rely on estoppel as a basis for recovery." *Lyng v. Payne*, 476 U.S. 926, 936 (1986). Plaintiffs also cite *Stevens v. GCS Serv.*, 281 F. App'x 670, 671 (9th Cir. 2008), but in that case—which did not involve the government at all—the Ninth Circuit found that the appellant had not even alleged the elements of an estoppel claim. And in any event, these class action cases by definition involve plaintiffs who are similarly situated. Plaintiffs here, which consist of a hodge-podge of individuals, states, municipalities, educational institutions, and a union, are not so situated and are not seeking class relief.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

1    noted in Section II.D, *supra*, USCIS's most recent statement on this issue makes clear that the

2    policy "has not changed in any way."  Dec. 7, 2017 FAQs No. 5.  But even if there were a change,

3    USCIS's historical FAQs and DACA instructions make clear that nothing was "conceal[ed]"; to

4    the contrary, those documents explicitly stated that the policy is subject to change at any time.

5         Nor can Plaintiffs meet the second, "serious injustice" element of an estoppel claim against

6    the Government.  *Watkins*, 875 F.2d at 707.  While Defendants do not dispute that individual

7    DACA recipients have alleged harm, Plaintiffs all but ignore that those same recipients were on

8    notice that the policy was discretionary and that deferred action could be terminated at any time.

9    *See* Defs.' Mot. 44.  And again, an analysis of "injustice" runs headlong into the line of cases—

10   unrefuted by Plaintiffs—that estoppel principles do not apply to policy challenges.[16]

11   **III.   NATIONWIDE DECLARATORY AND INJUNCTIVE RELIEF IS IMPERMISSIBLE**

12        Defendants have explained that the Declaratory Judgment Act does not provide an

13   independent cause of action, thus necessitating dismissal of any separate claims seeking

14   declaratory relief.  *See* Defs.' Mot. 45.  Plaintiffs do not contend otherwise, but assert that a

15   declaration that DACA is "lawful" is nonetheless an appropriate form of relief.  *See* Pls.' Opp. 40.

16   Plaintiffs fail to explain how a declaratory judgment by this Court that DACA is "lawful" would

17   bear upon a rescission based on the litigation risk that the Government faced in Texas.

18        Nor should this Court entertain any request for nationwide injunctive relief.  Plaintiffs

19   contend otherwise, characterizing a "nationwide injury."  Pls.' Opp. 40.  Any relief that this Court

20   may provide, however, must be tailored so as to "be no more burdensome to the defendant than

21   necessary to provide complete relief to the plaintiffs."  *Madsen v. Women's Health Ctr., Inc.*, 512

22   U.S. 753, 765 (1994) (internal citations omitted).  Accordingly, any injunction must be limited to

23   the particular Plaintiffs here.

                                    **CONCLUSION**

24

25        This Court should grant Defendants' motion to dismiss these cases.

26

---

27   [16] Plaintiffs inexplicitly complain that Defendants did not "cit[e] any case law" for the proposition
     that Plaintiffs have failed to plead traditional elements for estoppel.  *See* Pls.' Opp. 36 n.29.  In
28   fact, Defendants did cite *Watkins* for the four estoppel elements.  *See* Defs.' Mot. 44 n.16 (citing
     *Watkins*, 875 F.2d at 709).

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

Dated: December 8, 2017                   Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General

BRIAN STRETCH
United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Branch Director

JOHN R. TYLER
Assistant Branch Director

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG (DC Bar #467513)
Senior Trial Counsel
STEPHEN M. PEZZI (DC Bar #995500)
KATE BAILEY (MD Bar #1601270001)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Phone: (202) 514-3374
Fax: (202) 616-8460
Email: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ALL DACA CASES**
**All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)**

21