Jeffrey M. Davidson (SBN 248620)
Alan Bersin (SBN 63874)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: jdavidson@cov.com,
abersin@cov.com
*Attorneys for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California*

Theodore J. Boutrous, Jr. (SBN 132099)
Ethan D. Dettmer (SBN 196046)
Jesse S. Gabriel (SBN 263137)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
Email: tboutrous@gibsondunn.com,
edettmer@gibsondunn.com,
jgabriel@gibsondunn.com
*Attorneys for Plaintiffs Dulce Garcia, Miriam Gonzalez Avila, Saul Jimenez Suarez, Viridiana Chabolla Mendoza, Norma Ramirez, and Jirayut Latthivongskorn*

XAVIER BECERRA
Attorney General of California
MICHAEL L. NEWMAN
Supervising Deputy Attorney General
JAMES F. ZAHRADKA II (SBN 196822)
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
Telephone: (510) 879-1247
E-mail: James.Zahradka@doj.ca.gov
*Attorneys for Plaintiff State of California*

Joseph W. Cotchett (SBN 36324)
Justin T. Berger (SBN 250346)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: jcotchett@cpmlegal.com
jberger@cpmlegal.com
*Attorneys for Plaintiff City of San Jose*

Jonathan Weissglass (SBN 185008)
Stacey M. Leyton (SBN 203827)
Eric P. Brown (SBN 284245)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
Email: jweissglass@altber.com
*Attorneys for Plaintiffs County of Santa Clara and Service Employees International Union Local 521*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California, <br><br>            Plaintiffs, <br><br>      v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, <br><br>            Defendants. | CASE NO. 17-CV-05211-WHA <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF** <br><br> Judge: Honorable William Alsup <br> Hearing: December 20, 2017, 8:00 a.m. <br> Courtroom: 8, 19th Floor |

| | |
|---|---|
| STATE OF CALIFORNIA, STATE OF MAINE, STATE OF MARYLAND, STATE OF MINNESOTA, | CASE NO. 17-CV-05235-WHA |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, and the UNITED STATES OF AMERICA, | |
| Defendants. | |
| CITY OF SAN JOSE, a municipal corporation, | CASE NO. 17-CV-05329-WHA |
| Plaintiff, | |
| v. | |
| DONALD J. TRUMP, President of the United States, in his official capacity, ELAINE C. DUKE, in her official capacity, and the UNITED STATES OF AMERICA, | |
| Defendants. | |
| DULCE GARCIA, MIRIAM GONZALEZ AVILA, SAUL JIMENEZ SUAREZ, VIRIDIANA CHABOLLA MENDOZA, NORMA RAMIREZ, and JIRAYUT LATTHIVONGSKORN, | CASE NO. 17-CV-05380-WHA |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, DONALD J. TRUMP, in his official capacity as President of the United States, U.S. DEPARTMENT OF HOMELAND SECURITY, and ELAINE DUKE, in her official capacity as Acting Secretary of Homeland Security, | |
| Defendants. | |
| County of Santa Clara and Service Employees International Union Local 521, | CASE NO. 17-CV-05813-WHA |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, JEFFERSON BEAUREGARD SESSIONS, in his official capacity as Attorney General of the United States; ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security; and U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ...................................................................................................................... 1

PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ................................................................ 2

I.      The Rescission of DACA Is Arbitrary and Capricious. ..................................................... 2

        A.      Defendants Failed to Adequately Explain the Basis for the Rescission
                and Cannot Rely On Post Hoc Justifications. ....................................................... 2

        B.      The Government Failed to Consider All Relevant Factors and Provide
                a Reasoned Explanation for Its Policy Reversal. ................................................. 4

        C.      The Government's Assertion of "Litigation Risk" Does Not Support the
                Rescission. ........................................................................................................... 6

                1.      Litigation Risk Is Not a Valid Basis for Rescinding DACA. .................... 6

                2.      Agency Action Cannot Rest on Speculation. ......................................... 7

                3.      It Was Not "Inevitable" that DACA Would Be Enjoined. ........................ 8

        D.      The Stated Reasons for the Rescission Are Pretextual. ..................................... 13

II.     The Rescission Should Be Vacated Because It Is a Substantive Rule that Did Not
        Comply with the APA's Notice-and-Comment Requirements. .......................................... 14

PLAINTIFFS SATISFY THE REMAINING REQUIREMENTS FOR INJUNCTIVE RELIEF. ........................... 17

I.      Plaintiffs Have Demonstrated that They Are Suffering and Will Continue to Suffer
        Irreparable Harm if the Court Does Not Grant Provisional Relief. .................................... 17

II.     The Balance of Hardships and the Public Interest Weigh in Plaintiffs' Favor. ................. 18

NATIONWIDE INJUNCTIVE RELIEF IS APPROPRIATE ..................................................................... 19

CONCLUSION ......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs., Inc. v. Gardner*,
   387 U.S. 136 (1967)................................................................................................9

*Am. Forest Res. Council v. Ashe*,
   946 F. Supp. 2d 1 (D.D.C. 2013)............................................................................16

*Am. Gas Ass'n v. FERC*,
   593 F.3d 14 (D.C. Cir. 2010)..................................................................................11

*Am. Hosp. Ass'n v. Bowen*,
   834 F.2d 1037 (D.C. Cir. 1987)..............................................................................15

*Ariz. Dream Act Coalition v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014)...........................................................................17, 18

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015)..................................................................................10

*Ariz. Dream Act Coal. v. Brewer*,
   855 F.3d 957 (9th Cir. 2017).............................................................................9, 17

*Benten v. Kessler*,
   799 F. Supp. 281 (E.D.N.Y. 1992).........................................................................16

*Bresgal v. Brock*,
   843 F.2d 1163 (9th Cir. 1987).................................................................................19

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)................................................................................................19

*Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*,
   840 F.2d 701 (9th Cir. 1988)............................................................................17, 18

*Chapman v. Cty. of Douglas*,
   107 U.S. 348 (1883)..................................................................................................9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)................................................................................................13

*Consumer Energy Council v. FERC*,
   673 F.2d 425 (D.C. Cir. 1982)................................................................................16

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015)...................................................................................10

*Ctr. for Biological Diversity v. EPA*,
   722 F.3d 401 (D.C. Cir. 2013)..................................................................................3

*EEOC v. Ethan Allen, Inc.*,
   44 F.3d 116 (2d Cir. 1994)......................................................................................14

ii

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016)................................................................................2, 5, 6

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)..........................................................................................5, 6

*Hernandez v. Hughes Missile Sys. Co.*,
    362 F.3d 564 (9th Cir. 2004) ........................................................................13, 14

*Horsehead Res. Dev. Co. v. Browner*,
    16 F.3d 1246 (D.C. Cir. 1994) .............................................................................8

*Humane Soc'y of U.S. v. Locke*,
    626 F.3d 1040 (9th Cir. 2010) ..........................................................................2, 3

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ..............................................................................16

*Inland Empire-Immigrant Youth Collective v. Duke*,
    2017 WL 5900061 (C.D. Cal. Nov. 20, 2017)......................................................6

*ITT World Commc'ns, Inc. v. FCC*,
    699 F.2d 1219 (D.C. Cir. 1983) .........................................................................13

*Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*,
    741 F.3d 1309 (D.C. Cir. 2014) ...........................................................................3

*California ex rel. Lockyer v. USDA*,
    459 F. Supp. 2d 874 (N.D. Cal. 2006) .................................................................7

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) ..............................................................................18

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987) .......................................................................15, 16

*Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) .............................................................................7

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..................................................................................4, 11, 12

*Mt. Diablo Hosp. v. Shalala*,
    3 F.3d 1226 (9th Cir. 1993) ................................................................................11

*Municipality of Anchorage v. United States*,
    980 F.2d 1320 (9th Cir. 1992) ............................................................................14

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*,
    40 F.3d 698 (5th Cir. 1994) .................................................................................9

*Nat'l Shooting Sports Found., Inc. v. Jones*,
    716 F.3d 200 (D.C. Cir. 2013) .............................................................................7

iii

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999) ...........................................................................................................11

*Organized Village of Kake v. USDA*,
  795 F.3d 956 (9th Cir. 2015) ...............................................................................................7

*Perez v. Mortg. Bankers Ass'n*,
  135 S. Ct. 1199 (2015) ........................................................................................................5

*Pub. Citizen v. Heckler*,
  653 F. Supp. 1229 (D.D.C. 1986) ......................................................................................13

*Reynolds v. Sims*,
  377 U.S. 533 (1964) ...........................................................................................................11

*Ricci v. DeStefano*,
  557 U.S. 557 (2009) .............................................................................................................7

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
  804 F. Supp. 2d 1045 (E.D. Cal. 2011) .............................................................................17

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) .........................................................................................................4, 13

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) .............................................................................................................2

*Smiley v. Citibank (S.D.), N. A.*,
  517 U.S. 735 (1996) .............................................................................................................6

*Susquehanna Int'l Grp., LLP v. Sec. & Exch. Comm'n*,
  866 F.3d 442 (D.C. Cir. 2017) .............................................................................................3

*Texas v. United States*,
  136 S. Ct. 2271 (2016) ........................................................................................................15

*Texas v. United States*,
  787 F.3d 733 (5th Cir. 2015) ..............................................................................................10

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) .........................................................................................10, 19

*United States v. Am. Prod. Indus., Inc.*,
  58 F.3d 404 (9th Cir. 1995) ................................................................................................15

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ............................................................................................17

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) .......................................................................................17, 19

*Wayte v. United States*,
  470 U.S. 598 (1985) ...........................................................................................................15

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982)..............................................................................................11

*Williams Gas Processing-Gulf Coast Co. v. FERC,*
   475 F.3d 319 (D.C. Cir. 2006)............................................................................2

*Winter v. NRDC,*
   555 U.S. 7 (2008)................................................................................................17

**Statutes**

5 U.S.C. § 553.............................................................................................................15

**Other Authorities**

*Oversight of the U.S. Department of Justice: Hearing Before the S. Comm. on the*
   *Judiciary,* 115th Cong. (Oct. 18, 2017) ............................................................12

# INTRODUCTION

The Administrative Procedure Act empowers the courts to ensure that agency action is substantively reasonable, reasonably explained, and procedurally sound.  The rescission of DACA is none of these.  As set forth in plaintiffs' opening brief, the Rescission is creating grave harm, right now, as DACA recipients are deciding whether to stay in school, take the next step in their careers, or start families, and as their schools, employers, and communities prepare for the risk that nearly 700,000 people will become subject to removal from American life.  These injuries will escalate until March 5, 2018, when DACA recipients will begin, at the rate of tens of thousands per month, to lose their DACA grants and employment authorizations, and face potential deportation.  The government did not address any of these consequences when it told DACA recipients to "prepare for and arrange their departure from the United States."  *See* App. at 2199-2200.[1]

To inflict so much harm on so many people without any reasoned consideration is the definition of arbitrary and capricious.  The Rescission memorandum contains no policy rationale or analysis, and sets forth only a one-sentence conclusion that does not address any of the relevant factors or even clearly articulate the reason for the decision.

The government now claims that "litigation risk" from the *Texas* DAPA case forced it to rescind DACA.  But the *Texas* DAPA rulings did not relate to DACA, and the *Texas* plaintiffs' letter requesting a "phase out" of DACA did not present a realistic risk of an "abrupt, complete, and court-ordered end to DACA," Opp. 12, as the government now asserts.  It is hard to imagine any court of equity ordering an end to the DACA program more abrupt and disruptive than the Rescission itself.  The record reflects no reasonable litigation risk assessment by defendants, which would have had to address, for example, the differences between DACA and DAPA, the merits of the government's own prior arguments for DACA's legality, and the two-two split among the Fifth Circuit judges regarding the legality of DAPA.  And the government never took the further step of weighing a properly assessed "litigation risk" against

---

[1]    "App." refers to the Appendix of Exhibits submitted with the plaintiffs' motion for provisional relief, Dkt. Nos. 113, 117-19, 121, 124.

the devastating consequences of the Rescission.  The plaintiffs are therefore likely to succeed on the merits of their APA claims.

The irreparable harm, balance of equities, and public interest factors also weigh decisively in favor of provisional relief.  The government will suffer no cognizable harm, whereas in the absence of provisional relief, plaintiffs will suffer grave injury.  The Court should enjoin the Rescission from proceeding and restore the DACA program pending adjudication of the merits.

**PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

The government's unexplained rescission of DACA cannot withstand scrutiny, and therefore plaintiffs are likely to succeed on the merits.[2]

## I.   The Rescission of DACA Is Arbitrary and Capricious.

### A.   Defendants Failed to Adequately Explain the Basis for the Rescission and Cannot Rely On Post Hoc Justifications.

The Rescission does not satisfy the basic requirement that an agency must articulate "a satisfactory explanation for its action" that is "clear enough" for its "path [to be] reasonably discerned." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (citation omitted); *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1049 (9th Cir. 2010) ("Without an adequate explanation, [courts] are precluded from undertaking meaningful judicial review.").  The only explanation provided by the Acting Secretary in the Rescission memorandum is the following: "Taking into consideration the Supreme Court's and Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated." Administrative Record ("AR") 255.  That ambiguous sentence does not meet the APA's requirement of reasoned decision-making.  *See* Opening Br. 17-18; *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action."); *Williams Gas Processing-Gulf Coast Co. v. FERC*, 475 F.3d 319, 328-29 (D.C. Cir. 2006) ("Arbitrary

---

[2]   As explained in plaintiffs' opposition to defendants' motion to dismiss, plaintiffs' claims are justiciable.  *See* Dkt. No. 205, at 4-11.

2

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

and capricious review strictly prohibits us from upholding agency action based only on our best guess as to what reasoning truly motivated it.").

Defendants do not directly defend the Attorney General's legal conclusions that DACA was issued without proper statutory grounding or was an unconstitutional exercise of executive authority. *See* Opp. 16.  Instead, the government now asserts that the Acting Secretary was "[f]aced with the inevitable prospect of an immediate, nationwide injunction against DACA," which caused her to "cho[o]se an orderly wind-down" of a program actively benefitting nearly 700,000 individuals and their families, communities, schools, and employers.  *Id.* at 1.  This rationale was not included in the Rescission memorandum.  Although the memorandum "quoted the Attorney General's view" that "potentially imminent litigation would yield similar results" to the *Texas* DAPA litigation, Opp. 10, it never translates this view into a "litigation risk" rationale for immediately rescinding DACA.  *See, e.g.*, *Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*, 741 F.3d 1309, 1313 (D.C. Cir. 2014) (holding that agency action was unlawful where its "opaque statement" did not explain "*how* it evaluated the cumulative risk [of certain goods] or *why* its evaluation led to the prohibition of one category of similarly situated articles and not the other").  An unreasoned statement that "a factor was considered . . . is not a substitute" for actually considering it.  *Susquehanna Int'l Grp., LLP v. Sec. & Exch. Comm'n*, 866 F.3d 442, 446 (D.C. Cir. 2017) (citation omitted).

The government now asserts an elaborate "basis" for the Rescission—"that maintaining the DACA Policy would, in all likelihood, result in another nationwide injunction plunging the policy, and its nearly 800,000 recipients, into immediate uncertainty."  Opp. 10.  The government cites nothing in the record for this novel "basis"—because the record contains no reference to "litigation risk," a "nationwide injunction" of DACA, or "immediate uncertainty."  The references to the *Texas* litigation do not approach the government's current argument that the Rescission was based on the threat of "an immediate, nationwide injunction against DACA."  Opp. 1.  *See Ctr. for Biological Diversity v. EPA*, 722 F.3d 401, 412 (D.C. Cir. 2013) ("passing references" in the record to a justification "fall far short of satisfying [the agency's] fundamental obligation to set forth the reasons for its actions" (internal quotation marks omitted)).  The government's "post hoc explanations underscore the absence of an adequate explanation in the administrative record itself."  *Locke*, 626 F.3d at 1050.

3

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

As the government notes, plaintiffs have now discerned the government's "litigation risk" rationale from its legal briefs in this case, Opp. 10, but the APA requires the agency to transparently articulate the basis for its decision *at the time it is made*. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). The government's failure to identify a clear and coherent basis in the Rescission memorandum itself is a sufficient basis to set it aside.

B.     **The Government Failed to Consider All Relevant Factors and Provide a Reasoned Explanation for Its Policy Reversal.**

The government does not seriously dispute that the agency failed to consider "the relevant factors" in rescinding DACA, *see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983), which is fatal to its case. Plaintiffs' motion was supported by a rich, detailed record documenting the profound injuries the Rescission inflicts on DACA recipients, their families, employers, employees, schools, and communities. *See* Opening Br. 10-15. For example:

- Nearly 200,000 U.S.-citizen children of DACA recipients face the risk of having a parent deported. Opening Br. 13.

- DACA recipients must make irreversible life and career decisions without knowing whether they will be able to stay in the United States. *See* App. at 267-68 (Garcia Decl. ¶¶ 64, 70); *id.* at 557 (Jimenez Decl. ¶ 45); *id.* at 670-71 (Latthivongskorn Decl. ¶¶ 47-49); *id.* at 1161 (Ramirez Decl. ¶ 52).

- DACA recipients have been prohibited from traveling abroad, depriving them of professional and educational opportunities. *See id.* at 656-57 (Kutz Decl. ¶ 13); *id.* at 875 (Morrill Decl. ¶ 21); *id.* at 1322-23 (Sati Decl. ¶¶ 39-41); *id.* at 1479 (Vazquez-Ramos Decl. ¶¶ 6-7).

- The terrifying consequences of the Rescission have caused DACA recipients to experience anxiety, depression, and fear. *See, e.g., id.* at 2207, Topic 13.

- Colleges and universities have lost students and suffered harm to their educational environments. *See id.* at 512-13 (Holmes-Sullivan Decl. ¶ 18); *id.* at 2207-08, Topic 14; *see also id.* at 2206, Topic 12.

- States and local governments will lose employees who provide important public services. *See id.* at 2209, Topic 18.

- States and local governments will suffer harms to their healthcare services, *see id.* at 2208, Topic 15; child welfare systems, *id.* at 79; and public safety systems, *id.* at 2208, Topic 16.

- The state and national economies will suffer enormous losses. *See id.* at 2208-09, Topics 17, 18; *id.* at 73 (Brannon Decl. ¶¶ 11, 14).

The government did not consider these consequences for the beneficiaries of DACA or anyone

else, let alone provide the substantive evaluation and analysis required by the APA.  Opening Br. 18-19.[3]  Indeed, it *admits* that the Rescission "was not based on any factual findings or particular evidentiary record."  *See* Reply Br. for Pet'rs at 1, *In Re United States of America*, No. 17A570 (2017).

The government's failure to acknowledge the consequences of the Rescission is particularly egregious in light of the significant reliance interests at stake.  *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015) (government must provide special justification "when its prior policy has engendered serious reliance interests that must be taken into account"); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).  The government concedes that an agency must provide a more detailed justification when its prior policy has engendered serious reliance interests, but then blithely asserts that "this is not such a case."  Opp. 15.  As documented in plaintiffs' opening brief, since 2012, DACA has engendered the most profound reliance interests among DACA recipients, their employers, employees, and communities.  *See* Opening Br. 21-22.  The government claims that no such "legally cognizable" reliance interest arose from DACA because the program "was of recent vintage" and could "be revoked in the agency's discretion."  Opp. 16.  This argument is meritless for three reasons.

First, the reliance interests engendered by DACA are vastly greater than those at stake in *Encino Motorcars*—employment contracts for certain employees of automobile dealerships.  *See* Opp. 15-16 (citing 136 S. Ct. at 2126).  The Rescission will of course have significant consequences for employers of DACA recipients, as in *Encino Motorcars*.  *See* Opening Br. 14.  But DACA created even more fundamental reliance interests by promising DACA recipients freedom from the fear of deportation and the ability to work and travel legally, prompting hundreds of thousands of young people to enroll in college, pursue careers, buy homes, start families, and build their lives in the United States.  Opening Br. 7-8, 14-15, 21-22.  These profound reliance interests were the direct result of government statements and inducements, as the government has acknowledged.  For example, in March of this year, then-Secretary Kelly characterized DACA as a "commitment . . . by the government towards the DACA person."  App. at 1841; *see* Pls.' Opp. to Mot. to Dismiss 1-3.

---

[3]     To the extent that the government now improperly claims, after the fact, that the agency did consider the consequences of the Rescission and chose the least injurious option, this position has no support in the record.

5

Second, the government's claim that there can be no legally cognizable reliance interest because the government had discretion to rescind DACA is similarly misplaced.  In *Encino Motorcars*, the Department of Labor was free to reinterpret the Fair Labor Standards Act whenever it wished, but only if it appropriately accounted for the reliance interests its prior position had engendered.  136 S. Ct. at 2125.  The same is true for DHS here.

Third, although defendants quibble over whether DACA is a "longstanding" policy, Opp. 16, there is no question that, in its half-decade on the books, DACA has engendered "serious reliance interests."  *Fox*, 556 U.S. at 515; *see also Smiley v. Citibank (S.D.), N. A.*, 517 U.S. 735, 742 (1996).  Reliance interests may become "serious" with the passage of time as in *Encino Motorcars*, or, as with DACA, because people have structured their lives around a government promise.  *See Inland Empire-Immigrant Youth Collective v. Duke*, Case No. 17-2048 (PSG), 2017 WL 5900061, at *7 (C.D. Cal. Nov. 20, 2017) ("Such an arbitrary and unexplained decision fails to address Plaintiff's substantial reliance [on DACA], which also runs counter to the Supreme Court's mandate." (citing *Fox*, 556 U.S. at 515)).  To ignore such interests is arbitrary and capricious.

## C.   The Government's Assertion of "Litigation Risk" Does Not Support the Rescission.

The government says that it had to rescind DACA because it was "[f]aced with the inevitable prospect of an immediate, nationwide injunction against DACA."  Opp. 1.  The government characterizes this hypothetical injunction as a "near-certainty," *id*.; a "virtual certainty," *id*. at 9; "inevitable [and] unavoidable," *id*. at 12; and an outcome that would have been "quixotic" to oppose, *id*.  The government's hypothetical "litigation risk" cannot support the Rescission because (1) litigation risk is not a sufficient standalone basis for agency action; (2) the *Texas* plaintiffs had not even threatened to seek an immediate injunction; and (3) an abrupt injunction was far from inevitable.

### 1.   Litigation Risk Is Not a Valid Basis for Rescinding DACA.

The government asserts that the *Texas* plaintiffs' threat to sue over DACA required the government to rescind the program wholesale.  But the mere prospect of litigation cannot be a reasonable basis on which to rescind a policy that has profound implications for the lives of hundreds of thousands of people.  Indeed, if the government could terminate a policy based merely on speculation

6

that it might lose a court case—regardless of the actual soundness or legality of the policy—the abolition of virtually any agency action could be justified, and APA review would be meaningless.  *Cf. Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015) ("If an agency could engage in rescission by concession, the doctrine requiring agencies to give reasons before they rescind rules would be a dead letter.").

For this reason, courts have repeatedly rejected "litigation risk" rationales under arbitrary-and-capricious review.  In *Organized Village of Kake v. USDA*, 795 F.3d 956 (9th Cir. 2015) (en banc), the Ninth Circuit rejected the Department of Agriculture's assertion that "litigation over the last two years" justified a reversal of a policy, given that the policy change had itself prompted litigation.  *Id.* at 970 ("At most, the Department deliberately traded one lawsuit for another.").  Although the government notes that the litigation terrain was different in *Kake* than here, the holding of *Kake* was straightforward—that an agency cannot assert "litigation risk" to justify a policy that will, like the Rescission, inevitably lead to litigation.  *Id.  California ex rel. Lockyer v. USDA*, 459 F. Supp. 2d 874 (N.D. Cal. 2006) (Laporte, M.J.), likewise evaluated the government's abandonment of a prior position, without an evaluation of the policy merits, because of litigation.  *Id.* at 879, 904.  *Lockyer* set aside the rule at issue, explaining that "legal uncertainty alone [is not] a sufficient justification" for agency action.

The government cites *Ricci v. DeStefano*, 557 U.S. 557 (2009), as its only case supposedly deferring to an agency's "litigation risk" assessment.  *See* Opp. 20.  *Ricci* was a Title VII case concerning whether a city-as-employer could vacate its firefighter examination results based on their discriminatory impact on minority applicants.  This non-APA case has nothing to do with the APA standard or the circumstances here, and in any event held that "[f]ear of litigation alone" could not justify the city's actions in that case.  *Ricci*, 557 U.S. at 592.

### 2.    Agency Action Cannot Rest on Speculation.

Courts "may not uphold agency action based on speculation" and should not "defer to an agency's 'conclusory or unsupported suppositions.'"  *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013).

7

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

Although the government now claims the Rescission headed off an "abrupt, complete, and court-ordered end to DACA," Opp. 12, the letter from the *Texas* plaintiffs that forms the sole basis for this supposition did not threaten such a result.  It requested only that DHS "phase out the DACA program," disclaimed any request that the government "immediately rescind DACA . . . permits that have already been issued," and threatened only that the "the complaint in [*Texas*] will be amended to challenge [] the DACA program."  AR 239.

Thus, the government's decision cannot be justified by reference to the materials in the administrative record.  Instead, it rests entirely upon the government's unstated assumptions that (i) the *Texas* plaintiffs would have followed through on their threat to sue over DACA; (ii) the case would be heard by the same courts and in the same posture as DAPA; (iii) it would be impossible for the government to successfully defend DACA; (iv) the *Texas* plaintiffs would disavow their letter and seek an abrupt injunction; and (v) a court of equity would summarily subject 700,000 people to the risk of immediate deportation and the appellate courts would uphold such a ruling.  This hypothetical chain of events is pure speculation, unsupported by reasoned analysis, or anything in the record.  *Horsehead Res. Dev. Co. v. Browner*, 16 F.3d 1246, 1269 (D.C. Cir. 1994) ("[S]peculation is an inadequate replacement for the agency's duty to undertake an examination of the relevant data and reasoned analysis.").

### 3. It Was Not "Inevitable" that DACA Would Be Enjoined.

Any reasonable litigation risk assessment would have concluded that DACA was not subject to an "inevitable" injunction.

**DACA is legal.**  As explained in plaintiffs' opening brief, DACA would have survived legal challenge because it is a lawful exercise of DHS's well-established enforcement discretion, conferred by Congress, and is firmly rooted in law and historical practice stretching back for more than half a century.  *See* Opening Br. 22-26.  The government concedes that "DHS and the former INS have adopted more than 20 such [deferred action] policies over the past 50 years" and that Congress and the Supreme Court have recognized deferred action as a lawful exercise in administrative discretion.  Opp. 2-3; *see also* Opening Br. 4-6.  To the extent the Rescission depends on a conclusion that DACA is illegal, that

conclusion is wrong.  Tellingly, the government's brief does not even try to assert that DACA is actually unlawful.

**The *Texas* plaintiffs might not have brought or sustained a lawsuit.**  The government never evaluated whether the *Texas* plaintiffs would have actually followed through with their threatened challenge to DACA.  The letter threatening to do so was part of a series of oral and written communications between the states and the federal government about the program.  *See* App. at 2033-34 (*Batalla Vidal* Interrogatory Response).  The government has withheld the contents of these communications from the administrative record and cannot rely on the letter alone to assert that a lawsuit against DACA was inevitable.

Moreover, the *Texas* plaintiffs would have faced a significant laches defense against any challenge to DACA.  Laches applies where a plaintiff has "slept upon his rights . . . , and especially if the delay has been prejudicial to the defendant, or to the rights of other persons."  *Chapman v. Cty. of Douglas*, 107 U.S. 348, 355 (1883); *see also Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 708 (5th Cir. 1994) ("Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights.") (citation omitted); *Abbott Labs., Inc. v. Gardner*, 387 U.S. 136, 155 (1967) (approving of laches in APA context).  By waiting more than five years to challenge DACA, and having pursued only a challenge to the later-arising DAPA program, the *Texas* plaintiffs slept on any rights they had, to the obvious prejudice of DACA recipients who relied on the program.

**A preliminary injunction was unlikely.**  Even if the *Texas* plaintiffs had decided to sue and had sought an early injunction—the record contains no such threat—they would have needed to establish a likelihood of success on the merits, a threat of irreparable harm, and a balance of equities tipping in their favor, then show that the grant of an injunction would serve the public interest.  It is far from "certain" that they could have made this showing.

The *Texas* plaintiffs would not have been able to establish a likelihood of success on the merits.  DACA was a lawful exercise of DHS's prosecutorial discretion, as the appellate courts had strongly indicated.  *See, e.g.*, *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 962, 967-68 (9th Cir. 2017) ("DACA . . . is consistent with the Supreme Court's ruling that the federal government 'has broad, undoubted power over the subject of immigration and the status of aliens' under the Constitution.");

9

*Arpaio v. Obama*, 797 F.3d 11, 16-17 (D.C. Cir. 2015) (noting that DACA recipients are subject to "individualized review" in DHS's discretion).  The Fifth Circuit itself—in a ruling that predates the *Texas* decisions—strongly implied that DACA was a legal exercise of discretion, finding that "DACA permits, on a case-by-case basis, deferred action on the removal of undocumented aliens . . . .  DHS does not guarantee that relief will be granted in all cases."  *Crane v. Johnson*, 783 F.3d 244, 248 (5th Cir. 2015); *see also Texas v. United States* ("*Texas I*"), 787 F.3d 733, 773 (5th Cir. 2015) (Higginson, J., dissenting) ("in *Crane*, this court held that the DHS memorandum [establishing DACA] does not preclude the agency's exercise of enforcement discretion"); *Texas v. United States* ("*Texas II*"), 809 F.3d 134, 203-04 (5th Cir. 2015) (King, J., dissenting) (similar).

The government ignores these precedents discussing DACA, relying instead on the Fifth Circuit's DAPA cases.  But the DAPA decisions are distinguishable on the facts and the law.  Opening Br. 24-26.  Moreover, because *Texas* did not address DACA and because *Texas* was the product of an interlocutory appeal from a preliminary injunction, its findings would not have bound any subsequent court and do not bind this Court.

There is no reason to assume the Fifth Circuit would have ruled the same way on DACA as it did on DAPA.  Of the four Fifth Circuit judges to evaluate the legality of DAPA in *Texas I* and *Texas II*, two would have upheld the legality of DAPA.  *See Texas II*, 809 F.3d at 188-219 (King, J., dissenting); *Texas I*, 787 F.3d at 769-84 (Higginson, J., dissenting).  Three Fifth Circuit judges (including Judge King) concluded in *Crane* that DACA was a (presumptively lawful) exercise of discretion.  The Supreme Court's non-precedential 4-4 affirmance of *Texas* likewise could not foretell the outcome for DACA, both because it was the judgment of an equally divided court and because it concerned a different program with a different set of equities.

With the outcome on the merits far from certain, the irreparable harm, balance of hardships, and public interest factors all would have swung decisively against enjoining DACA.  Central to the *Texas* court's injunction of the DAPA program was its conclusion that "legalizing the presence of millions of people [through DAPA] is a 'virtually irreversible' action once taken" and that if DAPA went into effect, it would be "difficult or even impossible for anyone to 'unscramble the egg.'"  *Texas*, 86 F. Supp. 3d at 673.  Those concerns would point in the opposite direction with DACA, where the court would be

asked to reverse what it had just deemed to be "virtually irreversible."  Unlike DAPA, which was being

reviewed prior to implementation, DACA has been in effect for five years and engendered profound

reliance by nearly 700,000 people.  This reality would have factored heavily in the balancing of

hardships and public interest analysis, and would have weighed overwhelmingly against "an abrupt,

complete, and court-ordered end to DACA."  Opp. 12.

**A preliminary injunction would have been no worse than the Rescission.**  If the *Texas*

plaintiffs had shown entitlement to a preliminary injunction, "an abrupt, complete, and court-ordered

end to DACA" still would not necessarily have followed.  Given the scope of DACA, the reliance

interests it created, and the profound damage an abrupt injunction would cause, a court sitting in equity

would have been compelled to fashion a more orderly, less disruptive preliminary remedy.  *See*

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("The essence of equity jurisdiction has been

the power of the [court] to do equity and to mold each decree to the necessities of the particular case.").

Courts have routinely declined to issue abrupt injunctions of even unlawful government programs.  *See,*

*e.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 605 (1999) (concluding that state's treatment of

institutionalized persons was unlawful, but allowing the government time to develop and implement a

replacement program); *Reynolds v. Sims*, 377 U.S. 533, 586 (1964) (recognizing that the remedy for an

unconstitutional legislative apportionment scheme should be timed to avoid a disruption of the election

process).  It is hard to imagine that an injunction issued by a court of equity could have been more

abrupt or cruel than the government's shut-down of DACA, which immediately banned overseas travel,

allowed no exceptions or discretion, and instructed DACA recipients to "prepare for and arrange their

departure from the United States."  App. at 2199-2200.

**Litigation risk could have been mitigated by changes to DACA.**  Even if an injunction could

have issued, it would be unreasonable for the government to rescind DACA in its entirety without

considering reasonable alternatives.  *See State Farm*, 463 U.S. at 48 ("At the very least this alternative

way of achieving the objectives of the Act should have been addressed and adequate reasons given for

its abandonment"); *Mt. Diablo Hosp. v. Shalala*, 3 F.3d 1226, 1232 (9th Cir. 1993); *Am. Gas Ass'n v.*

*FERC*, 593 F.3d 14, 19 (D.C. Cir. 2010).  The government paints its decision as a binary choice whether

to "wind the program down in an orderly fashion" or "allow the judiciary to potentially shut the program

11

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

down completely and immediately."  Opp. 10.  But because the alleged infirmity with DACA was that it did not include sufficient case-by-case discretion, even Attorney General Sessions has conceded that this could be addressed short of rescission.  *See Oversight of the U.S. Department of Justice: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (Oct. 18, 2017) (testimony of Jefferson B. Sessions III, Att'y Gen. of the United States), *available at* goo.gl/2HbQ81 (noting that the Office of Legal Counsel concluded that "a DACA program might be legal if it was done on an individualized basis"); AR 21 n.8 (Office of Legal Counsel expressing its "preliminary view" that DACA "would be permissible, provided that immigration officials retained discretion to evaluate each application on an individualized basis"). Any threat of injunction therefore could have been avoided by adjusting the program, but defendants never considered this much less harmful approach.  *State Farm*, 463 U.S. at 48 (setting aside agency action because "at the very least [an] alternative way of achieving the objectives of the [agency] should have been addressed and adequate reasons given for its abandonment").

**The government's contradictions undermine its "litigation risk" position.**  The government's wildly inconsistent approach to the arguments in *Texas* further undermines its assertion of "litigation risk."  The government asserts a host of defenses in this case, but cowers before "litigation risk" from the *Texas* case that could exist only if those defenses were rejected:

- The government contends that the Rescission was an unreviewable act of agency discretion, yet if that were true, then DACA would have been unreviewable, and the threatened litigation would have posed no risk.  Opp. 9.

- The government contends that the states and local governments lack standing to sue, yet there could be "litigation risk" only if the *Texas* courts rejected similar arguments and allowed the states opposing DACA to bring their case.  Defs.' Mot. to Dismiss 20-22.

- The government contends that "DHS and its predecessor, the INS, have exercised their enforcement discretion through the use of deferred action and similar policies dozens of times over more than half a century," *id.* at 27-28, yet argues that it was "inevitable" that absent the Rescission, the Supreme Court would conclude that this familiar exercise of prosecutorial discretion was unlawful.  Opp. 1.

- The government contends that the Rescission did not need to go through notice-and-comment rulemaking, yet argues that it was inevitable that DACA would be found to be subject to notice-and-comment.  *Id.* at 18.

The government's repeated contradictions undermine any suggestion of a reasoned decision-making process.  Indeed, the government's inability to maintain a consistent position is a strong indication that "litigation risk" is a pretext.

### D.     The Stated Reasons for the Rescission Are Pretextual.

The contradictions, logical flaws, and inconsistencies in the Rescission make clear that the government's stated reasons are not its true reasons.  Plaintiffs' opening brief describes statements and actions of DHS, DOJ, and the White House establishing that the government's public rationales for the Rescission are pretextual, and that the true reason for the Rescission was to use DACA as a bargaining chip to obtain harsh anti-immigration legislation.  Opening Br. 29-30.  By conditioning a DACA solution on a broad agenda of extreme and controversial measures—a point the government's brief conspicuously fails to address—the government revealed its true intent in rescinding DACA.

The government seems to assert that so long as it can muster one plausible basis for the decision, it can hide a governing "additional motive."  Opp. 23.  To the contrary, the relevant inquiry is whether DHS revealed its true reason in the Rescission memorandum itself.  *See Chenery*, 318 U.S. at 94; *see also Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986); *cf. Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004).  Post hoc rationalizations obscuring the true motivation cannot support agency action.

The government chastises plaintiffs for relying on extra-record material, such as the testimony of the author of the Rescission memorandum that a policy of acting on the basis of "litigation risk" would be the "craziest policy you could ever have."  *See* Opp. 24.  But comments of agency officials are often relevant in assessing the reasonableness of an agency's action, and allegations of "bad faith or improper behavior" are *exactly* the grounds on which extra-record material must be examined.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *ITT World Commc'ns, Inc. v. FCC*, 699 F.2d 1219, 1247 (D.C. Cir. 1983), *rev'd on other grounds*, 466 U.S. 463 (1984) (observing that one of "several additional 'danger signals' suggest[ing] that the Commission may not have engaged in 'reasoned decision-making'" was a "number of statements by agency officials," including the Commission's general counsel, "that would appear to contradict the Commission's characterization").  Although the government claims that the Acting Secretary herself did not shift her position over time, Opp. 22, this is belied by the record.  The Acting Secretary masked the basis for the Rescission through a vague and conclusory memorandum.  Then, in this litigation, she created a strawman out of the *Texas* litigation, Opp. 1, wrongly claiming that an abrupt, disruptive preliminary injunction was "inevitable,"

13

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

1    even though no such relief had been sought or even threatened.  She has now filed a brief that, in its

2    contorted efforts to defend "litigation risk" as the sole rationale for the Rescission, underscores that

3    something else is going on.  *See Hernandez*, 362 F.3d at 569 (conflicting explanations may serve as

4    evidence of pretext); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (same).[4]  Plaintiffs

5    respectfully request that the Court find that the reasons for the Rescission were pretextual, thereby

6    permitting supplementation of the administrative record to reveal the government's true motives.

7    **II.    The Rescission Should Be Vacated Because It Is a Substantive Rule that Did Not Comply
            with the APA's Notice-and-Comment Requirements.**

8           The Rescission is also unlawful because it is a substantive rule subject to the APA's notice-and-

9    comment requirements.  The Rescission memorandum directs DHS officials to reject all DACA

10   applications and renewals submitted after the bar dates—without a case-by-case assessment of whether

11   such applicants merit deferred action—and to deny all advance parole applications from DACA

12   recipients.  Because the Rescission establishes a "binding norm," DHS was required to comply with the

13   APA's notice-and-comment procedures.  *See Municipality of Anchorage v. United States*, 980 F.2d

14   1320, 1324-25 (9th Cir. 1992).

15          The government cherry-picks a line from the Rescission memorandum saying that "pending and

16   future requests will be 'adjudicate[d] on an individual, case-by-case basis'" to argue that the Rescission

17   is non-mandatory.  Opp. 28 (quoting AR 255).  But this "case-by-case" adjudication applies *only* to

18   initial DACA applications submitted by September 5, 2017, or certain renewal DACA applications

19   submitted by October 5, 2017.  AR 255.  After those dates, there is no case-by-case adjudication, but

20   rather a blanket rejection of all DACA applications.

21          Furthermore, the government fails to explain how a ban on advance parole applications from

22   current DACA recipients is just a policy and not a substantive rule.  Indeed, the government does not

23   deny that DHS officials now lack the discretion to approve such advance parole applications.  Opp. 29-

24   30; App. at 1322-23 (Sati Decl. ¶¶ 40-41).  *See Anchorage*, 980 F.2d at 1324 (the "critical factor" in

25

26   _____

27   [4]      The nonsensical references to crime and problems at the southern border at the Attorney
     General's press conference announcing the Rescission, Opening Br. 9-10, further indicate that the

28   Rescission is based on improper motivations.

evaluating the substantive nature of an agency action is "the extent to which the challenged [action] leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case" (internal citation omitted)).

The government cites *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006 (9th Cir. 1987), but that case makes clear that the Rescission is a binding rule because it "effectively replac[ed] agency discretion with a new binding rule of substantive law," *id.* at 1014.  The "critical factor" in assessing whether agency action is a rule or policy is "the extent to which the challenged [directive] leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case." *Id.* at 1013; *see also id.* at 1012 n.6 (observing that "not *all* INS operating instructions would qualify" as non-binding policies and determination must be made on a "rule-by-rule basis").  The operating instruction at issue in *Mada-Luna* "le[ft] the district director free to consider the individual facts in each case" and led him to consider the request for deferred action in that case.  *Id.* at 1017 (citation omitted).  By contrast, DHS officials cannot disregard the Rescission.

The government makes a slippery slope argument that requiring notice-and-comment for the Rescission will jeopardize a host of prosecutorial enforcement policies.  The same argument was advanced in the *Texas* litigation, *see* Br. of United States, *Texas v. United States*, 136 S. Ct. 2271 (2016) (No. 15-674), 2016 WL 836758, at *70, but the Fifth Circuit's holding that DAPA needed notice-and-comment has not led to a cascade of challenges to enforcement policies.  Such policies often fall within one of the many exemptions to notice-and-comment under the APA, including the exemption for "rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(A), whose "distinctive purpose" is "to ensure that agencies retain latitude in organizing their internal operations."  *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987); *United States v. Am. Prod. Indus., Inc.*, 58 F.3d 404, 407 (9th Cir. 1995) (holding that DOJ regulations regarding settlement authority were "aimed at agency organization").

The examples cited by the government undercut its slippery slope argument.  The Attorney General's memorandum to federal prosecutors stating that prosecutors "*should* charge and pursue the most serious, readily provable offense," Mem. from Att'y Gen. to All Federal Prosecutors (May 10, 2017), https://goo.gl/hzm7eA (emphasis added), unlike the Rescission, permits case-by-case discretion,

15

allowing a prosecutor, in "good judgment," to diverge from the policy with approval on a case-by-case basis. Similarly, the government does not argue that the "passive enforcement policy" in *Wayte v. United States*, 470 U.S. 598 (1985), prohibited prosecutors from charging those who did not self-report. The Rescission grants DHS officials no such leeway to continue adjudicating DACA applications.

The government argues that if the Rescission required notice-and-comment, then DACA itself did too, and so would be "void ab initio." Opp. 30. Not so. First, whether DACA needed notice-and-comment is not at issue in this case. Second, the Rescission and DACA are not parallel in this regard. The Rescission declares DACA unlawful and *forbids* discretion, whereas DACA was an *exercise* of prosecutorial discretion, implemented through individual case-by-case judgments, just like numerous other deferred action programs created without notice-and-comment. *See* Opening Br. 4-5. Accordingly, under *Mada-Luna*, the initiation of DACA did not require notice-and-comment. 813 F.2d at 1013.

Third, courts have regularly rejected the government's argument. *Mada-Luna* observed that even if there were a failure to use notice-and-comment in promulgating a rule, that does not insulate the agency from claims that the repeal of the rule needs notice and comment. 813 F.2d at 1017 n.12. In *Consumer Energy Council v. FERC*, 673 F.2d 425 (D.C. Cir. 1982), the agency revoked a rule without notice-and-comment because it found the rule to be procedurally defective. *Id.* at 445-447, 479 & n.79. The court set aside the revocation, holding that notice-and-comment was necessary for the repeal. *Id.*; *see also Benten v. Kessler*, 799 F. Supp. 281, 289 (E.D.N.Y. 1992) ("The fact that the inception of a program was procedurally faulty or without specific congressional authorization . . . has no effect on the applicability of the notice and comment requirement to its termination."); *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 26 (D.D.C. 2013) ("[O]rdinarily an agency rule may not be repealed unless certain procedures, including public notice and comment, are followed, and that this is true even where the rule at issue may be defective.").

Finally, even if a court found that DACA required notice-and-comment, the program would not be rendered "void ab initio"; instead, given the serious reliance interests at issue, the proper remedy would be a remand to DHS to comply with notice and comment procedures. *See Idaho Farm Bureau*

16

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

*Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("[W]hen equity demands, the regulation can be left in place while the agency follows the necessary procedures." (citation omitted)).

### PLAINTIFFS SATISFY THE REMAINING REQUIREMENTS FOR INJUNCTIVE RELIEF

## I.   Plaintiffs Have Demonstrated that They Are Suffering and Will Continue to Suffer Irreparable Harm if the Court Does Not Grant Provisional Relief.

Defendants ignore plaintiffs' evidence detailing how the Rescission is *already* (1) inflicting devastating consequences on DACA recipients' personal, professional, and economic welfare, *see* Opening Br. 11-13, 34-35; (2) causing damage to the economies of the plaintiff states and local governments, *see id.* 13-15, 35; (3) diminishing the University of California's ability to carry out its educational mission, *see id.* 13, 35; and (4) causing serious emotional harm to the individual plaintiffs and DACA-recipient university students, *see id.* 11, 34-35.  Courts routinely issue preliminary injunctions based on such showings.  *See, e.g.*, *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (irreparable harm caused by limiting professional opportunities); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("ongoing harms to their organizational missions"); *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 709-10, 712 (9th Cir. 1988) (emotional injury); *cf. Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("harm[ to] the States' university employees and students").  Accordingly, plaintiffs have amply established that the requisite "irreparable harms are likely to occur."  *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 804 F. Supp. 2d 1045, 1054 (E.D. Cal. 2011); *see also* Opening Br. 32-33.  Indeed, they have already begun.

Defendants' arguments boil down to the proposition that because the requested preliminary injunction could not *by itself* ameliorate the full extent of these harms, this Court is barred from entering it.  *See* Opp. 33-35; *id.* at 34 ("[t]he requested injunction would provide only temporary, short-term relief . . . only a permanent *legislative* fix would provide DACA recipients with the security they seek").  That is nonsense.  Provisional relief will maintain the status quo and ameliorate plaintiffs' harms until final judgment; and a permanent injunction following judgment will ameliorate their harms thereafter.  To obtain a preliminary injunction preserving the status quo, plaintiffs need only show that some "irreparable injury is *likely* in the absence of an injunction," *Winter v. NRDC*, 555 U.S. 7, 22 (2008) (citation omitted), and that the government's actions—*i.e.*, the Rescission—are the source of the harm,

17

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

*M.R. v. Dreyfus*, 697 F.3d 706 (9th Cir. 2012).  Plaintiffs readily meet this standard.  *See* Opening Br. 10-15; *see also* App. at 2204-10, Topics 7-24.[5]

Defendants' remaining argument that the window for evaluating the likelihood of irreparable harm is *limited* to between now and March 5, 2018 is flatly wrong.  *See* Opp. 33.  As the government acknowledges, a preliminary injunction "preserve[s] the status quo *pending a determination of the action on the merits*."  *Chalk*, 840 F.2d at 704 (emphasis added).  Although this Court has stated an intention to reach the merits by March 5, its ability to do so is not a foregone conclusion.  The government's tactics in delaying completion of the administrative record, blocking discovery, requesting stays, and filing mandamus petitions cast doubt on whether a final determination on the merits, informed by a complete administrative record, can be achieved by March 5.  Accordingly, the Court may look at the robust evidence that plaintiffs have produced regarding the irreparable harms that are likely to occur after March 5, 2018—none of which the government disputes—in addition to the irreparable harms that will accrue before then.

## II.     The Balance of Hardships and the Public Interest Weigh in Plaintiffs' Favor.

The government does not dispute that DACA recipients are integral members of our society, contributing to their families, schools, employers, and communities, or that an injunction will further public health and safety.  Nor does the government dispute that an injunction will stem a dramatic loss of economic activity that would result from the Rescission.

The government's only response to the balance of equities and public interest factors is that an injunction would supposedly "frustrate and displace both the Secretary's substantive judgment as to how her prosecutorial discretion should be exercised, as well as her further judgment as to how best to transition between policies."  *See* Opp. 35-36.  But such an assertion of "institutional injury" is just an argument that the government thinks it should win on the merits.  *See Washington*, 847 F.3d at 1168.  If the Secretary exceeded her powers by exercising her "substantive judgment" in violation of the APA,

---

[5]     The government appears (Opp. 33) to rely on the elevated standards applicable to mandatory injunctions that alter the status quo and "order[] a responsible party to take action," but plaintiffs merely seek an injunction to "prohibit enforcement of a new law or policy" and thereby "preserve[] the status quo pending a determination of the merits."  *Ariz. Dream Act Coalition*, 757 F.3d at 1061.

18

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL RELIEF
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

then her asserted "institutional injury" carries no weight.  Accordingly, the government has not refuted plaintiffs' strong showing that both the balance of the equities and the public interest favor provisional relief.  *See* Opening Br. 36-37.

## NATIONWIDE INJUNCTIVE RELIEF IS APPROPRIATE

This Court undoubtedly has power to issue a nationwide injunction.  *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunction's scope "is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class"); *see also* Pls.' Opp. to Mot. to Dismiss 40 (discussing scope of injunctive relief).  Indeed, in the *Texas* DAPA litigation, the Fifth Circuit held that uniform application of the immigration laws justified a nationwide injunction even though plaintiffs in that case had not established nationwide injury.  *Texas II*, 809 F.3d at 187-88.  A nationwide injunction is even more appropriate here in light of the nationwide injury to nearly 700,000 DACA recipients, their families, employers, and communities.  The Ninth Circuit reached just such an outcome in affirming nationwide provisional relief blocking the government's initial version of the travel ban.  *Washington*, 847 F.3d at 1166-67; *see also, e.g.*, *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).  The government ignores these decisions, and *Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987), which the government cites, Opp. 37, is not to the contrary.  In that case, the Ninth Circuit observed that "[t]here is no general requirement that an injunction affect only the parties in the suit," 843 F.2d at 1169, and affirmed a nationwide injunction against a federal agency.  *Id.* at 1171.

## CONCLUSION

For the foregoing reasons and those explained in plaintiffs' opening brief, this Court should enjoin defendants from proceeding with the Rescission and should award provisional relief directing the government to restore the DACA program pending adjudication on the merits.

Dated: December 8, 2017

Respectfully submitted,

COVINGTON & BURLING LLP

/s/ Jeffrey M. Davidson
Jeffrey M. Davidson (SBN 248620)
Alan Bersin (SBN 63874)
One Front Street, 35th Floor
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: jdavidson@cov.com

Lanny A. Breuer (*pro hac vice*)
Mark H. Lynch (*pro hac vice*)
Alexander A. Berengaut (*pro hac vice*)
Megan A. Crowley (*pro hac vice*)
Ashley Anguas Nyquist (*pro hac vice*)
Jonathan Y. Mincer (Bar No. 298795)
Ivano M. Ventresca (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
E-mail: lbreuer@cov.com, mlynch@cov.com,
aberengaut@cov.com, mcrowley@cov.com,
anyquist@cov.com, jmincer@cov.com,
iventresca@cov.com

Mónica Ramírez Almadani (SBN 234893)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: mralmadani@cov.com

Erika Douglas (SBN 314531)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: edouglas@cov.com

XAVIER BECERRA
Attorney General of California
MICHAEL L. NEWMAN
Supervising Deputy Attorney General

/s/ James F. Zahradka II
JAMES F. ZAHRADKA II (SBN 196822)
Deputy Attorney General

CHRISTINE CHUANG
REBEKAH A. FRETZ
RONALD H. LEE
KATHLEEN VERMAZEN RADEZ
SHUBHRA SHIVPURI
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1247

*Attorneys for Plaintiff State of California*

JANET T. MILLS
Attorney General of Maine
SUSAN P. HERMAN (*pro hac vice*)
Deputy Attorney General
6 State House Station
Augusta, Maine 04333
Telephone: (207) 626-8814
Email: susan.herman@maine.gov

*Attorneys for Plaintiff State of Maine*

BRIAN E. FROSH
Attorney General of Maryland
STEVEN M. SULLIVAN (*pro hac vice*)
Solicitor General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Telephone: (410) 576-6325
Email: ssullivan@oag.state.md.us

*Attorneys for Plaintiff State of Maryland*

Charles F. Robinson (SBN 113197)
Margaret Wu (Bar No. 184167)
Julia M. C. Friedlander (SBN 165767)
Sonya Sanchez (SBN 247541)
Norman Hamill (SBN 154272)
Harpreet Chahal (SBN 233268)
Michael Troncoso (SBN 221180)
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200
Telephone: (510) 987-9800
Facsimile: (510) 987-9757
Email: charles.robinson@ucop.edu

*Attorneys for Plaintiffs The Regents of the
University of California and Janet Napolitano,
in her official capacity as President of the
University of California*

LORI SWANSON
Attorney General State of Minnesota
JULIANNA F. PASSE (*pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
Telephone: (651) 757-1136
Email: julianna.passe@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

GIBSON, DUNN & CRUTCHER LLP

/s/ Theodore J. Boutrous, Jr.

THEODORE J. BOUTROUS, JR., SBN 132099
tboutrous@gibsondunn.com
KATHERINE M. MARQUART, SBN 248043
kmarquart@gibsondunn.com
JESSE S. GABRIEL, SBN 263137
jgabriel@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

ETHAN D. DETTMER, SBN 196046
edettmer@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

COTCHETT, PITRE & McCARTHY, LLP
OFFICE OF THE CITY ATTORNEY

/s/ Justin T. Berger

JOSEPH W. COTCHETT, SBN 36324
jcotchett@cpmlegal.com
JUSTIN T. BERGER, SBN 250346
jberger@cpmlegal.com
BRIAN DANITZ, SBN 247403
bdanitz@cpmlegal.com
TAMARAH P. PREVOST, SBN 313422
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

RICHARD DOYLE (SBN 88625)
NORA FRIMANN (SBN 93249)
OFFICE OF THE CITY ATTORNEY
200 East Santa Clara Street, 16th Floor
San José, California 95113
Telephone: (408) 535-1900
Facsimile: (408) 998-3131
Email Address: cao.main@sanJoséca.gov

*Attorneys for Plaintiff City of San Jose*

PUBLIC COUNSEL
MARK D. ROSENBAUM, SBN 59940
mrosenbaum@publiccounsel.org
JUDY LONDON, SBN 149431
jlondon@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

BARRERA LEGAL GROUP, PLLC
LUIS CORTES ROMERO, SBN 310852
lcortes@barreralegal.com
19309 68th Avenue South, Suite R102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591

LAURENCE H. TRIBE, SBN 39441
larry@tribelaw.com Harvard Law School
*Affiliation for identification purposes only
1575 Massachusetts Avenue
Cambridge, MA 02138
Telephone: (617) 495-1767

ERWIN CHEMERINSKY, *pro hac vice*
forthcoming
echemerinsky@law.berkeley.edu
University of California, Berkeley School of
Law
*Affiliation for identification purposes only
215 Boalt Hall
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

LEAH M. LITMAN, *pro hac vice*
forthcoming llitman@law.uci.edu
University of California, Irvine School of Law
*Affiliation for identification purposes only
401 East Peltason Drive Irvine, CA 92697
Telephone: (949) 824-7722

*Attorneys for Plaintiffs DULCE GARCIA,
MIRIAM GONZALEZ AVILA, SAUL
JIMENEZ SUAREZ, VIRIDIANA CHABOLLA
MENDOZA, NORMA RAMIREZ, and JIRAYUT
LATTHIVONGSKORN*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ James R. Williams

JAMES R. WILLIAMS, County Counsel
GRETA S. HANSEN
LAURA S. TRICE
laura.trice@cco.sccgov.org
MARCELO QUIÑONES
marcelo.quinones@cco.sccgov.org
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street
East Wing, Ninth Floor
San Jose, CA 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

*Attorneys for Plaintiff COUNTY OF SANTA
CLARA*

/s/ Eric P. Brown

JONATHAN WEISSGLASS
jweissglass@altber.com
STACEY M. LEYTON
sleyton@altber.com
ERIC P. BROWN
ebrown@altber.com
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151

*Attorneys for Plaintiffs COUNTY OF SANTA
CLARA AND SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 521*

## ATTESTATION

I, Jeffrey M. Davidson, hereby attest, pursuant to Civil L.R. 5-1, that I have received authorization to electronically sign and file this document from each of the persons identified in the signature block.

Dated: December 8, 2017

/s/ Jeffrey M. Davidson
Jeffrey M. Davidson

*Counsel for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California*