IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and KIRSTJEN NIELSEN, in her official capacity as Secretary of the Department of Homeland Security,<br><br>Defendants. | No. C 17-05211 WHA<br>No. C 17-05235 WHA<br>No. C 17-05329 WHA<br>No. C 17-05380 WHA<br>No. C 17-05813 WHA<br><br>**RENEWED ORDER TO COMPLETE THE ADMINISTRATIVE RECORD** |

**INTRODUCTION**

In these challenges to the government's rescission of the Deferred Action for Childhood Arrivals program, this order narrows a prior order directing the government to complete the administrative record.

**STATEMENT**

The facts underlying these actions are discussed in more detail in prior orders (*see, e.g.*, Dkt. No. 234). In brief, these five lawsuits challenge the Acting Secretary of the Department of Homeland Security's decision in September 2017 to terminate a deferred action policy known as Deferred Action for Childhood Arrivals.

Pursuant to their own stipulation, defendants filed an administrative record on October 6, 2017, consisting of fourteen documents received by the Acting Secretary. These documents spanned 256 pages, all of which were already public. All other DACA materials actually received by the Acting Secretary were withheld based on "deliberative process" and other privileges. Plaintiffs immediately moved to require completion of the administrative record, seeking all materials considered "directly or indirectly" by the Acting Secretary in reaching her decision to rescind DACA. Plaintiffs' motion was granted in part and denied in part on October 17 (Dkt. Nos. 64, 65, 79).[1]

The October 17 order directed defendants to complete the administrative record by adding to it all emails, letters, memoranda, notes, media items, opinions and other materials directly or indirectly considered in the final agency decision to rescind DACA, to the following extent:

1. All materials actually seen or considered, however briefly, by the Acting Secretary in connection with the potential or actual decision to rescind DACA;

2. All DACA-related materials considered by persons (anywhere in the government) who thereafter provided the Acting Secretary with written advice or input regarding the actual or potential rescission of DACA;

3. All DACA-related materials considered by persons (anywhere in the government) who thereafter provided the Acting Secretary with verbal input regarding the actual or potential rescission of DACA;

4. All comments and questions propounded by the Acting Secretary to advisors or subordinates or others regarding the actual or potential rescission of DACA and their responses; and

5. All materials directly or indirectly considered by former Secretary of DHS John Kelly leading to his February 2017 memorandum not to rescind DACA.

The October 17 order also addressed various privileges — overruling defendants' claim of deliberative process privilege as to 35 documents and finding that defendants had waived the

---

[1] All docket numbers herein refer to the docket in Case No. 17-cv-05211-WHA.

2

attorney-client privilege as to any materials bearing on whether or not DACA was an unlawful exercise of DHS authority.

Rather than submit a complete administrative record, defendants filed a petition for writ of mandamus with our court of appeals. Our court of appeals denied defendants' petition (over one dissent). Defendants were again ordered to complete the administrative record (Dkt. Nos. 86, 188, 197, 199).

On December 1, defendants filed in the United States Supreme Court a petition for writ of mandamus and application for a stay, or, in the alternative, for writ of certiorari to our court of appeals. The Supreme Court did not reach the merits of defendants' petition but required that their jurisdictional defenses be adjudicated prior to consideration of completing the administrative record (Dkt. Nos. 214, 224).

An order dated January 9, 2018, ruled on defendants' threshold jurisdictional arguments and sustained jurisdiction, issues now before our court of appeals. The parties later submitted argument, at the Court's invitation, as to whether some narrowing of the October 17 order was necessary or appropriate (Dkt. Nos. 234, 242, 243). This order follows.

**ANALYSIS**

1. **SCOPE OF THE ADMINISTRATIVE RECORD.**

The main question addressed in this order is the meaning of the term "the whole record" in the context of informal agency action. 5 U.S.C. § 706. This issue is important — not just to the instant dispute but to all informal agency decisions reviewable under the APA. Unlike formal agency adjudication and notice-and-comment rulemaking, informal agency action has no readily-defined record. In a rulemaking case, for example, the record is "comprised of comments received, hearings held, if any, and the basis and purpose statement," among other things. *Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 817 (D.C. Cir. 1975). And, the trial-type record in administrative adjudications consists of "[t]he transcript of testimony and exhibits, together with all papers and requests filed in the proceeding." 5 U.S.C. § 556.

The Supreme Court has never defined "the whole record" in the context of informal agency action, our instant setting. But our court of appeals has explained that the whole record

3

"is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Rather, it "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Ibid.* The "whole record" accordingly includes documents that "literally pass[ed] before the eyes of the final agency decision maker" as well as those considered and relied upon by subordinates who provided recommendations to the decisionmaker. *California ex rel. Lockyer v. U.S. Dep't of Agriculture*, Nos. 05-cv-3508 & 05-cv-4038, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (Magistrate Judge Elizabeth Laporte) (internal citations and quotations omitted); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (Judge Royce Lamberth).

Although the administrative record submitted by defendants is entitled to a presumption of completeness, *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993), this order again finds that plaintiffs have shown, by clear evidence, that the administrative record filed by defendants lacks documents that were considered, directly or indirectly, by the Acting Secretary in deciding to rescind DACA. Again, the submitted record consists only of fourteen documents comprising a mere 256 pages — all already public — nearly 200 pages of which consist of the Supreme Court, Fifth Circuit, and district court opinions in the DAPA litigation. Our own Ninth Circuit and the Second Circuit have both agreed that it strains credulity that defendants terminated DACA based solely on fourteen publicly available documents. *See In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017), *judgment vacated on other grounds by In re United States*, 138 S. Ct. 443 (2017); *In Re: Kirstjen M. Nielsen*, No. 17-3345 (2d. Cir. Dec. 27, 2017).

But while completion of the administrative record is necessary, this order is mindful of the Supreme Court's concern that defendants have raised "serious arguments that at least portions of the [October 17] order are overly broad." *In re United States*, 138 S. Ct. at 445. After consideration of the parties' supplemental submissions on this point, this order will narrow the October 17 order.

4

*First*, even defendants agree that non-privileged materials considered by the Acting Secretary in connection with the decision to rescind DACA should be included in the record. Defendants' supplemental submission does not specifically address, however, whether the administrative record should include comments and questions propounded by the Acting Secretary to others (and their responses) regarding the rescission. This order restates that the first and fourth categories of materials outlined in the October 17 order should be included in the administrative record.

*Second*, because reasoned agency decision-making "ordinarily demand[s] that [the agency] display awareness that it *is* changing position" and "show that there are good reasons for the new policy," *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), the October 17 order directed defendants to include in the administrative record all materials directly or indirectly considered by Secretary Kelly that led to his earlier decision to continue the DACA program.

Two events are relevant. In February 2017, Secretary Kelly issued guidance regarding the Trump Administration's immigration enforcement priorities which — despite rescinding "all existing conflicting directives, memoranda, or field guidance regarding the enforcement of our immigration laws and priorities for removal" — explicitly left DACA in place. Then, in June 2017, Secretary Kelly rescinded the 2014 DAPA memo while again declaring that DACA would remain in effect. Materials considered by Secretary Kelly that led to his February and June 2017 decisions to continue DACA are pertinent here, and the inclusion of such documents in the administrative record remains required.[2]

*Third*, the Acting Secretary surely received both written and verbal input from her subordinates regarding the decision to rescind DACA. Yet the record lacks even a single communication from any of the Acting Secretary's subordinates. With respect to written input, the October 17 order sought to remedy this omission in two ways. One was to require inclusion

---

[2] While the October 17 order only required defendants to include materials directly or indirectly considered by Secretary Kelly leading to his *February* 2017 decision, upon further reflection, defendants should also be required to include materials directly or indirectly considered by Secretary Kelly leading to his *June* 2017 decision.

5

of some materials sent to the Acting Secretary that were previously withheld under a claim of deliberate process privilege. The other was to require inclusion of all DACA-related materials considered by persons (anywhere in the government) who, after such consideration, provided the Acting Secretary with written input regarding the rescission of DACA. In other words, anyone providing written input to the Acting Secretary on the rescission was required to produce their DACA materials (up to the date of their input) on the premise that such materials had informed their input.[3]

Defendants argue that this category of materials should be narrowed so as to exclude any document originating from the White House, whether or not such documents are in the possession of DHS or another agency. For their part, plaintiffs suggest exempting from the administrative record any White House documents that never left the White House complex. This order accepts plaintiffs' narrower version.

Communications from the White House *residing at DHS* remain an important part of the administrative record (in part due to the White House's emphasis of the President's direct role in decisions concerning the program). Indeed, defendants concede that the Acting Secretary received advice from other members of the Executive Branch in making her decision and referred to "White House memorandum" in their privilege log (Dkt. No. 71-2). But to curtail any separation-of-powers concerns, defendants need not collect materials from White House personnel. The agency defendants need look no further than their own files. In all other respects, however, the second category of materials described in the October 17 order remains intact.

*Fourth*, with respect to verbal input to the Acting Secretary, to capture the factual information verbally conveyed and considered in connection with the decision to rescind DACA, the October 17 order similarly required inclusion of all DACA-related materials considered by persons (anywhere in the government) who thereafter provided the Acting Secretary with verbal input regarding the rescission. Defendants argue that the collection and

---

[3] Although the October 17 order overruled defendants' privilege assertions with respect to some of the written inputs received by the Acting Secretary from her subordinates, these materials have *not* yet been included in the administrative record.

6

review of documents from custodians who provided only verbal advice is overly burdensome and disproportionate to the needs of the case. Plaintiffs, in turn, suggest that this requirement be narrowed to apply only to materials located within or reviewed by DHS or DOJ personnel rather than anywhere in the government.

The appellate caselaw has never expressly considered how, if at all, verbal input to an agency decisionmaker should be reflected in the administrative record. Verbal input, of course, can be every bit as influential — perhaps more influential — in shaping informal agency decisions as written input. Yet despite government counsel's acknowledgment that verbal input likely occurred (Dkt. No. 78 at 31:5), the thin administrative record supplied thus far omits even a clue as to the verbal advice received by the Acting Secretary on the question of the rescission of DACA.

Nevertheless, this order narrows the October 17 order in that defendants need only add to the administrative record documents of the Acting Secretary's first-tier subordinates who provided verbal input regarding the rescission of DACA. Figuring out who gave verbal input will not be as hard as the government suggests. One method would be to ask the decisionmaker which first-tier subordinates provided verbal input and then include in the administrative record the relevant files and emails of such subordinates up to the date of their last input. Another would be to ask the first-tier subordinates if they gave verbal input and, if so, to include their DACA files and emails up to the date of their last input. Yet another method would be to review the emails of the Acting Secretary and first-tier subordinates for references to verbal input, such as references to a meeting on the subject or to follow up on a verbal recommendation. This order leaves it to government counsel to select the combination of methods best calculated to retrieve the relevant records. The government is not required to construct records that never existed but only to corral the records that plausibly informed the verbal input received by the Acting Secretary.[4]

---

[4] The narrower administrative record set forth in this order more closely aligns with that required by Judge Nicholas Garaufis in the parallel DACA actions pending in the United States District Court for the Eastern District of New York. *See Batalla Vidal v. Duke*, No. 16-cv-4756, 2017 WL 4737280, at *5 (E.D.N.Y. Oct. 19, 2017).

7

In sum, defendants are directed to complete the administrative record by adding to it all emails, letters, memoranda, notes, media items, opinions and other materials directly or indirectly considered in the final agency decision to rescind DACA, to the following extent:

1. All materials actually seen or considered, however briefly, by the Acting Secretary in connection with the potential or actual decision to rescind DACA;

2. All DACA-related materials considered by persons (anywhere in the government) who thereafter provided the Acting Secretary with written advice or input regarding the actual or potential rescission of DACA, with the exception that White House documents that never left the White House complex need not be included;

3. All DACA-related materials considered by the Acting Secretary's first-tier subordinates within DHS who thereafter provided the Acting Secretary with verbal input regarding the actual or potential rescission of DACA;

4. All comments and questions propounded by the Acting Secretary to advisors or subordinates or others regarding the actual or potential rescission of DACA and their responses; and

5. All materials directly or indirectly considered by former Secretary of DHS John Kelly leading to his February and June 2017 decisions not to rescind DACA.

\*         \*         \*

Because of the pendency of appellate review over the government's threshold jurisdictional arguments, this order postpones the deadline for completion of the administrative record until **FORTY-TWO CALENDAR DAYS** after any final appellate ruling that the agency action is reviewable. If either side seeks Supreme Court review of the threshold jurisdictional questions, then any ruling by our court of appeals will become final only upon refusal of the Supreme Court to review it or upon a ruling by the Supreme Court itself that the agency action is reviewable.

## 2. PRIVILEGE.

### A. Waiver of Attorney-Client Privilege.

The October 17 order held that defendants waived attorney-client privilege over any materials that bore on whether or not DACA was an unlawful exercise of executive power and therefore should be rescinded. This holding was based on the well-established principle that parties are not permitted to advance conclusions that favor their position in litigation and at the same time shield the information that led to those conclusions from discovery. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Put differently, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Ibid*. Where a party raises a claim, which in fairness to its adversary requires it to reveal the information or communication that claim is predicated upon, it has implicitly waived any privilege over that communication.

Here, DHS's rationale for rescinding DACA was its purported illegality (*see* Dkt. No. 64-1 at 253–56 (Rescission Memorandum)). And although defendants included the September 4 legal opinion of the Attorney General in the administrative record, they sought to conceal all other legal analysis available to the Acting Secretary or the Attorney General. The October 17 order thus determined that defendants could not simultaneously refuse to disclose the legal research that led to that conclusion.

As explained in a later order dated January 9, however, the INA itself makes clear that once the Attorney General determined that DACA was illegal, the Acting Secretary had to accept his ruling as "controlling." Section 1103(a)(1) of Title 8, a provision that allocates immigration power and duties among the Secretary of Homeland Security, the Secretary of State, and the Attorney General, provides that "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." Therefore, once the Attorney General advised the Acting Secretary that DACA was illegal, that determination became controlling and any legal analysis provided by others would be irrelevant. Put differently, the Acting Secretary did not "rely" on the advice of counsel and thus waive the privilege (as to all

9

1    other legal advice available to her). Instead, she became bound by the "controlling" Attorney
2    General determination.
3        On the other hand, the government has maintained that the basis of the rescission was
4    not the legal determination that DACA was illegal but rather was a judgment call based on
5    balancing litigation risk. Viewed in that light, the original waiver analysis would seem to
6    remain valid, such that all legal advice on DACA's legality made available to the Acting
7    Secretary and/or the Attorney General would be includable in the administrative record.
8        In light of this more nuanced analysis, this order finds it prudent to wait and decide the
9    scope of defendants' waiver of attorney-client privilege until Section 1103(a)(1)'s import is
10   considered by our court of appeals in connection with the currently pending interlocutory
11   appeal of the January 9 order. For the time being, no waiver of the attorney-client privilege will
12   be enforced (although any materials withheld on this ground must be logged).[5]

### B. Privilege Assertions.

14   While defendants did not file a privilege log with their original production, they later,
15   pursuant to order, filed a privilege log claiming attorney-client, deliberative process, and other
16   privileges over 84 documents considered by the Acting Secretary (Dkt. Nos. 67, 71-2). The
17   October 17 order overruled the privilege assertions as to 35 of the withheld documents
18   (although so far none have been produced). The October 17 order further required that
19   defendants maintain a privilege log for all future documents withheld on grounds of privilege.
20   In their supplemental submission, defendants repeat their objection to providing a privilege log.
21   To reiterate, our court of appeals has not spoken on this issue. Every court in this
22   district to consider the issue, however, has required administrative agencies to provide a
23   privilege log in withholding documents that otherwise belong in the administrative record. *See,*
24   *e.g.*, *Ctr. for Food Safety v. Vilsack*, No. 15-cv-01590, 2017 WL 1709318, at *5 (N.D. Cal. May
25   3, 2017) (Magistrate Judge Kandis Westmore); *Inst. for Fisheries Res. v. Burwell*, No.
26   16-cv-01574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (Judge Vince Chhabria);

---

[5] Notably, the parties did not raise or address the impact of Section 1103(a)(1) in any of their briefing. Accordingly, it was not considered in connection with the October 17 order.

10

*Lockyer*, 2006 WL 708914, at *4.  As a practical matter, if agencies were permitted to withhold materials from the administrative record on the basis of privilege, but were not required to submit a privilege log, their withholding based on privilege would never surface and would wholly evade review.  This would invite all manner of mischief.  Accordingly, this order holds once again that a privilege log is required.  The privilege log shall comply with the supplemental order setting the initial case management conference in this case, and shall include all authors and recipients of privileged documents, as well as the other information set forth in that order (*see* Dkt. No. 23 ¶ 18).

With respect to documents previously identified on defendants' earlier privilege log, the Court has already ruled on each document following an *in camera* review.  If, however, defendants wish to relitigate those rulings via a more thorough review than before (despite defendants' earlier request only for an *in camera* review), then the following procedures will apply.  Within **TWENTY-EIGHT CALENDAR DAYS** of the finality of any appellate order sustaining reviewability of the rescission of DACA (as defined above), defendants may file a brief (on the public docket) presenting argument as to why the subject documents should remain withheld as privileged.  Also at that time, defendants shall submit under seal declarations invoking and justifying the relevant privilege.  These filings shall also be provided to plaintiffs, but may be redacted to the extent (but only to the extent) necessary to maintain the privilege asserted.  Within **FOURTEEN CALENDAR DAYS** of defendants' submission, plaintiffs may file a response.  The Court will then review the materials and allow argument by defendants' counsel at an *ex parte* hearing.  Plaintiffs' counsel shall standby outside the courtroom.  Without revealing specifics of the withheld materials, the Court may invite plaintiffs' counsel to make one or more cameo appearances to argue as appropriate.  The foregoing deadlines pertain only to the 35 documents previously ordered to be added to the administrative record (should the government want to relitigate that ruling).  Should plaintiffs wish to relitigate the privilege issue as to the documents for which the privilege was previously sustained, the same procedures shall apply.

With respect to the larger administrative record yet to be provided, if defendants redact or withhold any material based on deliberative process or any other privilege, they shall simultaneously lodge for the Court's review full copies of all such materials, indicating by highlighting (or otherwise) the redactions and withholdings together with a privilege log for each. The parties shall follow the same procedures outlined above, and within **TWENTY-EIGHT CALENDAR DAYS** from the date on which the privilege log and withheld documents are submitted, defendants shall submit their brief and supporting declarations. Within **FOURTEEN CALENDAR DAYS** of defendants' submission, plaintiffs may file a response. The Court will again allow *ex parte* argument by defendants' counsel if requested and may invite argument from plaintiffs' counsel to the extent appropriate.

All privilege issues are hereby **REFERRED** to **MAGISTRATE JUDGE SALLIE KIM** to be heard and determined in accordance with the above procedures.

## CONCLUSION

Defendants shall file an amended administrative record in conformity with this order within **FORTY-TWO CALENDAR DAYS** of any final appellate ruling that the agency action terminating DACA is reviewable. Discovery remains stayed.

## CERTIFICATION UNDER 28 U.S.C. § 1292(b)

The district court hereby certifies for interlocutory appeal the issues of whether: (1) inclusion of the above-referenced materials in the complete administrative record is necessary and appropriate; and (2) defendants should be required to provide a privilege log with respect to documents withheld from the administrative record on the basis of deliberate process or other privileges. This order finds that these are controlling questions of law as to which there is substantial ground for difference of opinion and that their resolution by the court of appeals will materially advance the litigation.

If a petition is submitted for interlocutory review and is granted, then this order shall be deemed stayed and defendants need not complete the administrative record until a final appellate order requiring them to do so.

**IT IS SO ORDERED.**

Dated: March 8, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE